R. TRENT MCCOTTER
Acting Deputy Attorney General
JOHN K. ADAMS
Associate Deputy Attorney General
ANDREW M. DARLINGTON (FL Bar No. 1018895)
Counsel to the Assistant Attorney General
950 Pennsylvania Avenue, NW
Washington, D.C., 20530
Telephone: (202) 532-0100
Andrew.Darlington2@usdoj.gov

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JULIE A. HAMILL (Cal. Bar No. 272742)
Assistant United States Attorney
J. ROBERT RENNER (Cal. Bar No. 148587)
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2464
E-mail: Julie.Hamill@usdoj.gov

Attorneys for Plaintiff
*United States of America*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, SHIRLEY N. WEBER, in her official capacity as the California Secretary of State, and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk,<br><br>Defendants. | No. 2:26-cv-12025<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>ACTION SEEKING STATEWIDE RELIEF |

Plaintiff, United States of America, hereby alleges as follows:

## INTRODUCTION

1. Federal law prohibits noncitizens from voting in federal elections. *See* 18 U.S.C. § 611(a). That law is an exercise of Congress's clear constitutional power to regulate the domestic conduct of noncitizens and to regulate the manner of federal elections. Nothwithstanding the important role of the Federal Government to regulate the manner of federal elections, States also play a part, but they—and their election officials—cannot knowingly violate federal law when they administer federal elections.

2. For each election in California, the State automatically sends all registered voters vote-by-mail ballots. Those ballots do not bifurcate between state, local, and federal elections. Nor do they warn aliens that they are prohibited to vote in federal elections. While California reviews signatures before tabulating cast ballots, there is a strong presumption of validity even for ballots signed not with a name but with a simple "X."

3. Based on a thorough analysis of voter rolls and federal data, agencies within the Department of Homeland Security found thousands of likely noncitizens registered to vote in California who would automatically be sent federal ballots under State law. Thus, months before California started sending vote-by-mail ballots to all registered voters, the Federal Government alerted the California Secretary of State that a preliminary review of California's voter role revealed that numerous likely noncitizens were registered to vote in California. *See* Ex. A. The Federal Government asked California to work collaboratively to identify any noncitizens registered to vote in the State. California made no serious effort to do so, *see* Ex. B, and as required by State law, began sending vote-by-mail ballots to all registered voters in early October—including, it seems, to those who the Federal Government considered as likely noncitizens.

4. Days ago, the Federal Government reiterated this serious concern with exacting details. It sent relevant California officials a list of over 20,000 names of people the Federal Government believes are likely noncitizens who were sent a vote-by-mail ballot from California to participate in the federal election. *See* Exs. C & D. The Federal Government asked California to review the list and, in partnership with federal agencies,

to determine whether citizens were listed. *Id.* at 1. If California was unable to independently confirm the citizenship of people on that list, the Federal Government asked that California set aside ballots received from them until the person's citizenship was confirmed. *Id.* at 1–2. Given the time sensitivity of the impending election, the Federal Government asked California to conduct its review by today at noon. *Id.* at 2. California failed to do so. Indeed, rather than respond to the Federal Government, the Los Angeles County Recorder-Registrar / County Clerk announced via a press release that its office rejected an encrypted thumb drive from a federal agent that identified likely noncitizen voters—demonstrating a total lack of commitment to work with the Federal Government to protect the integrity of our elections.

5. California's actions here—sending vote-by-mail ballots and tabulating them without verifying citizenship in collaboration with the Federal Government after being told of likely noncitizen voters—are preempted, as applied, insofar that California will count vote-by-mail ballots of likely noncitizen voters violates 18 U.S.C. § 611. *See Norwood v. Harrison*, 413 U.S. 455, 465 (1973) ("It is also axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish.").

6. The United States thus seeks commonplace election relief when a ballot is called into question. This Court should enjoin California from presently tabulating vote-by-mail ballots from likely noncitizens in the upcoming federal election until the voter's citizenship status can be determined. To do so, this Court should order California (1) to set aside vote-by-mail ballots from persons identified by the Federal Government likely to be noncitizens and (2) to independently—or in collaboration with the Federal Government—verify their citizenship status (beyond relying on unverified statements of citizenship necessary to registering) before tabulating their vote-by-mail ballot. The United States seeks this relief to prevent unlawful dilution of American citizens' votes and to protect the integrity of our elections.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1345.

8. This Court has authority to provide the relief sought under 28 U.S.C. §§ 2201 and 2202 and its inherent legal and equitable powers. *See, e.g.*, *Ex parte Young*, 209 U.S. 123 (1908).

9. The United States has standing to vindicate its sovereign interests, including its legally protected interest in enforcing federal law, such as 18 U.S.C. § 611. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387 (2012); *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000); *United States v. Missouri*, 114 F.4th 980 (8th Cir. 2024); *La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 520 (W.D. Tex. 2022).

10. Moreover, by sending ballots to likely noncitizens despite the Federal Government notifying California of serious concerns, Defendants (collectively, California) have made it nearly impossible for the United States to investigate and enforce federal law. This is a substantial drain on federal resources. In addition, when aliens illegally vote in elections, they dilute the votes of citizens and unduly influence who runs the Federal Government. That also undermines public faith in federal elections. Distorting federal elections is about as direct of an injury to the United States as one can imagine.

11. This Court has personal jurisdiction over Defendants because they reside in or conduct a substantial portion of their official business in the Central District of California. The State of California is also at home in every district within its borders.

12. Venue is proper because at least one Defendant resides there and the actions and omissions giving rise to this lawsuit occurred throughout the district. *See* 28 U.S.C. § 1391(b).

## PARTIES

13. Plaintiff, the United States of America, safeguards the supremacy of federal law and ensures that States do not violate federal law, including the Supremacy Clause of the U.S. Constitution. The United States sues on its own behalf, on behalf of its citizens, and on behalf of its executive departments and agencies.

14. Defendant State of California is a State of the United States.

15. Defendant Shirley N. Weber is the California Secretary of State. In that role, she serves as California's chief elections officer. *See About the Agency*, California Secretary of State, *available at* https://www.sos.ca.gov/administration/about-agency (last accessed Oct. 10, 2026). As the chief elections officer, she "ensure[s] that every vote is counted as it was cast." *Id.* She "also ensures election laws . . . are enforced, maintains a statewide database of all registered voters, certifies the official lists of candidates for elections, tracks and certifies ballot initiatives, compiles election returns and certifies election results, . . . and promotes voter registration and participation." *Id.*; *see also* Cal. Gov't Code § 12172.5 (Chief elections officer powers). She is sued in her official capacity.

16. Defendant Dean C. Logan is the County of Los Angeles Registrar-Recorder / County Clerk. In that role, he is responsible for registering voters, maintaining voter files, and administering federal elections. *See About Dean C. Logan, Registrar-Recorder / County Clerk*, Los Angeles County, *available at* https://www.lavote.gov/about-us/about-dean-c-logan (last accessed Oct. 14, 2026); *see also* Cal. Elec. Code § 320(b). He is sued in his official capacity.

## LEGAL BACKGROUND

### I. Federal Law Prohibits Noncitizens from Voting in Federal Elections

17. It is generally "unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner." 18 U.S.C. § 611(a).

18. A noncitizen may vote in such an election if (a) "the election is held partly for some other purpose," (b) a state or local law allows noncitizens to vote, and (c) voting "is conducted independently of voting for a candidate for such Federal offices, in such a manner that an alien has the opportunity to vote for such other purpose, but not an opportunity to vote for a candidate for any one or more of such Federal offices." *Id.*

19. A noncitizen who violates the voting ban may be fined or imprisoned. *Id.*

§ 611(b). Persons also can be in violation of federal law for aiding and abetting, or otherwise facilitating, the federal crime of noncitizen voting. *See* 18 U.S.C. § 2.

20. A noncitizen who "express[es] [his] preference or opinion in a[n] . . . election by ballot" violates the federal statutory ban on noncitizen voting, unless the noncitizen had no opportunity to vote for a candidate seeking federal office. *See Vote*, Black's Law Dictionary (12th ed. 2024); 18 U.S.C. § 611(a); *see also United States v. Knight*, 490 F.3d 1268, 1271 (11th Cir. 2007) (finding 18 U.S.C. § 611 to be a general intent crime where the government needs only to "prove that the defendant knowingly engaged in the conduct prohibited" (citation omitted)).

## II. California's Vote-by-Mail Regime

### A. California's Vote-by-Mail Ballots

21. California has permitted voters to cast ballots by mail since 1922, *see Peterson v. City of San Diego*, 34 Cal. 3d 225, 228-29 (1983), but it has dramatically extended its vote-by-mail access in recent years.

22. Originally in an emergency response to the COVID-19 pandemic, the California Legislature passed a bill requiring every county to implement an all-mailed-ballot election system for the 2020 general election. *See* 2020 Cal. Stat. ch. 4 (codified as amended at Cal. Elec. Code § 3000.5). After the election, the legislature made that system permanent. *See* 2021 Cal. Stat. ch. 312 (codified at Cal. Elec. Code § 3000.5).

23. Under the current regime, state election officials are required to send unsolicited ballots to "every registered voter" in the State, no later than 29 days before "each election." Cal. Elec. Code § 3000.5.

24. All vote-by-mail ballot identification envelopes that are sent out contain "[a] warning plainly stamped or printed on it that voting twice constitutes a crime" but include no such similar warning for the crime of voting as a noncitizen in a federal election. *See* Cal. Elec. Code § 3011(a)(6); *see also id.* § 3011.

25. The California Legislature passed a law allowing counties to opt in to an all-mailed-ballot election. Thus, counties can implement, writ large, the State's permissive

mail-in voting procedures, which includes the lax signature verification requirements as discussed further below. *See California's Voter's Choice Act*, 2016 Cal. Stat. ch. 832 (codified as amended at Cal. Elec. Code § 4005); *see also* Cal. Elec. Code § 3019.

### B. Election Officials Count a Vote-by-Mail Ballot if They Verify the Signature

26. For a vote-by-mail ballot to count in an election, the voter must sign the ballot. Cal. Elec. Code § 3011(a)(2). California "shall [then] compare the signature" between the vote-by-mail ballot received and the voter's signature contained in its records to determine whether the voter is an eligible voter. *Id.* § 3019.

27. California law requires election officials to "liberally construe[]" signature verification of vote-by-mail ballots "in the favor of the voter." Cal. Code Regs. tit. 2, § 20990(c) (2022). Indeed, "[a] presumption exists that the signature on the identification envelope, signature verification statement, unsigned identification envelope statement, or provisional ballot envelope is the voter's signature and that the vote will be counted." Cal. Elec. Code § 3019(a)(2)(A); *accord* Cal. Code Regs. tit. 2, § 20960(c). Exact signature matches are not required; signatures with similar characteristics suffice. *Id.* § 3019(a)(2)(B); *accord id.* § 20960(d)-(e).

28. Only a signature possessing "multiple, significant, and obvious differing characteristics with all signatures in the voter's registration record will be subject to additional review by the elections official." *Id.* § 20960(i). Even then, if an initial reviewer identifies multiple, significant, and obvious differing characteristics, the vote will be rejected only if "two different elections officials unanimously find beyond a reasonable doubt that the signature differs in multiple, significant, and obvious respects from all signatures in the voter's registration record." *Id.* § 20960(j). What is more, a signature made using a mark, "such as an 'X' . . . is presumed valid" and should be counted. *Id.* § 20960(l).

29. California's signature verification statement requires the voter to affirm that she or he is a registered voter and is a resident of the precinct in which they voted. But the

verification statement omits affirmation of a voter's U.S. citizenship. *Id.* § 3019(d)(1)(E)(5). If election officials determine the signature on a vote-by-mail "compares" with the voter's registration record ballot, the ballot is valid and counted. *See* Cal. Code Regs. tit. 2, § 20991(b).

## FACTUAL ALLEGATIONS

30. The United States Citizenship and Immigration Services (USCIS) is responsible for adjudicating immigrant visa and naturalization applications, among other duties. *See* 6 U.S.C. § 271. Consistent with those responsibilities, USCIS maintains records and information on individuals who have applied to enter or reside permanently in the United States. *Id.* Those records include individuals' names, addresses, social security numbers, and numbers assigned to each applicant (alien numbers). USCIS also investigates allegations of illegal voting by noncitizens. *See* 8 U.S.C. §§ 1182, 1227. Within USCIS is the Fraud Detection and National Security Directorate (FDNS) that safeguards the integrity of the nation's lawful immigration system by leading USCIS' efforts to combat fraud, detect national security and public safety threats, and maximize law enforcement and intelligence community partnerships.

31. Homeland Security Investigations (HSI), which resides within the U.S. Immigration and Customs Enforcement, serves as the primary investigative agency enforcing America's immigration laws. *See* 6 U.S.C. § 252. HSI also maintains records and information on individuals who are in any way being investigated for violations of the United States' immigration laws or regulations, among other duties. *Id.* HSI regularly coordinates investigations with USCIS when noncitizens are alleged to vote in federal elections. *See* 8 U.S.C. §§ 1182, 1227.

32. As part of their regular investigative duties, USCIS (including FDNS) and HSI collaborate to determine whether noncitizens are voting by mail in federal elections.

## I. Federal Agencies' Process to Identify Likely Noncitizens on Voter Rolls in Federal Elections

### A. USCIS' Processes to Determine Likely Noncitizens on Voter Rolls

33. USCIS regularly conducts investigative processes whereby lists of registered voters or information about voters on voter rolls are analyzed to determine whether anyone registered to vote in a federal election is a noncitizen. California's voter roster containing voter registration information is made available for purchase. *See* Cal. Elec. Code § 2188.[1]

34. To determine whether noncitizens are on voter rolls, USCIS compares information about voter rolls with its internal data to identify potential matches between registered voters and possible noncitizens. If USCIS identifies a registered voter in a federal election who is also likely a noncitizen, it conducts additional investigative processes to determine what level of confidence—high, medium, or low—it has that the registered voter is a noncitizen. "High confidence" means that the match between voter information on the voting roll and USCIS' internal records is strong and consistent based on multiple identifiers that support a strong identity link.

35. Voter rolls or information about voter rolls provided to USCIS typically do not contain complete information on an individual. So, after receiving a voter roll or information about voters on voter rolls, USCIS utilizes third-party software to identify high, medium, or low confidence matches between voter information and information about that individual compiled by the software program. Medium or low confidence matches reflect incomplete, outdated, or mismatched data on the individual.

36. USCIS next takes the high-confidence match information and connects it with an alien number in its system, which is informed by immigration-related interactions between the individual and the agency. USCIS then produces a table of individuals who are high-confidence matches from the voter rolls with a verified alien number.

37. USCIS next scours internal records for any evidence of naturalization and

[1] To the best of the government's knowledge, California has not submitted any voter rolls through the Systematic Alien Verification for Entitlements (SAVE) program. Thus, USCIS' process performed here was done independent of SAVE.

evaluates whether the individual could have derived citizenship through parents or other means. USCIS investigators also confirm with U.S. Department of State records what, if any, indicators exist as to the individual's citizenship status. USCIS also reviews records from the Social Security Administration to determine if any individuals have passed away. A second-level review is conducted as an additional safeguard.

38. Upon supervisor approval, USCIS generates a list of likely noncitizens on voter rolls and then refers it to HSI for further investigation. During its investigation, HSI may ask USCIS to perform additional, manual review of the relevant matches.

**B. HSI's Processes to Determine Likely Noncitizens on Voter Rolls**

39. After USCIS conducts its multiagency and multilevel review, it forwards to HSI voter names that USCIS has a "high confidence" are likely noncitizens who are registered to vote in the federal election.

40. From there, HSI further investigates the names on the list to determine whether the voters are noncitizens. *See, e.g.*,18 U.S.C. § 611 (voting by aliens), 18 U.S.C. § 911 (false claim to citizenship), 18 U.S.C. § 1015(f) (false claim to citizenship to register to vote, or to vote), 52 U.S.C. § 20511(2) (casting a fraudulent ballot under state law), INA §§ 212(a)(10)(D)(i), and 237(a)(6)(A) (administrative immigration charges for unlawful voters), INA §§ 212(a)(6)(C)(ii) and 237(a)(3)(D) (administrative charges for false claims to citizenship).

41. In some situations, a state voter file is sent to HSI before it is sent to USCIS. For those, HSI sends the voter file to USCIS to first complete the above-listed investigative steps. Once HSI receives USCIS referrals, HSI initiates its investigative process.

42. HSI first conducts intake to confirm that the USCIS referrals it receives are appropriately labeled high, medium, or low confidence matches. For a list provided by USCIS of high confidence matches, HSI uses its customary analytical platform to rectify any potential information mismatches on this high-confidence list. The purpose of using these analytics tools is to shore up any data deficiencies that could exist.

43. Following this analytical data enrichment process, HSI sends the data to HSI

criminal investigators in the field for further investigative steps.

## II. Federal Agencies Identified Likely Noncitizens Registered to Vote in California, and the United States Notified Defendants of these Voters

44. Consistent with state law, which requires California to send vote-by-mail ballots to all registered voters (*see* Cal. Elec. Code § 3000.5), California mailed ballots on October 1, 2026, to all registered voters. *See* Los Angeles County Registrar-Recorder/County Clerk website, L.A. County Begins Mailing Vote by Mail Ballots for the 2026 General Election, Oct. 1, 2026), (https://lacounty.gov/2026/10/01/l-a-county-begins-mailing-vote-by-mail-ballots-for-the-2026-general-election/).

45. As part of an investigation into unlawful voting, USCIS—after executing the processes just set forth—sent to HSI for further assessment a list of more than 20,000 individuals who USCIS believes are registered to vote in the federal election in California and are likely noncitizens.

46. HSI then performed its investigative process described above and reasonably believes that around 20,000 noncitizens are registered to vote in California. This means that, consistent with state law, nearly 20,000 noncitizens in California have been sent a vote-by-mail ballot to participate in the federal election (or will receive one), with many addresses listed in Los Angeles County.

47. On October 13, 2026, the Federal Government provided a list of over 20,000 individuals who USCIS and HSI believe are noncitizens registered to participate in the federal election in California. *See* Exs. C & D. California declined to work with the Federal Government to determine whether those individuals are citizens who are legally entitled to vote in the federal election.

48. If California followed its law, then Defendants sent individuals identified by the Federal Government as likely to be noncitizens on voter rolls vote-by-mail ballots to participate in the federal election.

49. The United States thus sues California to ensure that only American citizens' ballots are counted in the ongoing federal election. The claim for relief here targets solely

the vote-by-mail ballots of the individuals identified by two Federal agencies as (1) registered to vote in California and (2) highly likely to be noncitizen aliens.

## CLAIM FOR RELIEF

### Violation of the Supremacy Clause as Applied to California's Actions of Knowingly Sending Vote-By-Mail Ballots to Likely Noncitizens and Ultimately Counting Those Ballots in Violation of 18 U.S.C. § 611

50. The United States incorporates all allegations stated above.

51. The Supremacy Clause in Article VI of the U.S. Constitution declares: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2.

52. The Elections Clause in Article I of the U.S. Constitution grants Congress significant regulatory authority in federal elections because "Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." Otherwise, "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." U.S. Const. art. I, § 4, cl. 1.

53. Congress likewise has broad power to regulate the conduct of aliens in this country, pursuant to its foreign-commerce and foreign-affairs powers. *See Arizona v. United States*, 567 U.S. 387, 394–96 (2012); *Toll v. Moreno*, 458 U.S. 1, 10–11 (1982).

54. Under the Supremacy Clause, courts may find preemption where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (citations omitted) (cleaned up). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id*. "There is no 'rigid formula or rule' for determining when" a state law creates such an obstacle that it is preempted by federal law. *Chamber of Com. of the United States of Am. v. Bonta*, 62 F.4th 473, 482 (9th Cir. 2023).

55. If California passed a law that allowed noncitizens to vote for a candidate

who is running for a seat in the U.S. Senate or the U.S. House of Representatives, that state law would conflict with federal law, *see* 18 U.S.C. § 611(a), and would violate the Supremacy Clause. After all, if a state law is contrary to an act of Congress or our Nation's Constitution, the state law must yield. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 479–480 (2013) ("[I]t has long been settled that state laws that conflict with federal law are 'without effect.'" (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

56. Because California cannot pass a statute allowing noncitizens to vote in a federal election, it also cannot induce, encourage, promote, or knowingly facilitate noncitizen voting for a candidate who is running for a seat in the U.S. Senate or the U.S. House of Representatives. *See Norwood v. Harrison*, 413 U.S. 455, 465 (1973) ("It is also axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish."). Nor can California allow a noncitizen to vote in the federal election when it has knowledge about the voter's citizenship status, as noncitizens cannot vote in federal elections. 18 U.S.C. § 611(a).

57. The Federal Government notified California months ago that numerous noncitizens may be registered to vote in California. Despite knowing that California must send vote-by-mail ballots to every registered voter, the State made no serious attempt to work with the Federal Government to determine whether noncitizens are registered to vote.

58. The Federal Government then provided California with a list of over 20,000 specific individuals who Federal agencies believe are registered to vote in federal elections in California and are likely noncitizens. Despite knowing that California must count a vote-by-mail ballot after verifying the signature—even a "signature" that says only "X"—the State refused to independently verify the citizenship of people included on the list. Nor would they agree to work with the Federal Government to verify citizenship status before tabulating those voters' votes.

59. In this context, California's actions are preempted by 18 U.S.C. § 611(a) insofar that they frustrate the very purpose and effect of the federal prohibition against

noncitizens voting in federal elections. The State knows that noncitizens might be registered to vote, and it knows the names of such individuals. But it still intends to count their vote without verifying the voter's citizenship. California's actions thus knowingly facilitate unlawful voting.

60. To be sure, the United States actively investigates and prosecutes incidents of unlawful voting. But it is not practicable or feasible for the United States to investigate before the 2026 election concludes thousands, let alone tens of thousands, of individuals that two federal investigative offices identified on the California voter roster as likely being sent vote-by-mail ballots. California is thus knowingly imposing an obstacle on the United States' ability to enforce 18 U.S.C. § 611 by facilitating unlawful voting rather than working with the Federal Government to prevent it.

61. Accordingly, California's actions to send vote-by-mail ballots and ultimately count those ballots, notwithstanding knowledge of noncitizen voting, are preempted as applied to the individuals the Federal Government identified for California.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that this Court grant the following relief:

62. Declare that California's actions here—which include sending vote-by-mail ballots and ultimately counting the ballots from individuals who the Federal Government identified as likely noncitizens—are preempted and thus violate the Supremacy Clause in that California took (or will take) these actions after being on notice that it would facilitate illegal voting.

63. Issue a preliminary and permanent injunction enjoining California from tabulating in federal elections vote-by-mail ballots received from individuals identified by the Federal Government as likely noncitizens until those individuals' citizenship status can be verified.

64. Award the United States its costs and fees in this action; and

65. Award any other relief it deems just and proper.

October 15, 2026

Respectfully submitted,

/s/ *Andrew M. Darlington*
ANDREW M. DARLINGTON
Counsel