# Exhibit A

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF CALIFORNIA; SHIRLEY N. WEBER, in her official capacity as Secretary of State of California; and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk,

Defendants.

Case No: 2:26-cv-12025

**DECLARATION OF HUY TRAN IN SUPPORT OF MOTION TO INTERVENE**

I, Huy Tran, hereby declare as follows:

1. I am a U.S. citizen, over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2. I am the Executive Director of the Services, Immigrant Rights and Education Network ("SIREN"). I have served in that position since May 2023. I was initially named the Interim Executive Director and later appointed Executive Director by SIREN's board of directors in May 2024. In this role, I am responsible for overseeing SIREN's operations and all its daily activities. I am familiar with the challenges—including those related to voting rights—faced by our members and the immigrant communities we serve.

3. SIREN is a non-partisan organization based in San Jose, California, that incorporated in 1998. Today, SIREN's mission is to empower immigrants and refugees through community education and organizing, leadership development, policy advocacy, civic engagement, and legal services. SIREN's core belief is that all people are entitled to essential services, human dignity, basic rights and protections, and access to full participation in society.

4. SIREN accomplishes its mission through the work and volunteerism of its approximately 120 members—including fellows, interns, and participants in SIREN's youth program and our Comunidad, our general membership. SIREN's members are spread primarily throughout the Bay Area and the Central Valley, but it has members throughout the State, including in Los Angeles County. Many of SIREN's members are registered voters. We also accomplish our mission through our coalition work at the national, statewide, and local levels.

5. SIREN is unique among immigrant and refugee rights organizations in that it combines policy work, community organizing, civic engagement, and direct services. Because our work focuses on helping immigrants themselves become agents of change, we work to encourage and help them participate in the political

process by voting. For this reason, voter-registration, voter-education, voter-assistance, and get-out-the-vote ("GOTV") programs are all critical components of achieving our mission.

6. SIREN is now in the final weeks of its GOTV and voter-education efforts for the November 2026 general election. These programs combine voter education about how to register to vote and cast ballots in California with information about issues that impact the communities SIREN serves. This work includes person-to-person canvassing as well as messaging campaigns on various platforms, and in these final weeks it focuses on helping voters in our communities return their mail ballots and make sure their votes are counted. SIREN also hosts candidate forums to help ensure that the California voters most affected by immigrant-rights issues can hear directly from candidates. SIREN has planned its staff time, volunteer capacity, and resources for the remainder of the election around this work. In fact, our GOTV volunteer orientation is *tomorrow*, October 16, and we have several key days of action planned: On Sunday, October 18, and the following Sunday, October 25, SIREN's members will be canvassing in the Central Valley.

7. Due to individuals, organizations, and government officials who are increasingly advancing false narratives that noncitizens are voting in U.S. elections and exploiting government services, SIREN, its members, and the communities SIREN serves have become the subject of aggressive retaliation for our advocacy for the rights and dignity of immigrants.

8. Unfortunately, SIREN and its members have also been singled out and targeted by federal officials who disagree with our mission. For example, in the summer of 2025, SIREN received a letter from the U.S. House Committee on Homeland Security requesting that SIREN provide information about its members and complete a survey. The Committee also requested that SIREN turn over sensitive documents related to SIREN's funding, contracts, and all services provided

to immigrants, including legal services, translation services, transportation, and housing. The federal government's unwarranted scrutiny of immigrant communities has placed SIREN on high alert.

9. I understand that the Department of Justice ("DOJ") has sued California, asking the Court to order the State to withhold mail ballots from, and to set aside and refuse to count ballots cast by, roughly 20,000 registered voters whom the federal government has identified as "likely noncitizens."

10. California counties began mailing ballots to registered voters weeks ago. Voting is already underway, including by SIREN's members. If DOJ succeeds, voters in the communities SIREN serves in California (and possibly even SIREN's members) will be at risk of having their ballots withheld, set aside, or left uncounted. This is of particular concern because these communities and our membership include many naturalized citizens, who are the most likely to be wrongly flagged by federal citizenship data (as I discuss more below), as well as migrant workers who often leave their residences for extended time periods, making them more likely to miss a notice from local election authorities asking them to confirm their eligibility. Voters whose ballots are set aside may not even realize it has happened or be able to prove their citizenship in time for their ballots to be counted and therefore may be disenfranchised. It is critical to SIREN's mission, and the programming serving that mission, that SIREN's members' and other voters' right to vote is secure and free from last-minute meddling by federal agencies.

11. SIREN would need to re-tool its civic engagement and GOTV programs in the middle of an election if DOJ is successful in this lawsuit. To mitigate the impact of DOJ's demands, SIREN would need to develop programs to help its members and other voters check whether their ballots have been received and counted, and gather the required documents to prove their citizenship in time for their votes to count if they are set aside under DOJ's relief. These efforts would

require SIREN to spend significant time and resources on new programming, including creating materials, re-training volunteers for an altered landscape, and fielding questions from worried community members, *all within a matter of days*. This will divert SIREN's limited resources from other mission-critical work at the very moment those resources are most needed, but it is a necessary response as SIREN's GOTV and other engagement work would be less impactful if our members and others in the communities we serve cannot have their votes counted, or have to face additional hurdles to do so.

12. The timing of DOJ's demands makes these injuries to SIREN all the worse. The final weeks before Election Day are the most important period of SIREN's civic engagement work, and (as noted) SIREN has already planned its staff time, volunteer capacity, and resources for this period around turning out voters and helping them return their ballots.

13. I am also extremely concerned that DOJ is using this lawsuit to accomplish what it could not accomplish through prior litigation. In 2025, SIREN helped successfully defend a case where DOJ attempted to force California to turn over its unredacted voter registration list, which included personal information of SIREN members. Due in part to the arguments advanced by SIREN and its co-intervenors, the court dismissed DOJ's efforts to obtain California's voter list in that lawsuit.[1] And SIREN successfully intervened in a separate lawsuit filed by a political candidate seeking to force California to remove more voters from its rolls.[2]

14. I understand that DOJ's list was likely generated by matching voter information against unreliable federal databases, putting SIREN members and the

[1] *See United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *argued*, No. 26-1232 (9th Cir. May 19, 2026).

[2] *See Wagner v. Weber*, No. 8:26-cv-01263, ECF No. 35 (C.D. Cal.).

communities we serve, which include many naturalized citizens, at risk of being inaccurately flagged as ineligible voters. SIREN is aware that courts have found that the federal citizenship data is often out-of-date and unreliable in determining an individual's citizenship status for purposes of voter registration. Naturalized citizens, for example, have provided evidence to courts that their registrations have been revoked and questioned due to inaccurate Social Security Administration records.

15. Given this reality, I am unfortunately confident that DOJ's demands will intimidate and deter our members and constituents from engaging in the political process for fear of the federal government improperly scrutinizing them. SIREN's core civic engagement efforts specifically include assisting recently naturalized citizens and those who just turned eighteen with the voter registration and voting process. We have spent decades building up a reputation for trust among the communities we serve. We are proud to engage in this important work, but that work becomes significantly more difficult if community members believe their ballots will not be counted, or that they could be punished, scrutinized, or investigated, or that they could put their families at risk, simply by registering to vote and casting a ballot.

16. If DOJ is successful in forcing the State to withhold, set aside, or refuse to count ballots on the eve of the election, SIREN will be forced to expend its limited resources not only to ensure voters' ballots are counted, but to rebuild trust among these communities to continue engaging in the organization's core work.

I declare under penalty of perjury that the foregoing is true and correct.

Executed On: 10/15/2026

Huy Tran

Huy Tran
Executive Director, SIREN