Aseem Mulji (Cal. Bar No. 330354)
amulji@campaignlegalcenter.org
Anna Baldwin* (DC Bar No. 998713)
abaldwin@campaignlegalcenter.org
Sejal Jhaveri* (DC Bar No. 90043488)
sjhaveri@campaignlegalcenter.org
Daniel S. Lenz* (WI Bar No. 1082058)
dlenz@campaignlegalcenter.org
David Kronig* (DC Bar No. 1030649)
dkronig@campaignlegalcenter.org
William Hancock* (DC Bar No. 90002204)
whancock@campaignlegalcenter.org
Heather Szilagyi* (DC Bar No. 90006787)
hszilagyi@campaignlegalcenter.org
Robyn K. Bitner* (DC Bar No. 1617036)
rbitner@campaignlegalcenter.org
**CAMPAIGN LEGAL CENTER**
1333 New Hampshire Ave. NW, Ste. 300
Washington, DC 20036
(202) 736-2200

Norman L. Eisen* (DC Bar No. 435051)
norman@democracydefenders.org
Tianna Mays* (DC Bar No. 21597)
tianna@democracydefenders.org
Pooja Chaudhuri** (Cal. Bar No. 314847)
pooja@democracydefenders.org
Jacki Anderson* (DC Bar No. 1531821)
jacki@democracydefenders.org
Beauregard Patterson* (WI Bar No. 1102842)
beauregard@democracrydefenders.org
Jacob Kovacs-Goodman* (DC Bar No. 90032363)
jacob@democracydefenders.org
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Ave. SE #15180
Washington, DC 20003
(202) 601-8678

*Additional counsel on next page*

Kristen M. Clarke* (DC Bar No. 973885)
kclarke@naacpnet.org
Anthony P. Ashton* (MD Bar No. 25220)
aashton@naacpnet.org
Olivia N. Sedwick* (DC Bar No. 1600928)
osedwick@naacpnet.org
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
4805 Mt. Hope Drive
Baltimore, MD 21215
(410) 580-5777

*Counsel for Proposed Intervenor-Defendants League of United Latin American Citizens; NAACP; NAACP California/Hawaii State Conference; NAACP Los Angeles Branch*

**Pro hac vice application forthcoming*
***Admission application forthcoming*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

STATE OF CALIFORNIA; SHIRLEY WEBER, in her official capacity as the Secretary of State of California; and DEAN LOGAN, in his official capacity as Los Angeles County Registrar-Recorder,

*Defendants*.

Case No. 2:26-cv-12025

**LEAGUE OF UNITED LATIN AMERICAN CITIZENS; NAACP; NAACP CALIFORNIA/HAWAII STATE CONFERENCE; AND NAACP LOS ANGELES BRANCH'S NOTICE OF MOTION AND MOTION TO INTERVENE AS DEFENDANTS AND MEMORANDUM OF POINTS AND AUTHORITIES**

Date: To be determined
Time: To be determined
Courtroom: To be determined
Judge: To be determined

## NOTICE OF MOTION AND MOTION TO INTERVENE

The League of United Latin American Citizens (LULAC), National Association for the Advancement of Colored People, NAACP California/Hawaii State Conference, and NAACP Los Angeles Branch (together, NAACP) (collectively, Proposed Intervenor-Defendants) respectfully request an order granting them leave to intervene as additional defendants in this action as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, granting them permission to intervene under Rule 24(b).

Proposed Intervenor-Defendants are some of our nation's leading Latino and Black advocacy organizations. They seek to intervene because the Federal Government's demands flout the law, disregard the realities of election administration, and defy basic standards of decency—all while voting is underway. The Federal Government's eleventh-hour suit, if successful, would have devastating consequences, not only for the communities and U.S. citizen voters that Proposed Intervenor-Defendants serve, but for the election systems administered under state law. Requiring Defendants to comply with these demands would cause profound harm and, indeed, have already created confusion, disrupted an ongoing voting process, and deterred eligible voters from participating. While in more ordinary circumstances, Proposed Intervenor-Defendants could proceed on a less expedited basis, this suit and its requested relief threatens California's election system and its voters and requires immediate action.

The bases of this Motion are more fully set forth in the accompanying Memorandum of Points and Authorities, which is supported by the Declarations of Juan Proaño, Tyler Sterling, and Anna Baldwin, along with a Proposed Answer, each of which is incorporated by reference. Prior to filing, and as described in the Declaration of Anna Baldwin, counsel for Proposed Intervenor-Defendants contacted counsel for the Plaintiff and attorneys representing each Defendant. Counsel for the Plaintiff

indicated their position as follows: "The United States opposes this request. It is premature. Defendants should be properly served, and a judge should be assigned to the case." Counsel for Defendants the State of California and Secretary of State Shirley N. Weber took no position on the motion. Counsel for Defendant Los Angeles County Registrar-Recorder Dean C. Logan also took no position on the motion.

Proposed Intervenor-Defendants acknowledge that this Motion is filed prior to conferral by phone or in person with opposing counsel for Plaintiff the United States, pursuant to Local Rule 7-3. Proposed Intervenor-Defendants nonetheless respectfully request the Court consider this Motion. As set out in the Declaration of Anna Baldwin, Proposed Intervenor-Defendants attempted to schedule such conferral prior to filing this motion. But as described in the Complaint and the attached exhibits, Plaintiff's conduct required a more expeditious response, given the urgency of the ongoing election, the Federal Government's representation that it would seek "Emergency Relief," ECF No. 1-3, and that Local Rule 7-3 exempts applications under Federal Rule of Civil Procedure 65 for temporary restraining orders or preliminary injunctions.

In the alternative, should the Court determine that the Motion is premature or further conferral is required, Proposed Intervenor-Defendants respectfully request that that the Court hold the Motion in abeyance and order that all required conferral take place by 5:00 PM Pacific time on October 16, 2026, and that Proposed Intervenor-Defendants file a notice informing the Court of the parties' positions following such conferral.

## TABLE OF CONTENTS


NOTICE OF MOTION AND MOTION TO INTERVENE .... iv

TABLE OF AUTHORITIES .... vii

INTRODUCTION .... 1

BACKGROUND .... 2

- A. Procedural Posture .... 4
- B. League of United Latin American Citizens .... 5
- C. The NAACP, NAACP California/Hawaii State Conference, and NAACP Los Angeles Branch .... 5

LEGAL STANDARD .... 6

ARGUMENT .... 7

- I. LULAC and NAACP are entitled to intervene as of right under Rule 24(a)(2). .... 7
  - A. This motion is timely. .... 7
  - B. LULAC and NAACP have significantly protectable interests related to this litigation. .... 8
  - C. This litigation will impact LULAC's and NAACP's interests. .... 10
  - D. The current parties do not adequately represent LULAC's and NAACP's interests. .... 11
- II. In the alternative, LULAC and NAACP should be permitted to intervene under Rule 24(b). .... 14

CONCLUSION .... 15

CERTIFICATE OF COMPLIANCE ....

# TABLE OF AUTHORITIES

**Cases** **Pages**

*1789 Foundation Inc., v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919 (D. Ariz. Mar. 17, 2025) .......... 9

*Alaniz v. Tillie Lewis Foods*, 572 F.2d 657 (9th Cir. 1978) .......... 7

*American Encore v. Fontes*, 152 F.4th 1097 (9th Cir. 2025) .......... 8

*Animal Protection Institute v. Martin*, 241 F.R.D. 66 (D. Me. 2007) .......... 15

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .......... 6

*Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022) .......... 6, 12, 13

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011) .......... 10-13

*Common Cause v. United States Department of Justice*, No. CV 26-1352, 2026 WL 3033772 (D.D.C. Oct. 9, 2026) .......... 3

*Dagget v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104 (1st Cir. 1999) .......... 15

*Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445, 2020 WL 5229116 (D. Nev. Aug. 21, 2020) .......... 12

*Equal Employment Opportunity Commission v. Federal Express Corp.*, No. C94-790C, 1995 WL 569446 (W.D. Wash. Aug. 8, 1995) .......... 7

*Issa v. Newsom*, No. 20-CV-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020) .......... 9, 12

*Kern County Farm Bureau v. Badgley*, No. CVF 025376 AWI DLB, 2002 WL 34236869 (E.D. Cal. Oct. 10, 2002) .......... 1

*League of United Latin American Citizens v. Executive Office of the President*, 818 F. Supp. 3d 34 (D.D.C. 2026) (*LULAC II*) .......... 1, 3

*League of Women Voters of Massachusetts v. Trump*, No. 1:26-CV-11549-IT, 2026 WL 2620871 (D. Mass. Sep. 4, 2026) .......... 3

*LULAC v. Nelson*, No. 26-cv-00729 (W.D. Tex. 2026) .......... 15

*NAACP v. Trump*, No. 26-cv-01151 (D.D.C. 2026) .......... 15

*Paher v. Cegavske*, No. 3:20-CV-00243-MMDWGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) .......... 12

*Reynolds v. Sims*, 377 U.S. 533 (1964) .......... 1

*Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) .......... 11

*San Jose Mercury News, Inc. v. United States District Court-Northern District (San Jose)*, 187 F.3d 1096 (9th Cir. 1999) .......... 6

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) .......... 7, 11

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) .......... 11

*United States v. Hobbs*, No. C25-6078-KKE, 2026 WL 2833713 (W.D. Wash. Sep. 22, 2026) .......... 3

*Washington v. United States Department of Transportation*, No. 2:25-cv-00848-TL, 2025 WL 3023041 (W.D. Wash. Oct. 29, 2025) .......... 7

*Western States Trucking Ass'n v. Schoorl*, No. 2:18-CV-1989, 2018 WL 5920148 (E.D. Cal. Nov. 13, 2018) .......... 7

*Western Watersheds Project v. Haaland*, 22 F.4th 828 (9th Cir. 2022) .......... 6

*Wilderness Society v. United States Forest Service*, 630 F.3d 1173 (9th Cir. 2011) .......... 8

**Constitutional Provisions**

U.S. Const. art. I, § 2, cl. 1 .......... 1

U.S. Const. art. I, § 4, cl. 1 .......... 1

**Statutes**

52 U.S.C. § 21083 .......... 13

**Rules**

Fed. R. Civ. P. 24(a) .......... 6
Fed. R. Civ. P. 24(b) .......... 6

**Other Authorities**

Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026) .......... 3
Executive Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025) .......... 2
Executive Order No. 14,399, 91 Fed. Reg. 17125 (Mar. 31, 2026) .......... 3
Nicholas Kerr & Elise Spenner, *System that DHS is urging states to use to assess voter rolls known to return faulty results: reports*, ABC News (July 19, 2026), https://perma.cc/5YBE-LRW6 .......... 4
*Public Voter File Acquisition and Handling*, FedScoop (Sep. 1, 2026), https://perma.cc/RU4S-82KV .......... 4
Sam Levine, *Nearly 200 people wrongly identified on Nevada's voter rolls as non-citizens*, The Guardian (Sep. 25, 2026), https://perma.cc/9VUK-LWWP .......... 4
Steven Portnoy *et al.*, *Mullin threatens to withhold aid from states that don't comply with DHS election directives*, ABC News (July 17, 2026), https://perma.cc/AL3Y-QX9H. .......... 14

## INTRODUCTION[1]

The Federal Government, acting through the U.S. Department of Justice (USDOJ) and the U.S. Department of Homeland Security (DHS), has initiated this case, demanding, 19 days before Election Day, that the State of California and Los Angeles County comply with its lawless demands to circumvent state and federal law governing voter eligibility, voter list maintenance procedures, and mail ballot rules. These demands have no basis in law or fact and would cause unconstitutional disenfranchisement of eligible voters. *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (citation omitted) (describing the "constitutionally protected right to vote, and to have [] votes counted"). This type of action is well in excess of any Congressionally-delegated authority the executive branch may have in federal elections. The states and Congress share responsibilities for regulating election administration, but the executive does not have free-ranging authority in this sphere. *See* U.S. Const. art. I, § 2, cl. 1; U.S. Const. art. I, § 4, cl. 1. The Constitution "assign[s] no role at all to the President" in election administration. *League of United Latin Am. Citizens v. Exec. Off. of the President*, 818 F. Supp. 3d 34, 53 (D.D.C. 2026) (*LULAC II*), *judgment entered*, No. 25-cv-0946, 2026 WL 880056 (D.D.C. Mar. 31, 2026).

Proposed Intervenor-Defendants seek to intervene to protect the rights of voters, including their members, against this type of federal overreach and resulting disenfranchisement. Proposed Intervenor-Defendant the League of United Latin American Citizens (LULAC) is the nation's largest and oldest Latino civil rights

[1] Consistent with Rule 24(c), Proposed Intervenor-Defendants have attached a Proposed Answer to their motion. However, if granted intervention, Proposed Intervenor-Defendants intend to file a Rule 12 Motion before filing a responsive pleading in this case. *See, e.g.*, *Kern Cnty. Farm Bureau v. Badgley*, No. CVF 025376 AWI DLB, 2002 WL 34236869, at *19 (E.D. Cal. Oct. 10, 2002) (holding Rule 12 motion filed after intervention was granted is timely where proposed answer accompanied prior motion to intervene).

organization in the country and it works to advance the voting rights, economic conditions, and social welfare of the Hispanic community. LULAC has over half a million members nationwide, including over 40,000 in California. Proposed Intervenor-Defendants the National Association for the Advancement of Colored People, NAACP California/Hawaii State Conference, and NAACP Los Angeles Branch (together, NAACP) is the nation's oldest civil rights organization with nearly 200,000 members nationally and nearly 12,000 members in California. The NAACP is dedicated to achieving equity, political rights, and social inclusion by advancing policies and practices that expand human and civil rights, eliminate discrimination, and accelerate the well-being, education, and economic security of Black people and all persons of color. Each Proposed Intervenor-Defendant is a membership organization whose mission and work centers the promotion of civic engagement, including through voting. Because Proposed Intervenor-Defendants' interests and their members are directly impacted by this litigation, they have a right to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, Proposed Intervenor-Defendants seek permissive intervention under Rule 24(b)(1).

## BACKGROUND

This case is the Federal Government's latest and most transparent gambit to undermine a state's existing electoral process and interfere with administration of an ongoing election. Over the last two years, the executive branch has continually sought to exceed the bounds of its limited authority to enforce federal election statutes, frequently usurping the election regulation and administration authority that the Constitution assigns primarily to the states. In March 2025, the President issued an executive order that purported to require, among other things, that the Election Assistance Commission take action to require additional documentation for voters to register using the federal registration form and to prohibit states from counting ballots received after election day. Exec. Order No. 14,248, 90 Fed. Reg. 14005, 14006-07,

§ 2(b), 2(b)(iii) (Mar. 25, 2025) (2025 Elections EO). In March 2026, the President issued an executive order on mail voting that directed DHS to create lists of citizens eligible to vote using information from U.S. Citizenship and Immigration Services, the Social Security Administration, and "other relevant Federal databases." Exec. Order No. 14,399, 91 Fed. Reg. 17125, 17125, § 2(a) (Mar. 31, 2026) (Mail Voting EO). That executive order also required the United States Postal Service to implement rules to redesign ballot envelopes and send ballots only to voters who appear on certain lists. *See* Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026). And over the last thirteen months, USDOJ has sued 30 states and the District of Columbia, seeking to compel them to produce unredacted versions of their state voter registration lists. *See United States v. Hobbs*, No. C25-6078-KKE, 2026 WL 2833713, at *1 n.3 (W.D. Wash. Sep. 22, 2026) (listing cases). This is part of a larger USDOJ effort to obtain voter information from the states and share that information throughout the executive branch. *See Common Cause v. U.S. Dep't of Just.*, No. CV 26-1352, 2026 WL 3033772, at *5-7 (D.D.C. Oct. 9, 2026) (describing USDOJ's policy of obtaining and sharing voter lists).

The courts have overwhelmingly rejected the Federal Government's efforts. *See id.* at *36 (setting aside and vacating USDOJ's policy); *Hobbs*, 2026 WL 2833713, at *1 n.3 (cases in which courts have dismissed USDOJ efforts to compel unredacted voter lists); *LULAC II*, 818 F. Supp. 3d at 53 (enjoining portions of 2025 Elections EO); *League of Women Voters of Mass. v. Trump*, No. 1:26-CV-11549-IT, 2026 WL 2620871, at *1 (D. Mass. Sep. 4, 2026) (enjoining portions of Mail Voting EO), *stay denied sub nom. U.S. Postal Serv. v. California*, 26A305, 2026 WL 2687160 (U.S. Sep. 14, 2026). The Government's efforts to interfere with election administration and restrict voting have persisted. As recently as July 17, 2026, the Secretary of DHS threatened to withhold funds and possibly prosecute state officials unless they "scrub" their voter rolls in line with DHS's demands, after apparently running several states'

voter rolls through the SAVE program.[2] And DHS's investigations unit recently put out a request for information to find a contractor who can "secure delivery of publicly available voter registration files and voter history files to support Homeland Security Investigations (HSI) fraud detection and data segmentation activities."[3] The Federal Government's baseless claims that large numbers of non-citizens are present on voting rolls have repeatedly been proven false. In Nevada, for example, DHS initially identified up to 15,903 such individuals but later reduced that number to 185. Nevada officials then confirmed that all 185 are citizens.[4]

### A. Procedural Posture

The United States filed its Complaint in this matter on October 15, 2026, alleging a single count under the Supremacy Clause, and requesting that this Court, among other things, "[i]ssue a preliminary and permanent injunction enjoining California from tabulating in federal elections vote-by-mail ballots received from" over 20,000 individuals that it claims to have identified. Compl. at 14, ECF No. 1. This relief, which lacks a basis in law, would disenfranchise eligible U.S. citizen voters in Los Angeles County. Both the filings from the United States and their correspondence with California election officials represent an intention to seek preliminary relief at the outset of this case. *See* Compl. ¶ 63, ECF No. 1; Ex. C, Declaration of Anna Baldwin, at 2. Proposed Intervenor-Defendants LULAC and NAACP seek timely intervention as defendants to vindicate their interests in this matter.

---

[2] Nicholas Kerr & Elise Spenner, *System that DHS is urging states to use to assess voter rolls known to return faulty results: reports*, ABC News (July 19, 2026), https://perma.cc/5YBE-LRW6.

[3] *See Public Voter File Acquisition and Handling*, FedScoop (Sep. 1, 2026), https://perma.cc/RU4S-82KV.

[4] Sam Levine, *Nearly 200 people wrongly identified on Nevada's voter rolls as non-citizens*, The Guardian (Sep. 25, 2026), https://perma.cc/9VUK-LWWP.

### B. League of United Latin American Citizens

LULAC is the largest and oldest Latino civil rights organization in the United States. Established in 1929 and headquartered in Washington, D.C., LULAC is a nationwide, non-profit, nonpartisan, membership-based organization with more than 400 councils (local chapters) and over 500,000 members, with members in every state in the country. LULAC uses local community-based programming to advance the voting rights, economic conditions, educational attainment, and health outcomes of the Hispanic community. LULAC's voting rights work includes educational initiatives, voter registration drives, get-out-the-vote campaigns, and community events around critical issues.

In California, LULAC has 28 councils and over 40,000 members. More than 80 percent of these members are registered to vote. In Los Angeles County alone, LULAC has five councils and over 5,700 members. The five councils in the Los Angeles area are Young Professionals, Long Beach, Antelope Valley, UCLA, and USC.

### C. The NAACP, NAACP California/Hawaii State Conference, and NAACP Los Angeles Branch

The NAACP was founded in 1909 by pioneers of racial justice and is the nation's oldest civil rights organization. Its mission is to achieve equity, political rights, and social inclusion by advancing policies and practices that expand human and civil rights, eliminate discrimination, and accelerate the well-being, education, and economic security of Black people and all persons of color. Part of this mission includes working to register and mobilize voters through robust non-partisan civic engagement and get-out-the-vote programming. The NAACP also engages in voter protection efforts, advocating on behalf of voters across the country to ensure that the law is followed and that the right to vote is respected and protected. The NAACP has over two thousand local branches, college chapters, prison chapters, and youth councils, including the California/Hawaii State Conference and the Los Angeles Branch. Nationwide, the

NAACP has approximately 200,000 formal members, including approximately 12,000 in California and 1,000 in Los Angeles County.

**LEGAL STANDARD**

The federal rules provide two pathways for a nonparty to intervene in a pending action.

First, Rule 24(a) entitles a nonparty to intervene in an action as a matter of right when: (1) the motion to intervene is timely filed; (2) the proposed intervenors have "an interest relating to" the subject matter of the action; (3) the proposed intervenors are "so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [that] interest"; and (4) the proposed intervenors' interests are inadequately represented by the existing parties to the suit. Fed. R. Civ. P. 24(a); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022). The Ninth Circuit interprets the requirements of Rule 24(a) "broadly in favor of intervention." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)). "In addition to mandating broad construction, [] review is guided primarily by practical considerations, not technical distinctions." *Id.* A court must allow any party to intervene who meets the four criteria set forth by the Federal Rules. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

Second, Rule 24(b) provides that, even if a nonparty cannot intervene as a matter of right, a court may permit intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact" and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). "A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.-N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999). In considering motions to intervene, courts "take all well-pleaded, nonconclusory allegations in the motion to

intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity[,] or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

## ARGUMENT

### I. LULAC and NAACP are entitled to intervene as of right under Rule 24(a)(2).

LULAC and NAACP are entitled to intervene in this litigation because the motion is timely; the organizations and their members have significant interests in the case; those interests will be impacted by the outcome; and no other existing party adequately represents those interests.

#### A. This motion is timely.

Whether a motion to intervene is timely is within "the sound discretion of the trial court." *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978). Factors courts consider include "the stage of the proceeding"; "prejudice to other parties"; and "the reason for and the length of the delay." *Id.* All of these factors support finding the utmost timeliness here.

Proposed Intervenor-Defendants moved to intervene the very next day after the filing of the Complaint, long before the case progressed beyond the initial stages. *Equal Emp. Opportunity Comm'n v. Fed. Express Corp.*, No. C94-790C, 1995 WL 569446, at *5 (W.D. Wash. Aug. 8, 1995) (granting motion to intervene filed years into litigation at summary judgment stage despite "substantial[] delay[]"). Although a judge has not yet been assigned and Defendants have not yet filed a responsive pleading, neither is a rationale to delay granting, or otherwise denying, Proposed Intervenor-Defendants' motion. *See Washington v. U.S. Dep't of Transp.*, No. 2:25-cv-00848-TL, 2025 WL 3023041, at *8 (W.D. Wash. Oct. 29, 2025) (granting motion to intervene where defendants had not answered and no dispositive motions had been filed); *see also W. States Trucking Ass'n v. Schoorl*, No. 2:18-CV-1989, 2018 WL 5920148, at *1 (E.D.

Cal. Nov. 13, 2018) (finding no prejudice where party "sought to intervene [at] the very outset of litigation"). Accordingly, neither party will be prejudiced because no delay will result if Proposed Intervenor-Defendants' motion is granted. Proposed Internvenor-Defendants' motion is therefore timely.

**B. LULAC and NAACP have significantly protectable interests related to this litigation.**

This litigation is closely tied to Proposed Intervenor-Defendants' organizational interests and the interests of the thousands of individuals who comprise LULAC's and NAACP's membership within Los Angeles County and the State of California. Under Rule 24(a)(2), "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). "Rule 24(a)(2) does not require a specific legal or equitable interest." *Id.* (citing *Fresno Cnty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)). "[I]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). The Ninth Circuit has recognized that "[t]here is no doubt that the right to vote is a legally protected interest and voter disenfranchisement is a concrete and particularized injury." *Am. Encore v. Fontes*, 152 F.4th 1097, 1111 (9th Cir. 2025).

Proposed Intervenor-Defendants have strong organizational interests that are closely related to this litigation. First, the organizations engage in robust non-partisan civic engagement and get-out-the vote programming. *See* Ex. A, Declaration of Juan Proaño ¶¶ 9-11 (Proaño Decl.); Ex. B, Declaration of Tyler Sterling ¶ 8 (Sterling Decl.). Second, the organizations have voter education programs to ensure that their members can access reliable information and exercise their right to vote. Proaño Decl. ¶¶ 10-11;

Sterling Decl. ¶ 8. Third, the organizations seek to protect their members' right to vote, especially because both organizations have members who face obstacles and challenges in exercising that right. Proaño Decl. ¶ 20-25; Sterling Decl. ¶¶ 6-8, 15. For example, both organizations' members heavily use and rely upon mail ballots to participate in California elections. Proaño Decl. ¶¶ 12-13; Sterling Decl. ¶ 15. These interests bear a close relationship to the litigation because this matter directly implicates the type of get-out-the-vote programming the organizations will need to run for Los Angeles County, the voter education information they will need to provide their potentially affected members in Los Angeles County, and the voter protection programming they will need to run for Los Angeles County. Proaño Decl. ¶¶ 10-12, 18-20; Sterling Decl. ¶¶ 11-12.

Additionally, Proposed Intervenor-Defendants' members have protectable interests related to this litigation because they are registered California voters in Los Angeles County and their right to vote is at stake. Proaño Decl. ¶¶ 7, 12, 21-22, 24; Sterling Decl. ¶¶ 4-5, 12, 14-15. These members registered to vote in accordance with California law, made the required certifications of citizenship under penalty of perjury, and received mail-in ballots, all in accordance with state and federal law. Since there is no way for a voter to know if they are on the Federal Government's "list," this litigation leaves every member uncertain as to the fate of their mail ballots. It also threatens to prevent some of these members from having their ballots counted alongside other eligible voters and subjecting them to unlawful proof of citizenship requirements. And this list will undoubtedly intimidate voters from submitting their ballots at all for fear that their ballots could possibly be segregated. Courts routinely find that these kinds of interests are legally protectable and support intervention. *See, e.g.*, *Issa v. Newsom*, No. 20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *3 (D. Ariz. Mar. 17, 2025).

**C. This litigation will impact LULAC's and NAACP's interests.**

This litigation directly impacts Proposed Intervenor-Defendants' organizational interests and the interests of their members. *See supra* Section I.B. Once a court finds that an intervenor has a significantly protectable interest, the court should have "little difficulty concluding that the disposition of the case may, as a practical matter, affect it." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (citation omitted).

Proposed Intervenor-Defendants and their individual members' interests will also be impaired if some are unlawfully removed from the voter list, their ballots are segregated and not counted, or they are subjected to additional proof-of-citizenship requirements. Even for members who are not on the Federal Government's "list," Proposed Intervenor-Defendants and their members' interests are already impaired because their members reasonably fear rejection of their ballots and may feel compelled to forgo their mail ballot option in favor of in-person voting because of the uncertainty the Federal Government has created. The Federal Government seeks to control which voters may remain on California's voter rolls, which ballots get counted, and which steps voters must take to prove their citizenship. Such drastic alterations to California election procedures—sought at the eleventh hour—would have immense effects on Proposed Intervenor-Defendants' election-related work and their members' ability to vote. In particular, the Federal Government's requested relief would subject mail ballots to radically different treatment than in-person ballots, which would require Proposed Intervenor-Defendants to alter their voter education and engagement work and may dissuade their members and constituents from using mail voting. LULAC and its members are particularly likely to be affected because many of its members are naturalized citizens, the people most often misidentified as noncitizens because outdated government databases frequently have errant indicators of noncitizenship. Proaño Decl. ¶¶ 13, 21-24.

**D. The current parties do not adequately represent LULAC's and NAACP's interests.**

Neither LULAC's nor NAACP's interests are adequately represented by the existing parties. To support intervention as of right, it is enough that the "representation of [their] interest[s] '*may be*' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added) (citation omitted). This is a "minimal" burden. *Id.*; *see also Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). In assessing the adequacy of representation, courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). The "most important factor in assessing the adequacy of representation is how the [intervenor's] interest compares with the interests of existing parties." *Citizens for Balanced Use*, 647 F.3d at 898 (citation modified). Indeed, the Ninth Circuit frequently reverses denials of intervention where district courts strictly applied the adequacy of representation standard despite differing interests. *See id.* at 901 (reversing denial of intervention because the court could not "conclude that the [government party] will undoubtedly make all of [intervenors'] arguments"); *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 819, 823, 824 (reversing denial of intervention because "[t]he interests of government and the private sector may diverge" and, therefore, there was "sufficient doubt about the adequacy of representation") (citation omitted). LULAC and NAACP can easily satisfy the adequacy standard because they have distinct interests that diverge from—and, at times,

even conflict with—the interests of Defendants, who cannot as a result be expected to make all of Intervenor-Defendants' arguments.

First, LULAC and NAACP are organizations that represent and have thousands of members who are themselves California mail-ballot voters in Los Angeles County, whose ballots could be segregated and not counted because of the Federal Government's demands. There is a robust line of cases where district courts in this Circuit have found that the interest in protecting individual voters' rights is uniquely held by private parties and not adequately represented by government defendants—even where they may share the same objective. *See, e.g.*, *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445, 2020 WL 5229116, at *1 (D. Nev. Aug. 21, 2020) (granting intervention under Rule 24(a) because government defendant did not adequately represent private organization's interests); *Paher v. Cegavske*, No. 3:20-CV-00243-MMDWGC, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020) (granting intervention under Rule 24(a) even where intervenors shared the "goal of protecting the all-mail election provisions" at issue). Thus, even though Intervenor-Defendants are "on the same side" as Defendants in terms of the public interest, *Issa*, 2020 WL 3074351, at *3, the government's public interest is not "identical to the individual parochial interest" of LULAC and NAACP, *Citizens for Balanced Use*, 647 F.3d at 899 (citation omitted). For that reason, the rebuttable presumption that existing parties will adequately represent the interests of intervenors does not apply because Intervenor-Defendants' interests are not "*identical* to those of an existing party," even though the ultimate goal may be the same. *Berger*, 597 U.S. at 196 (emphasis added). The Ninth Circuit has repeatedly held that intervention is appropriate when the intervenor and the government "have distinct interests and objectives," even if their ultimate goal in the

litigation is the same. *Citizens for Balanced Use*, 647 F.3d at 899; *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 819.

Second, Defendants are election administrators with their own objectives and obligations that cause their interests to diverge from those of Proposed Intervenor-Defendants, who are solely focused on their members' voting rights. See *Berger*, 597 U.S. at 195. For example, Defendants are obligated to undertake reasonable efforts to remove ineligible voters from their voter registration rolls. *See* 52 U.S.C. § 21083. Defendants must also balance separate interests, including state and municipal budgetary concerns, administrative constraints, litigation costs, criminal liability exposure, and public opinion. And Defendants may not be able to articulate specific harms to voters or offer zealous protection of Californians' right to vote in the same way that LULAC and NAACP could. Conversely, LULAC and NAACP have no potentially competing objectives, as they are only interested in protecting California voters' and their members' ability to engage in meaningful political participation, including casting a ballot and having that ballot counted alongside the ballots of other eligible California voters. *See supra* Section I.B.

Finally, Defendants are uniquely susceptible to threats of federal coercion that do not implicate LULAC or NAACP. The Federal Government's lawsuit raises the possibility that it may later pursue criminal investigation and prosecution if Defendants do not comply with their demands. The Complaint expressly alleges that persons may be found "in violation of federal law for aiding and abetting, or otherwise facilitating, the federal crime of noncitizen voting." Compl. ¶ 19, ECF No. 1. The Complaint further alleges that "California's actions thus knowingly facilitate unlawful voting." *Id.* ¶ 59. The Complaint immediately follows that allegation with a claim that they actively investigate and prosecute crimes related to illegal voting. *Id.* ¶ 60. These thinly veiled threats of criminal prosecution against Defendants echo more express public claims by DHS Secretary Mullin that criminal prosecutions would be directed to election officials

who did not cooperate with DHS's directives to scrub voter rolls.[5] Secretary Mullin also threatened to withhold federal funding from states that did not cooperate with DHS.[6] Defendants are uniquely exposed to the coercive pressures of potential criminal liability and deprivation of federal funds. By contrast, LULAC's and NAACP's interests, arguments, and litigating positions are not subject to those pressures and can fully and zealously defend the rights of their members and constituents.

## II. In the alternative, LULAC and NAACP should be permitted to intervene under Rule 24(b).

Even if the Court determines that LULAC and NAACP do not have a right to intervene under Rule 24(a), it should permit intervention under Rule 24(b) for three reasons: (1) LULAC and NAACP raise defenses that share common questions of law and fact with this matter; (2) LULAC and NAACP will help fully develop the facts of the case; and (3) their intervention will not unduly delay or prejudice the litigation.

The defenses LULAC and NAACP intend to raise present common questions of law and fact because they directly engage with and contest the Federal Government's ability to state a claim and prove any lawful entitlement to the relief sought. *See* Ex. D, Proposed Answer. For example, LULAC and NAACP fundamentally dispute the Federal Government's legal theories and intend to show that its single claim and relief sought are inconsistent with the U.S. Constitution and federal law. *Id.* at 11-12. Further, LULAC and NAACP are uniquely positioned to appraise the Court about critical factual and legal questions. LULAC and NAACP have decades of experience working to safeguard democracy, advocate for voters, and protect their rights to participate in the electoral process. Further, LULAC and NAACP are more directly engaged with

---

[5] Steven Portnoy *et al.*, *Mullin threatens to withhold aid from states that don't comply with DHS election directives*, ABC News (July 17, 2026), https://perma.cc/AL3Y-QX9H.

[6] *Id.*

individual voters than Defendants, which puts them in a better position to provide the Court with factual information concerning how the Federal Government's claims and requested relief will affect voters. Finally, LULAC and NAACP are involved in related litigation over the Federal Government's (mis)use of federal databases for list maintenance and are well-appraised of relevant legal issues and the status of related proceedings. *See generally NAACP v. Trump*, No. 26-cv-01151 (D.D.C. 2026); *LULAC v. Nelson*, No. 26-cv-00729 (W.D. Tex. 2026). Rule 24(b) counsels in favor of permissive intervention in circumstances where "the applicants may be helpful in fully developing the case[.]" *Dagget v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999). Given that "Rule 24(b) should be construed liberally," the Court should permit Proposed Intervenor-Defendants' voice to be heard in this matter. *Animal Prot. Inst. v. Martin*, 241 F.R.D. 66, 68 (D. Me. 2007) (citation omitted). LULAC and NAACP will neither delay nor prejudice the litigation and will abide by the schedule set by the Court.

## CONCLUSION

For the reasons stated, this Court should grant LULAC's and NAACP's motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, should grant permissive intervention under Rule 24(b).

Dated: October 16, 2026

Respectfully submitted,

/s/ Aseem Mulji
Aseem Mulji (Cal. Bar No. 330354)
amulji@campaignlegalcenter.org
Anna Baldwin* (DC Bar No. 998713)
abaldwin@campaignlegalcenter.org
Sejal Jhaveri* (DC Bar No. 90043488)
sjhaveri@campaignlegalcenter.org

Norman L. Eisen* (DC Bar No. 435051)
norman@democracydefenders.org
Tianna Mays* (DC Bar No. 21597)
tianna@democracydefenders.org
Pooja Chaudhuri** (Cal. Bar No. 314847)
pooja@democracydefenders.org
Jacki Anderson* (DC Bar No. 1531821)
jacki@democracydefenders.org

Beauregard Patterson* (WI Bar No. 1102842)
beauregard@democracydefenders.org
Jacob Kovacs-Goodman* (DC Bar No. 90032363)
jacob@democracydefenders.org
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Ave. SE #15180
Washington, DC 20003
(202) 601-8678

Kristen M. Clarke* (DC Bar No. 973885)
kclarke@naacpnet.org
Anthony P. Ashton* (MD Bar No. 25220)
aashton@naacpnet.org
Olivia N. Sedwick* (DC Bar No. 1600928)
osedwick@naacpnet.org
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE**
4805 Mt. Hope Drive
Baltimore, MD 21215
(410) 580-5777

Daniel S. Lenz* (WI Bar No. 1082058)
dlenz@campaignlegalcenter.org
David Kronig* (DC Bar No. 1030649)
dkronig@campaignlegalcenter.org
William Hancock* (DC Bar No. 90002204)
whancock@campaignlegalcenter.org
Heather Szilagyi* (DC Bar No. 90006787)
hszilagyi@campaignlegalcenter.org
Robyn K. Bitner* (DC Bar No. 1617036)
rbitner@campaignlegalcenter.org
**CAMPAIGN LEGAL CENTER**
1333 New Hampshire Ave. NW, Ste. 300
Washington, DC 20036
(202) 736-2200

**Pro hac vice application forthcoming*
***Admission application forthcoming*

*Counsel for Proposed Intervenor-Defendants League of United Latin American Citizens; NAACP; NAACP California/Hawaii State Conference; NAACP Los Angeles Branch*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record, for Proposed Intervenor-Defendants League of United Latin American Citizens; NAACP; NAACP California/Hawaii State Conference; and NAACP Los Angeles Branch certifies that this brief contains 4,603 words, which complies with the word limit of Local Rule 11-6.1.

Dated: October 16, 2026

/s/ *Aseem Mulji*
Aseem Mulji