UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
Plaintiff,
v.
STATE OF CALIFORNIA, *et al.*,
Defendants.

Case No. 2:26-cv-12025

**DECLARATION OF NICOLAS BARTELL**

# DECLARATION OF NICOLAS BARTELL

1. In accordance with the provisions of 28 U.S.C. § 1746, I, Nicolas Bartell, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

## Experience, Education, and Training

2. I currently hold the position of Associate Director of the Fraud Detection and National Security Directorate (FDNS) at U.S. Citizenship and Immigration Services (USCIS) in the Department of Homeland Security (DHS)—a role I assumed in July 2026.

3. I previously served as senior counselor and strategic policy advisor to the Office of the Director from September 2025 to July 2026, and concurrently, Acting Associate Director for FDNS from April 2026 to July 2026.

4. From December 2022 to September 2025, I held a permanent position as the leader of the Fraud Integrity and National Security Branch within the USCIS Field Operations Directorate (FOD), where I oversaw national security cases and managed the intelligence program.

5. Before that, I was the deputy district director for FOD's Atlanta District, supervising eight field offices in Alabama, Arkansas, Georgia, Louisiana, Mississippi, South Carolina, and Tennessee.

6. Before that, I served as the inaugural field office director for FOD's newly established Montgomery, Alabama, Field Office from 2016 to 2020. In that role, I managed the office from its buildout through full operating status.

7. Prior to assuming that role, I served as a supervisory immigration services officer in the Detroit Field Office, a role I began in 2014.

8. I began my career with USCIS in 2008 as a district adjudications officer in the Chicago Field Office. From 2013 to 2014, I managed the application support center on Saipan in the Commonwealth of the Northern Mariana Islands, supporting the ongoing transition to federal control of immigration in the Islands.

9. I received my juris doctor with a concentration in international law from Thomas M. Cooley Law School and my bachelor's in history from Michigan State University.

**USCIS' Role in Determining Immigration Status**

10. USCIS is the federal agency that oversees lawful immigration into the United States. In this role, USCIS is responsible for adjudicating applications for naturalization, lawful permanent residence, citizenship by operation of law, and other immigration benefits.

11. In the course of its work, USCIS determines the immigration status of individuals and whether those individuals are in fact United States citizens.

12. I submit this declaration to outline how USCIS identifies potential noncitizens who appear on voter rolls.

**USCIS' Role in Federal Election Integrity**

13. As part of its charge to oversee lawful immigration, USCIS receives state voter rolls or information on state voter rolls from DHS to review for potential aliens who unlawfully registered to vote or who voted in a federal election. USCIS conducts extensive data analysis of these rolls and information to identify and match such individuals. USCIS then refers certain matched individuals to Homeland Security Investigations (HSI).

**How USCIS Processes Alien or Noncitizen Voter Records**

14. When presented with information on voter rolls from agencies like DHS, USCIS processes that information to identify registered voters who are likely aliens.

15. This process is distinct from the Systematic Alien Verification for Entitlements (SAVE) program.

16. The voting records USCIS receives contain information about the listed individual such as name, mailing address, date of birth or age, social security number, phone number, email, registration information, voter-history information, and more. USCIS enhances that voter data through a reliable third-party data analytics and

investigative platform. The raw voting record data are combined with the enhanced data and then paired with an internal USCIS alien number that may be the same individual. USCIS then scores and ranks the potential identity match. The matches are scored and ranked because the resulting data may be incomplete, outdated, or mismatched and the potential matches need to be prioritized for manual review. The alien number may include further identifying information like aliases.

17. Following the preliminary identity match, USCIS screens all potential matches against Department of State and Social Security Administration data to remove individuals who can be identified as United States citizens or as deceased and excludes them from any further review.

18. USCIS then consolidates all match evidence and assigns a confidence level for each match. A high confidence match means the match between the voting record and USCIS alien record is strong and consistent with multifield evidence supporting a strong identity link. At this point, USCIS has completed its initial review.

19. Based on the results of the initial review, FDNS investigators manually review the matches to confirm the identity match and determine which registered voters they believe are very likely to be aliens based on USCIS' citizenship data. Part of the FDNS investigation includes verifying whether the registered voter could have potentially derived citizenship based on history or through any parents. Investigators also confirm the match with U.S. Department of State systems to identify if any documents (like passports) may not have been linked in USCIS systems, but which bear on the individual's citizenship status. A second-level review of the match and citizenship status determination occurs as an additional safeguard.

20. After completion of that multilevel review, USCIS makes a final determination on which matches to send to HSI for further assessment. After its investigation, HSI may ask USCIS to perform additional manual review of the relevant matches

**Evidence that Noncitizens in California Are Registered to Vote in California**

21. On or around May 8, 2026, FDNS received a copy of the California Voter rolls from HSI to review. The list referenced in Mr. McLoughlin's declaration is the same list FDNS received. *See* McLoughlin Decl. ¶ 20-21. I also understand that California automatically mails vote-by-mail ballots to participate in a federal election to anyone registered on California voter rolls. *See* 2021 Cal. Stat. ch. 312 (codified at Cal. Elec. Code § 3000.5).

*22.* FDNS took that list and put it through the process identified above to produce the most accurate results of likely noncitizens to whom California law requires a vote by mail ballot to be sent for the November 2026 federal election. In particular, FDNS analyzed the original file and then enhanced the data with third-party data. FDNS then manually reviewed the data with immigration officials who are trained to determine citizenship status. After those steps, FDNS compiled a refined list of individuals who the agency believes are highly likely to be noncitizen aliens registered to vote in the 2026 federal election in California and then FDNS provided HSI with the refined list of individuals. That list includes individuals described in Mr. McLoughlin's declaration. *See* McLoughlin Decl. ¶ 24. I understand that the California Secretary of State and Los Angeles County Registrar-Recorder/County Clerk were provided that list on October 13, 2026. *Id.* and Exhibit A.

23. USCIS, along with FDNS, continue to analyze additional potential noncitizen voter records through the above-mentioned multilevel review process. For example, USCIS has identified a separate batch of more than 17,000 voting records potentially tied to noncitizens after an initial review of voter rolls. Historically speaking, most voters in this initially flagged population will end up being referred to HSI after USCIS completes its manual review. Our review is ongoing as USCIS receives records on a rolling basis before the election date. USCIS intends to supplement the record with additional information of likely noncitizen voting in the federal election. USCIS also

continues to refine its analysis as more information becomes available.[1]

**Conclusion**

24. USCIS and FDNS receive bona fide information of individuals on voter rolls to determine the likely citizenship status of those registered voters. USCIS then processes those voter rolls to identify whether the registered voters are likely noncitizens. Those processes resulted here in a culled list of persons who are likely to be noncitizens and who registered to vote in the upcoming 2026 federal election. USCIS sent that list to HSI for further investigation. My understanding is that list was delivered to the California Secretary of State and Los Angeles County Registrar-Recorder/County Clerk on October 13, 2026. *See* McLoughlin Decl. ¶ 24 and Exhibit A.

25. Based on my training, experience, understanding of California law, the above-described systems, and collaboration with HSI, I reasonably believe that the individuals in the list presented to California (1) registered to vote in California, (2) were sent a vote-by-mail ballot, and (3) are highly likely to be noncitizen aliens.

26. The statements made in this Declaration are based on the knowledge acquired by me in the performance of my official duties and in conjunction with factual and legal research conducted by other investigators and staff at DHS.

[1] As part of its ongoing analysis of voter data, USCIS identified approximately 189 records with minor data discrepancies that appear on the list of over 20,000 individuals sent to California on October 13, 2026. USCIS immediately alerted HSI of the discrepancies.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Nicolas Bartell

Executed this 15 day of October 2026, Camp Springs, MD