# EXHIBIT A

Letter from Assistant County Counsel Peter M. Bollinger to Acting Deputy Attorney General R. Trent McCotter

OFFICE OF THE
COUNTY
COUNSEL

**County of Los Angeles**

Dawyn R. Harrison
County Counsel

October 15, 2026

VIA E-MAIL

R. Trent McCotter
Acting Deputy Attorney General
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
election@hq.dhs.gov

**Re: DOJ Demand Letter Dated October 13, 2026**

Dear Mr. McCotter:

This acknowledges Los Angeles County Registrar-Recorder/County Clerk Dean C. Logan's ("RR/CC") receipt of the U.S. Department of Justice's ("DOJ") letter dated October 13, 2026, hand delivered to the RR/CC's office in Norwalk at approximately 2:55 p.m. PST. The letter was accompanied by a USB flash drive and contains a sticky note with a handwritten password on the last page. The following day, on October 14, 2026 at approximately 2:00 p.m. PST, Al Rossi, Acting Assistant Special Agent in Charge for Homeland Security Investigations, emailed the same letter and a list in Excel format, with the same password provided for the USB flash drive.

Your letter requests that the RR/CC access the USB flash drive or Excel list using the provided password to review "a list of names of people the Federal Government believes are likely noncitizens who were sent a vote-by-mail ballot to participate in the November 2026 federal election" and "determine whether any citizens are listed." Your letter also requests a response within 48 hours as well as by 9:00 am PST on October 15, 2026, which would be less than 48 hours after receipt of the letter. Your letter further requests that, in the middle of an election cycle and without any identified authority, the County withhold ballots for certain individuals on the list until "we confirm their citizenship status," or take other actions without any commitment to finalizing that process prior to the legal close of the voting period.



**648 Kenneth Hahn Hall of Administration**
500 West Temple Street
Los Angeles, California 90012-2713

TEL 213.974.1811
TDD 213.633.0901
pbollinger@counsel.lacounty.gov

Based on a cursory review of the Excel list DOJ provided, this appears to be a list that contains sensitive and personal identifiable information of 20,000+ individuals with associated addresses across the State of California, and not a distinct list associated with and specific to Los Angeles County ("County"). The RR/CC is unclear why a list with records not associated with Los Angeles County was transmitted to the RR/CC, as it only maintains records for County voters and notes that the letter reads as if it is directed to the California Secretary of State rather than the RR/CC.

For the reasons addressed below, the RR/CC is legally prohibited from taking the actions requested in the letter and is, therefore, unable to comply with the requests. As a preliminary concern, we note the letter does not provide any information on how the Government compiled the list of "likely noncitizens" or on what evidentiary basis the Government has reason to suspect that those listed are registered voters who *may* be noncitizens. Further, the letter asks the RR/CC to "independently confirm citizenship status," yet provides no process or information for the RR/CC to do so, and, again, contains records that are not associated with Los Angeles County.

In your letter, DOJ cited no statutory or legal authority for directing a county's administration of ballots. The opposite is true: DOJ is asking RR/CC to engage in an unlawful course of conduct. RR/CC makes the following legal objections to the DOJ's requests.

First, as you may know, federal and state law support and require voter registration when eligibility requirements are met by attestation from an applicant. 52 U.S.C. § 20501 et seq., § 20504; Cal. Elec. Code §§ 2102, 2103, 2105, 2106. For voting purposes, a person may prove they are a citizen by their certification under penalty of perjury on the affidavit of registration. Cal. Elec. Code § 2111. Such attestation shall be deemed evidence of citizenship for voting purposes only. Cal. Elec. Code § 2114. As such, RR/CC is required to register voters when eligibility requirements are met by the voter's own attestation and associated identification information that is verified through the California statewide voter registration database maintained and regulated by the California Secretary of State, in addition to a number of other voter eligibility criteria reviewed and managed by other agencies. RR/CC, therefore, does not, nor is the RR/CC authorized to, independently investigate an applicant's citizenship status. Any investigation regarding a registered voter's eligibility must be based on individualized evidence that would be referred to and handled by other enforcement and investigative agencies such as the California Secretary of State or the California Attorney General.

Second, under the National Voter Registration Act, federal law imposes a 90-day "quiet period" to safeguard against systematic removals of ineligible voters ahead of a federal election. 52 U.S.C. § 20507(c)(2)(A). That 90-day window started on August 5, 2026.

Third, under 52 U.S.C. § 10307(a), "[n]o person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote . . . or is otherwise qualified to vote, or willfully fail or refuse to tabulate, count, and report such person's vote." Notice of unverified and uncorroborated allegations of voter ineligibility does not authorize the RR/CC to not comply with this statute.

For these reasons, DOJ's requests to the RR/CC would violate the law. Indeed, a failure to register voters as required by federal and state law can subject the RR/CC to civil enforcement and a private right of action. 52 U.S.C. § 20510; Cal. Elec. Code § 2142.

In addition to these legal objections, there are also several practical reasons why DOJ's requests cannot be complied with. The November 2026 General Election is well underway. Registered voters across the County have been mailed vote-by-mail ballots as required by state law, which your letter acknowledges, and the RR/CC has been processing vote-by-mail ballots since October 5, 2026. In-person voting is also underway at the RR/CC and will expand to more than 640 vote centers across the County starting on October 24, 2026 and continue until 8:00 p.m. on Election Day. In the weeks following the election and until the end of November, the RR/CC will be fully engaged with ballot processing activities, conducting the official canvass, the one-percent manual tally and post-election audit, and certifying election results. Notably, state law requires county elections officials to finish counting all regular incoming ballots on or before the 13th day following the election and certification of election results must occur within 30 days. Cal. Elec. Code §§ 15307, 15372. Thus, this is an extremely critical period for the RR/CC's administration of the November 2026 General Election.

Based on the foregoing, the RR/CC is unable to comply with DOJ's requests. Aside from the questionable circumstances surrounding how the letter and statewide list were transmitted to the RR/CC and the impossibility of reviewing and responding to a list of 20,000+ individuals with addresses throughout California in less than 28 hours, we are not authorized to, or are prohibited from, taking the actions requested in your letter under both federal and state law. The actions described would disenfranchise those in question without due process.

Very truly yours,

DAWYN R. HARRISON
County Counsel

By Pete Bollinger
PETER M. BOLLINGER
Assistant County Counsel
Government Services Division

PMB

c: Al Rossi, Acting Assistant Special Agent in Charge, Homeland Security Investigations.

# EXHIBIT B

Letter from California Secretary of State Shirley N. Weber, Ph.D. to Acting Deputy Attorney General R. Trent McCotter

Shirley N. Weber, Ph.D.
California Secretary of State
1500 11th Street | Sacramento, CA 95814 | Tel 916.653.7244 | Fax 916.653.4620 | www.sos.ca.gov

R. Trent McCotter
Acting Deputy Attorney General
United States Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
Trent.McCotter@usdoj.gov

Via electronic mail

Re: October 13, 2026 Letter

Dear Mr. McCotter:

I am in receipt of your letter dated October 13, 2026, in which you allege that an unspecified number of individuals that "the Federal Government believes are likely noncitizens" were mailed a ballot for the November 2026 General Election. As California's chief elections official, I write to set the record straight.

On July 16, 2026, my office received a letter from DHS Secretary Markwayne Mullin alleging that over 190,000 registered voters in California "may be" non-citizens, with no further detail. I responded on July 23 expressing serious doubts about the accuracy of the claim and requested information about the underlying data and methodology so my office could attempt to verify DHS's vague and unsubstantiated allegations. I also reminded Secretary Mullin that federal law prohibits systematically cancelling voter registrations for the General Election beginning August 5, 2026. *See* 52 U.S.C. § 20507(c)(2)(A). In response, DHS officials refused to provide any information in writing and requested a call. When my office asked for the information in writing to ensure an accurate record, DHS officials insisted on a meeting and declined to address our concerns on paper. To date, DHS still has not provided any information about the underlying data or methodology requested by my office.

Your October 13 letter repeats Secretary Mullin's vague allegation that non-citizens may be registered to vote in California. You then insist my office "immediately instruct the appropriate elections official to segregate" mail ballots and "not [to] verify the signature or tabulate the ballot" of any of these individuals. And you threaten to seek "emergency relief" if we do not "implement this process" by "October 15 at noon EST."

As you fully acknowledge, ballots have already been delivered to voters and voting is well underway. Despite this, and with less than three weeks before the election, you are demanding unprecedented measures that threaten thousands of Californians' right to vote, based on unverifiable information or methodology that you still fail to explain or provide. Your letter states that you presented the Los Angeles County Registrar-Recorder/County Clerk with a list of individuals that the federal government "believes" are "likely" non-citizens. I am informed that

the list contains the names of approximately 20,000 individuals statewide (a fraction of Secretary Mullin's initial allegation) and lacks both the detail and function to be of any investigative use. Nowhere has the federal government clarified the basis for suspecting—not even confirming with any level of certainty—the listed individuals are non-citizens. And as one court recently noted, the federal government's citizenship records are "known to be unreliable." *Common Cause, et al. v. Department of Justice, et al.*, No. 1:26-cv-01352, 2026 WL 3033772, at *8 (D.D.C. Oct. 9, 2026). To give just one example, in a similar incident in the State of Nevada, DHS initially alleged that Nevada's voter roll included nearly 16,000 potential non-citizens. However, after working with the State of Nevada, DHS officials failed to establish that a single non-citizen was on the voter rolls.[1]

More remarkable still, despite failing to send the list of alleged non-citizens to my office, you demand that we request transmittal of the list, review and confirm the citizenship status of each of the approximately 20,000 individuals on the list on the eve of an election and within a mere 48 hours. This is an emergency of the DOJ's creation.

California's election administration will continue to be governed by applicable federal and state law, not by unsubstantiated claims and outrageous demands.

California administers its elections in full compliance with federal election law. For instance, in accordance with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20501 *et seq.*, and Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901 *et seq.*, California requires all voter registration applicants to attest to U.S. citizenship under oath, under penalty of perjury and by signature, Cal. Elec. Code §§ 2101, 2102(c), 2111, 2150(a)(1), 2264(a)(3), (b), and maintains robust voter list maintenance processes. *See, e.g.*, Cal Elec. Code § 2200 *et seq.*; Cal. Code Regs. tit. 2, §§ 19060–62, 19079, 19080–81, 20070, 20075, 20076. California law further provides that a person "shall not be registered" unless they are "a United States citizen." Cal. Elec. Code §§ 2100, 2101. These requirements satisfy every federal standard for establishing voters' citizenship and managing voter rolls. *See, e.g.*, 52 U.S.C. §§ 20505(a), 20507, 20508(b)(2), 21083(b)(4). They represent just a few of California's many robust safeguards for ensuring that only citizens register to vote and that any non-eligible registrants are removed from the State's voter rolls.

The extraordinary measures you demand are contrary to both federal and state law. Most critically, they strike at affected voters' "constitutionally protected right to vote . . . and to have their vote counted." *Reynolds v. Sims*, 377 U.S. 533, 537 (1964). Withholding ballots from some duly registered voters and segregating and refusing to tabulate voted ballots submitted by others, is an unprecedented suspension—and even denial—of voting rights. For the same reason, these measures threaten to violate the Voting Rights Act of 1965. *See* 52 U.S.C. § 10307(a) (officials shall not refuse to allow qualified voters to vote or willfully refuse to tabulate and report their votes). Treating the thousands of voters on DOJ's list as ineligible until proven otherwise also violates federal law prohibiting states from "systematically remov[ing] the names of ineligible voters from the official list of eligible voters" in the 90-day quiet period before a federal election. *Id.* § 20507(c)(2).

[1] Nick Corasaniti, *From 16,000 to 185 to Zero: Trump's Claims of Illegal Voting in Nevada Fizzle*, N.Y. Times (Sept. 24, 2026), https://www.nytimes.com/2026/09/24/us/politics/nevada-voters-homeland-security-trump.html.

The measures you demand also violate state law. In California, "[n]o right is more precious" than voting. *Canaan v. Abdelnour*, 40 Cal.3d 703, 714 (Cal. 1985). California's Constitution provides that eligible voters are entitled to vote and "have that vote counted." Cal. Const. art. II, § 2. Elsewhere, state law affirms that Californians "have the right to cast a ballot if you are a valid registered voter." Cal. Elec. Code, § 2300(a)(1)(A); *see also id.* § 2000(a). To facilitate the right to vote, a mail ballot "shall be available to any registered voter," *id.* § 3003, and local elections officials must mail those ballots to registered voters, *id.* § 3000.5(a). Once returned in accordance with state law, mail ballots must be tabulated like any other ballot. *See id.* § 15109. These obligations cannot be reconciled with your demand that elections officials arbitrarily deny registered voters mail ballots and refrain from tabulating ballots already issued.

Finally, I am concerned that your letter violates an order entered by the U.S. District Court for the District of Columbia on October 9, 2026, in *Common Cause, et al. v. U.S. Department of Justice, et al.*, Case No. 1:26-cv-01352-SLS. In that order, the court vacated the DOJ's policy of, among other things, comparing state voter roll information "against a federal database to identify purportedly ineligible voters," in collaboration with DHS, "and demanding that states remove voters from their rolls based on the results of those comparisons." It appears that your letter may utilize a policy that a federal court has already deemed unlawful.

California's elections officials work every day to ensure that only eligible voters are registered, to maintain accurate voter rolls, and to guarantee that no eligible voter is denied the opportunity to vote. If the federal government possesses proof that certain registered voters in California are ineligible, we will welcome the opportunity to review that evidence and any supporting data or methodology. In that event, once we have had an opportunity to review that information, we would take the appropriate steps in compliance with federal and state law. However, I will not disenfranchise thousands of Californians—or order any county elections official to do so—based solely upon an unsupported and likely inaccurate "belie[f]" that certain voters are "likely" non-citizens.

Sincerely,



Shirley N. Weber, Ph.D.
California Secretary of State