UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF CALIFORNIA, *et al*.,

Defendants.

Case No. 2:26-cv-12025

**[PROPOSED] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

IT IS HEREBY ORDERED that Plaintiff's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue [ECF ___] is GRANTED.

**TEMPORARY RESTRAINING ORDER**

**A. Reasons Why This Order Is Issued**

1. Standard for Temporary Restraining Order

A party seeking preliminary relief must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm, and an injunction is both (3) equitable and (4) in the public interest. *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1012 (9th Cir. 2025) (citing *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7 (2008)).

2. Plaintiff Is Likely to Prevail on the Merits

Under the Supremacy Clause, the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2; *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("The Supremacy Clause provides a clear rule that federal law" is supreme over state law). Federal preemption principles ensure the constitutional supremacy of federal law. Under those principles, contrary "state law must yield to the regulation of Congress within the sphere of its delegated power." *Savage v. Jones*, 225 U.S. 501, 533 (1912). And federal law can preempt state law "[e]ven without an express provision for preemption." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). That includes where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *id.* (citations omitted) (cleaned up), or otherwise "directly conflict[s]" with federal law, *Kansas v. Garcia*, 140 S. Ct. 791, 808 (2020) (Thomas, J., concurring). State action must "give way" when it conflicts with "a considered judgment" embodied in federal law. *Arizona*, 567 U.S. at 399, 405.

Such conflicts can arise in different ways and through different forms. One throughline, though, is that States cannot avoid preemption by facilitating a private party to violate federal law. "It is . . . axiomatic that a state may not induce, encourage, or

promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973). For example, if a state purported to subsidize federal crimes, that would conflict with the considered judgment of Congress. *See, e.g.*, *Musta v. Mendota Heights Dental Center*, 965 N.W.2d 312, 321-27 & n.11 (Minn. 2021) (federal law preempted a requirement that an employer subsidize the purchase of a federally prohibited drug), *cert. denied*, 142 S. Ct. 2834 (Mem.) (2022).

Preemption principles apply when state officials act in a manner that obstructs or conflicts with federal law. "It has long been a settled principle that federal courts may enjoin unconstitutional *action* by state officials." *Puerto Rico v. Branstad*, 483 U.S. 219, 228 (1987) (emphasis added) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Accordingly, whether state and local officials "act[] through . . . procedures rather than a court order or a general law . . . is irrelevant to [the] analysis." *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 614 n.5 (1986). Preemption does not turn on the form of state action. It "turns on the actual content of [a state's] policy and its real effect on federal rights." *Livadas v. Bradshaw*, 512 U.S. 107, 119 (1994) (citing and adopting *Livadas v. Aubry*, 987 F.2d 552, 561 (9th Cir. 1991) (Kozinski, J., dissenting) ("The point is, the Commissioner is applying state law and his own policy in a way that impinges on protected federal rights.").

Here, federal law makes it "unlawful for any alien to vote" in federal elections. 18 U.S.C. § 611(a). Accordingly, Defendants cannot "induce, encourage, or promote"—let alone knowingly facilitate—noncitizen voting for a candidate who is running for a seat in the U.S. Senate or the U.S. House of Representatives when state election officials have notice of specific individuals who are likely to be noncitizens. *Norwood*, 413 U.S. at 465; *cf. City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 492 (1989) (applying *Norwood*'s "induce, encourage, or promote" principle to scenario where a local government "had essentially become a '*passive participant*' in a system of racial exclusion" (emphasis added)); *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 475 (2013)

(explaining that state actions "that require a private party to violate federal law are pre-empted").

Yet that is precisely what Defendants appear to be doing—and their actions conflict with federal law. Federal law preempts Defendants' facilitation of unlawful voting by likely noncitizens in violation of 18 U.S.C. § 611. By facilitating violations of the statute, Defendants' actions conflict with the "considered judgment" the statute expresses. *Arizona*, 567 U.S. at 399, 405. If Defendants were just seeking to "induce, encourage, or promote" violations of the statute, that would be enough to trigger federal preemption. *Norwood*, 413 U.S. at 465. But Defendants are not just supporting conduct that federal law prohibits (such as when a state purports to subsidize illegal activity); they appear to be directly facilitating violations of that federal law by feigning ignorance of noncitizen votes. It "is simply implausible that Congress would have" criminalized voting by noncitizens "if it had been willing to" let States "compromise [the] effectiveness" of that law by participating in its violation. *Crosby*, 530 U.S. at 376. And Defendants' systematic defiance of federal law is all the more egregious because it undermines the federal rights of United States citizens to vote in an election in which only eligible voters participate. "Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

The United States is likely to prevail on the merits of its claim that Defendants' facilitation of unlawful voting by sending vote-by-mail ballots to likely noncitizens and counting ballots that are returned—after knowing that noncitizens are likely registered to vote—is preempted as applied to the individuals the Federal Government has positively identified for Defendants.

3. Plaintiff Prevails on Factors Two, Three, and Four

*a. The United States Will Suffer Irreparable Harm Absent a TRO*

For three reasons, the United States will suffer irreparable harm absent injunctive relief. First, when state action is "preempted, a finding with regard to likelihood of

success fulfills the remaining [preliminary injunction] requirements." *Tex. Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010). This is because irreparable harm necessarily results from the operation of preempted state action. *See California*, 173 F.4th at 1069 (granting injunction pending appeal because violation of Supremacy Clause was irreparable); *Valle del Sol v. Whiting*, 732 F.3d at 1029 (finding irreparable harm based on a Supremacy Clause violation); *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2012) (same), *aff'd in part, rev'd on other grounds*, 567 U.S. 387 (2012). Put differently, the United States suffers a "per se irreparable harm" when state actions violate the Supremacy Clause. *United States v. Texas*, 557 F.Supp.3d 810, 821 (W.D. Tex. 2021) (collecting cases); *Daimler*, 2025 WL 3049944, at *17 (same).

Second, the "inability to enforce its duly enacted [law] clearly inflicts irreparable harm on" the United States. *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018); *see also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (same). The Supreme Court has recently and repeatedly found that the Federal Government would be irreparably harmed if it could not enforce federal law. *See, e.g.*, *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (Mem.) (2025); *Noem v. Doe*, 145 S. Ct. 1524 (Mem.) (2025); *Noem v. Nat'l TPS All.*, 145 S. Ct. 2728 (Mem.) (2025); *see also Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam) (must show irreparable harm to obtain a stay). Because Defendants are frustrating the United States' ability to effectively enforce 18 U.S.C. § 611—which is a priority—the United States would suffer irreparably absent an injunction. *Cf. Trump v. CASA, Inc.*, 606 U.S. 831, 859–60 (2025) (recognizing that the Federal Government "will suffer irreparable harm" if it is prevented from "enforcing its policies").

Finally, our constitutional system is irreparably injured when unlawful votes cancel out lawful votes. Unlawful voting undermines public faith in elections and the legitimacy of those who represent the public. And eroded trust in our democracy is irreparable.

*b. The Balance of Equities and the Public Interest Weigh in the United States' Favor*

This action seeks to protect the interests of the United States, so the burdens that will result without injunctive relief are directly tied to the public benefits that will be protected. *See Nken*, 556 U.S. 435. That is all the more true given the longstanding "recognition that preventing a violation of the Supremacy Clause serves the public interest." *California*, 921 F.3d at 893–94. Indeed, the Ninth Circuit has long held that "plaintiffs who "establish[] a likelihood that [a] policy violates the U.S. Constitution . . . have also established that both the public interest and the balance of the equities favor a preliminary injunction." *California*, 173 F.4th at 1069 (quoting *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014)).

Moreover, injunctive relief will preserve the United States' sovereign authority. "Frustration of federal statutes and prerogatives are not in the public interest[.]" *Alabama*, 691 F.3d at 1301; *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496–98 (2001) (courts of equity must respect Congress's policy choices as set forth in a statute); *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1060 (9th Cir. 2009) (similar). Because the challenged conduct here frustrates the purpose of 18 U.S.C. § 611 to prevent noncitizen voting, allowing Defendants to proceed would not be in the public interest. By contrast, an injunction will not burden Defendants, as it does not have the authority to permit noncitizen voting. So an injunction would maintain that status quo.

On the other side, Defendants have expressed concern about administering the United States' request to set aside vote-by-mail ballots cast by likely noncitizens. Those concerns cannot stand as an impediment to administering an election free from unlawful voting. And California, having routinely administered elections since its founding in 1850, is well-equipped to implement the United States' requested relief. In fact, the very relief sought here—ballot segregation—is provided for in California's elections regulations. "Resolution of challenged ballots," California regulations state, "shall take place in a segregated area within the recount location[.]" Cal. Code Regs. tit. 2, § 20363. California

has also known about noncitizen registration since July. *See* Compl. Ex. A.

The United States has offered to assist California to confirm the citizenship of the persons identified by the Federal Government as likely noncitizen voters. *See* Compl., Ex. D at 2. In short, the circumscribed requested relief here is neither unduly burdensome to Defendants nor disruptive to the ongoing federal election because it concerns only what to do with ballots that are cast (and will not prevent the tabulation of ballots cast by eligible voters). The United States simply asks Defendants to conduct the same process implemented every election cycle, with no additional changes or modifications to its rules. The public interest and equities strongly tip in the United States' favor and outweigh the administrative costs of tabulating voters from likely noncitizens who received a vote-by-mail ballot from California. Americans benefit from an electoral process that prevents tabulation of illegal votes. California implements the requested injunctive relief every election. And the United States protects its sovereignty by enforcing Congress' prohibition against noncitizens voting.

**B. Order**

TO DEFENDANTS STATE OF CALIFORNIA, SHIRLEY WEBER in her official capacity as California Secretary of State, and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk:

PENDING HEARING on the below Order to Show Cause, you and all those in active concert or participation with you ARE HEREBY ENJOINED to segregate all vote-by-mail ballots received from individuals on the list provided to DEAN C. LOGAN. Next, you are ENJOINED to confirm the citizenship of the person who sent a segregated vote-by-mail ballot. When confirming a person's citizenship, you shall not rely solely on the person's registration-related attestation, and you may collaborate with Plaintiff UNITED STATES. If DEFENDANTS determine that the individual is not a U.S. citizen, DEFENDANTS are HEREBY RESTRAINED from tabulating that person's vote and ENJOINED to take all steps necessary to ensure the vote-by-mail ballot is not tabulated, counted, and certified as valid. If the DEFENDANTS determine

that the individual is a U.S. citizen, then DEFENDANTS are HEREBY ENJOINED to follow California law to conduct the remaining provisional ballot processing requirements. This Temporary Restraining Order is effective immediately.[1]

**ORDER TO SHOW CAUSE**

TO DEFENDANTS STATE OF CALIFORNIA, SHIRLEY WEBER, in her official capacity as California Secretary of State, and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk:

YOU (AND EACH OF YOU) ARE HEREBY ORDERED TO SHOW CAUSE at ________________________(time) on _____________________(date), or as soon thereafter as counsel may be heard in the courtroom of the Honorable ________________________, located at __________________________ (address), why you and all those in active concert or participation with them should not be restrained from tabulating vote-by-mail ballots cast by people on the list the Federal Government provided to you and enjoined to segregate those ballots until you independently verify each person's citizenship.

This Order to Show Cause and supporting papers must be served on Defendants no later than _______ days before the date set for hearing, and proof of service shall be filed no later than ______ court days before the hearing. Any response or opposition to this Order to Show Cause must be filed and personally served on Plaintiff's counsel no later than ____ court days before the date set for hearing, and proof of service shall be filed no later than ____ court days before the hearing.

Date and time this Order is issued: October ___, 2026 at _________.

BY THE COURT:

______________________________

United States District Judge

---

[1] Plaintiff is the United States. Therefore, security is not required. Fed. R. Civ. P. 65(c).