DAWYN R. HARRISON, COUNTY COUNSEL
PETER BOLLINGER, ASST. COUNTY COUNSEL (SBN 241752)
EVA CHU, SNR. DEP. COUNTY COUNSEL (SBN 235356)
ADAM BAUMGARTEN, SNR. DEP. COUNTY COUNSEL (SBN 292095)
648 KENNETH HAHN HALL OF ADMINISTRATION
500 West Temple Street
Los Angeles, California 90012-2713
Telephone: (213) 974-0809
echu@counsel.lacounty.gov
abaumgarten@counsel.lacounty.gov

**NORTON ROSE FULBRIGHT US LLP**
CHRISTOPHER PELHAM (SBN 241068)
ABIGAIL URQUHART (SBN 310547)
ALEX SCANDROLI (SBN 345278)
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
christopher.pelham@nortonrosefulbright.com
abigail.urquhart@nortonrosefulbright.com
alex.scandroli@nortonrosefulbright.com

Attorneys for Defendant
DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk

*Additional Counsel Listed on Following Page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF CALIFORNIA, SHIRLEY N. WEBER, in her official capacity as the California Secretary of State, and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk,

Defendants.

Case No. 2:26-cv-12025

**DECLARATION OF AMAN BHULLAR IN SUPPORT OF DEFENDANT DEAN C. LOGAN'S OPPOSITION TO PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER**

Date Action Filed: 10/15/2026



DOCUMENT PREPARED ON RECYCLED PAPER

**PUBLIC RIGHTS PROJECT**
Joshua Karsh (*pro hac vice forthcoming*)
Toby R. Merrill (*pro hac vice forthcoming*)
Kyra Sikora (*pro hac vice forthcoming*)
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
joshua.karsh@publicrightsproject.org
toby.merrill@publicrightsproject.org
kyra.sikora@publicrightsproject.org

# DECLARATION OF AMAN BHULLAR

I, Aman Bhullar, declare as follows:

## Background of Declarant

1. I am the Assistant Registrar-Recorder/County Clerk of the Information Technology Bureau of the County of Los Angeles Registrar-Recorder/County Clerk (hereinafter "Registrar"). In such capacity, I am responsible for the configuration, maintenance, and operation of election management and tally systems and the preparation of ballot materials for all federal, state, county, school district, and special district elections conducted by the Registrar. I have worked at the Registrar for 9 years. I have personal knowledge of the facts set forth in this declaration based on my role at the Registrar. If called as a witness, I could and would testify competently to all facts stated herein.

2. I submit this declaration in support of the Registrar's Opposition to the U.S. Department of Justice's ("DOJ") Request for Temporary Restraining Order in the above-captioned case to provide additional context regarding how the technology behind the Registrar's election systems works when administering an election.

3. As explained further below, based on my technical expertise, I have grave concerns about the potential catastrophic impact of implementing the DOJ's request to "set aside vote-by-mail ballots from persons identified by the Federal Government likely to be noncitizens" based on a list of approximately 20,000 individuals (the "October List"), the majority of which are records for individuals located outside of Los Angeles County. The Registrar does not make programmatic changes in the middle of an election cycle and, in fact, has policies against making programmatic changes during election cycles, consistent with federal and state law. The potential consequences of implementing DOJ's demand are severe and range from halting all counting; halting in-person voters' ability to cast votes; or otherwise interfering with the ability to accurately count votes. From a technical



DOCUMENT PREPARED ON RECYCLED PAPER

standpoint, I do not believe it would be possible to implement the changes requested by the DOJ without violating state and federal law regarding election deadlines.

**Change Management Process**

4. "Setting aside" vote-by-mail ballots pursuant to the DOJ's request would require changes to the Registrar's election systems that are governed by what is collectively referred to as the change management process. Under that process, a requested change is first initiated and documented. Programmers then develop the code necessary to implement the change in the system. The change is tested multiple times in a non-production environment to identify any unintended impacts. A non-production environment is a separate computing or software environment used for development, testing, and staging before software is deployed to live users. Other programmers then conduct a peer review to validate that the change is safe. The change is typically implemented during off-peak hours; under ordinary circumstances, changes are made over a weekend when there are no users on the system and no processing is occurring. A large change is also accompanied by a "fail period," which is a defined window during which a system, service, or application is expected to be unavailable, degraded, or producing errors, and during which that behavior is considered acceptable or anticipated. Rollback procedures are also prepared in the event the change must be reversed.

5. These steps reflect industry best practices. They are well understood by IT professionals. They all help protect the system and its users from unintended consequences of software changes.

**Freeze Period**

6. To protect the stability and security of the County's election systems, the Registrar requested that the Los Angeles County Internal Services Department ("ISD") implement a tiered election freeze for the November 3, 2026, General Election, which limits changes to the systems and infrastructure that support the

election ("Freeze Policy"). A true and correct copy of the Registrar's August 21, 2026 memorandum to ISD titled "Election Freeze for the November 3, 2026, General Election" is attached hereto as **Exhibit A**.[1] The freeze proceeds in three levels.

7. Level One, in effect from September 18, 2026, at 5:00 p.m. through December 3, 2026, at 5:00 p.m., limits changes to Voice over Internet Protocol ("VoIP") at Registrar headquarters, the Ballot Processing Center, the Election Operations Center, the Voting Solutions for All People ("VSAP") Operations Center, the Tally Disaster Recovery environment, and six Registrar branch offices, as well as to Registrar servers hosted by ISD, wide area and local area network infrastructure, all Registrar Wi-Fi access points, and facilities infrastructure at all Registrar facilities.

8. Level Two, in effect from October 2, 2026, at 5:00 p.m. through November 19, 2026, at 5:00 p.m., further restricts changes to both the physical infrastructure and the virtual environment of all systems used to support the election, and requires Information Technology Systems ("ITS") General Manager approval for any such change.

9. Level Three, in effect from October 14, 2026, at 5:00 p.m. through November 6, 2026, at 5:00 p.m., suspends standard requests for change entirely; **<u>any</u>** change must be submitted as a normal or emergency request with ITS General Manager approval, and all other requests are approved only to restore service or prevent imminent outages. The purpose of the freeze is to reduce risk to the system's integrity by ensuring that system maintenance is performed only during the times that pose the lowest risk to the elections environment.

**Executing the DOJ's Demand**

10. Attempting to execute the DOJ's demand would require violating the

[1] The Registrar generally creates a freeze policy during elections and this is not unique to the current election cycle, but standard practice for all elections.

Registrar's Freeze Policy. Changes of this magnitude are considered major changes and have been restricted as Level Two changes since October 2, 2026. In the normal course of business, any change that is not meant to restore service or prevent imminent outages should not be approved.

11. The DOJ's request would require system updates to multiple, separate software programs and hardware devices. Different changes would be required for in-person voting and vote-by-mail voting, although some would overlap. The affected software and hardware include, but are not limited to, the Registrar's Election Management System ("DIMS"), BlueCrest Vantage sorters, and Electronic Pollbooks ("ePollbooks"). I address each change in turn.

**Adjustments to DIMS**

12. Before any ballot could be set aside, DIMS, the centralized voter registration database and election management application, would first have to be adjusted. DIMS is a software system that manages voting operations and tracks voter registration information for close to 5.9 million voters in the County. DIMS supports essential functions such as maintaining voter records and voter preferences, conducting elections, managing petitions, facilitating vote-by-mail processes, content management, administrative functionality, and real-time information exchange between ePollbooks and the statewide voter registration database ("VoteCal").

13. Because DIMS houses all voter registration information, it is the first step regardless of whether the individual votes by mail or in person . The Registrar would first be required to place a database flag on these individuals, if they appear in DIMS. No such flag currently exists, so a new flag would need to be developed and tested by the DIMS manufacturer, Runbeck Election Services, LLC. The Registrar would then need to validate and test it in a non-production environment. The Registrar would also need to work with its third-party vendors for automatic signature verification, BlueCrest, Inc., and for ePollbooks, KnowInk, to ensure that



DOCUMENT PREPARED ON RECYCLED PAPER

the proposed adjustment would interact properly with their respective software. In a normal change-management process, designing this sort of change could take some time and would need to include a rollback and fail period. Changes on this scale, even in ideal circumstances, may take far longer than expected because the downstream consequences are unclear. It is not clear how long it would take during an active election cycle.

14. Importantly, it is impossible to do this type of programmatic change without shutting down the DIMS system due to the need to update all of the Registrar's desktop computers with the new DIMS software, among other items. During the election cycle, full staff resources are operational through the weekend.

15. The ePollbooks have already been configured and prepared for deployment. Preparing them took ten (10) days. Incorporating the proposed programmatic change would require every ePollbook to be updated and tested. That work cannot be completed safely and uniformly before Election Day, and certainly not by the start of the early in-person voting period beginning on October 24, 2026. Further, any change to the ePollbooks must pass the Secretary of State's testing and certification requirements before the ePollbooks may be used. Initiating that process during the election period would trigger new operational procedures with downstream effects on other election functions. Those effects would include a temporary halt to the movement of ballots, including the movement of ballots to tabulation. As a result, the change would impede the administration of the election for all voters. The ePollbooks have already been deployed to, and are in use at, the hybrid vote center that is currently operating.

16. Even if the programmatic change could be made safely, the effect of making a change to DIMS in the current environment cannot be determined in advance. The possible consequences are significant and consequential. For example, the change could function as intended for voters on the October List but also flag voters who are not on that list. The system would then segregate the



DOCUMENT PREPARED ON RECYCLED PAPER

ballots of voters beyond those on the October List. DIMS contains all voter information and is the central software and data source on which the Registrar's other systems rely. A failure in DIMS could therefore jeopardize the Registrar's ability to meet federal and state deadlines. In addition, DIMS cannot be placed in a quiet period (or "turned off") during an election cycle. As a result, the Registrar would be unable to confirm, within the election period, whether the change had been programmed correctly.

**Vote by Mail**

17. The Registrar would next need to make separate adjustments for vote-by-mail ("VBM") voters and in-person voters. For VBM voters, the Registrar uses the BlueCrest Vantage to physically sort VBM ballots. As ballots pass through the BlueCrest Vantage, two processes occur. First, the BlueCrest Vantage performs automatic signature verification. The signature reference files are stored in DIMS, and the BlueCrest Vantage compares the signature on each ballot envelope with the signature reference file in DIMS. Second, the BlueCrest Vantage sorts ballots into twenty (20) separate sort categories, each of which must be programmed. To route ballots from voters on the October List so that they are not sent to extraction, BlueCrest would need to develop a new sort scheme for the BlueCrest Vantage. That new sort scheme would then need to be tested before it could be used. Because BlueCrest, a third-party vendor, would design the new sort scheme, the Registrar cannot determine whether the change is feasible in the middle of the election cycle and would need to further consult with BlueCrest. The Registrar also cannot determine the downstream consequences of making such a change at this time.

**In-Person Voting**

18. Separate adjustments would also be required for setting aside ballots for individuals who vote in person and appear on the October List. When a voter appears at a vote center, vote center staff use an ePollbook, which has replaced a



DOCUMENT PREPARED ON RECYCLED PAPER

printed voter registration list. Staff use the ePollbook to verify the voter's registration eligibility in real time and to record whether the voter has already voted. The ePollbook software is developed by a third-party vendor and certified by the California Secretary of State. The Registrar plans to dispatch more than 5,000 ePollbooks throughout the County on October 21, 2026, and some have already been deployed at the hybrid vote center in the Registrar's headquarters. Loading the data onto all these devices takes ten (10) days. The ePollbooks are already fully prepared for deployment for the November 3, 2026, General Election.

19.Ordinarily, when a registered voter checks in on the ePollbook, the Ballot Marking Device ("BMD") receives no information about the voter other than the voter's ballot style.[2] The BMD is the device on which the voter marks their ballot. Apart from ballot style, no information about the voter is transmitted to the BMD or associated with the voted ballot. The ballot therefore cannot be connected to the voter who cast it.

20. In practical terms, a new process would need to be established for in-person voters on the October List. That process does not currently exist. It would have to be created, and vote center workers would have to be trained on it. Special handling procedures would also have to be established. Under the current process, even if October List voters could be identified in the ePollbook in some way, they would be able to cast only provisional ballots. Vote center workers have no process for treating this new category of voters differently. Vote center workers are given specific scripts and are required to follow them. More than 10,000 vote center workers are engaged in this election. Many of them have already completed their training, which takes place over several weeks. Developing, training, and rehearsing a new process is not possible at this stage.

21. The provisional ballots cast by October List voters would be mixed

[2] Each voter has a ballot style based on his or her address, because different contests apply depending on where the voter lives—for example, different areas have water districts, congressional districts, and school districts.

with other valid provisional ballots cast by other voters. There is currently no means of segregating the October List voters' ballots from those other provisional ballots. Separating them would require individuals to review all in-person provisional ballots and manually compare the names on each ballot envelope to the October List. The Registrar cannot be confident that such a manual comparison would be accurate, because of the potential for errors.

**Tally**

22.Once ballots enter tally operations, including tally pre-processing, there is no way to separate or identify the ballot of any voter, including voters on the October List. No association exists between a ballot and the voter who cast it consistent with California voter anonymity requirements and . The Registrar therefore cannot locate or remove the ballot of any particular voter. As a result, to the extent any individuals on the October List have already voted, their ballots cannot be segregated at this stage.

**Conflicts with Law**

23. I do not believe it would be possible from a technical perspective to comply with the DOJ's demand based on my current understanding without violating state and federal election legal requirements and required deadlines.

**October List Analysis**

24. At counsel's request, my Team conducted a preliminary analysis of a sample of two hundred (200) records from the October List. Our analysis included the following:

a. 42.9% of the list sampled had canceled voter registration records in our system; 42.4% of the list samples had active records, i.e., i.e., that the record has cleared verification through the statewide database and has met all legal requirements for voter registration.; and 4.6% are considered inactive records, meaning there is an issue in the record that has been flagged such as the

mail being undeliverable, not responding to a confirmation notice, or not voting.

b. 86 of the sample listed individuals who had ballots mailed to them in the November 2026 General Election; all 112 individuals where ballots were not mailed to them had either canceled or inactive records.

c. 71.2% of the list sampled had never voted in the past elections.

d. Among the records for which birthplace information was meaningfully reported, 38.9% indicated that they were born in the United States.

25. Of the more than 20,000 records on the October List, 7,035 have addresses located in Los Angeles County.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 20th day of October, 2026, at City of Industry, California.

Aman Bhullar

# EXHIBIT A

LOS ANGELES COUNTY
REGISTRAR-RECORDER/COUNTY CLERK

DEAN C. LOGAN
Registrar-Recorder/County Clerk

August 21, 2026

**To:** Mirian Avalos, General Manager (ITS)
Internal Services Department

**From:** Jeremy Keller, Department Information Security Officer (DISO)
Registrar-Recorder/County Clerk

**ELECTION FREEZE FOR THE NOVEMBER 3, 2026, GENERAL ELECTION**

The County of Los Angeles will be conducting the November 3, 2026, General Election. The results of the election are scheduled to be certified on November 27, 2026. In support of the election, the Registrar-Recorder/County Clerk (RR/CC) is requesting that the Internal Services Department (ISD) implement a freeze on many services provided by ISD.

During the specified date range listed below, the following types of changes will be limited:

**Election Freeze Level One - Friday, September 18, 2026, at 5:00 p.m. through Thursday, December 3, 2026, at 5:00 p.m.**

- VoIP for:
  - RR/CC Headquarters at 12400 Imperial Hwy in Norwalk
  - RR/CC Ballot Processing Center (BPC) at 13401 Crossroads Pkwy N, City of Industry
  - RR/CC Election Operations Center (EOC) at 12680 Corral Place in Santa Fe Springs
  - RR/CC VSAP Operations Center (VOC) at 12100 Rivera Road in Whittier
  - RR/CC Tally Disaster Recovery (DR) environment at 9150 Imperial Highway in Downey and six (6) RR/CC branch offices
- RR/CC servers hosted by ISD and their eCloud/eBlock environment
- Wide Area Network (WAN) and Local Area Network (LAN) infrastructure
- All RR/CC Wi-Fi access points
- Facilities infrastructure at all RR/CC facilities (e.g., electrical generators)


Los Angeles County Internal Use

**Election Freeze Level Two – Friday, October 2, 2026, at 5:00 p.m. through Thursday, November 19, 2026, at 5:00 p.m.**

In addition to changes covered by Level One, changes to both the physical infrastructure and the virtual environment of all systems used to support the election are restricted and require ITS General Manager approval. Changes to the following areas which are countywide or affect RR/CC, ISD, or BOS, are covered by Level Two:

- eCLOUD
- Office365
- eGIS
- VoIP
- LAN/WAN
- Desktop computer infrastructure
- Windows servers
- Email gateway
- Laptop computer infrastructure
- Hosted domain components
- Security Infrastructure
- Election-related AWS Infrastructure

**Election Freeze Level Three – Wednesday, October 14, 2026, at 5:00 p.m., through Friday, November 6, 2026, at 5:00 p.m.**

In addition to changes covered by Levels One and Two, during the twenty-four-day Level Three window, the following restrictions will be in place:

- Standard RFCs will be suspended, and changes normally made using the standard model must be submitted as a normal change with ITS General Manager approval or an emergency RFC with ITS General Manager approval.
- All other RFCs will only be approved to restore service or prevent imminent outages and will also require ITS General Manager approval.

Moreover, all RR/CC election platform and system owners will be permitted to schedule resources to get important system work done during non-freeze periods. It is important to note that this procedure has been created based on input from the RR/CC executive leadership – for further guidance, please contact the RR/CC DISO. Ultimately, the goal of all parties (e.g., executive leadership, DISO, DCIO, and system owners) is to reduce risk to ballot integrity by performing system maintenance during times that have the lowest risk to the elections environment in the unlikely event that something goes wrong with the update.

The election freeze ensures a stable and secure environment for election activities. We appreciate your cooperation and adherence to this freeze. Please share this memo with all ITS employees and contractors.

Should you have any questions, you may contact me at (562) 462-2445 or email jkeller@rrcc.lacounty.gov.

AB:JK

C: ITS Deputy General Managers
RR/CC ITB Management
Leslie Luke
Office of the CIO