DAWYN R. HARRISON, COUNTY COUNSEL
PETER BOLLINGER, ASST. COUNTY COUNSEL (SBN 241752)
EVA CHU, SNR. DEP. COUNTY COUNSEL (SBN 235356)
ADAM BAUMGARTEN, SNR. DEP. COUNTY COUNSEL (SBN 292095)
648 KENNETH HAHN HALL OF ADMINISTRATION
500 West Temple Street
Los Angeles, California 90012-2713
Telephone: (213) 974-0809
echu@counsel.lacounty.gov
abaumgarten@counsel.lacounty.gov

**NORTON ROSE FULBRIGHT US LLP**
CHRISTOPHER PELHAM (SBN 241068)
ABIGAIL URQUHART (SBN 310547)
ALEX SCANDROLI (SBN 345278)
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
christopher.pelham@nortonrosefulbright.com
abigail.urquhart@nortonrosefulbright.com
alex.scandroli@nortonrosefulbright.com

Attorneys for Defendant
DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk

*Additional Counsel Listed on Following Page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF CALIFORNIA, SHIRLEY N. WEBER, in her official capacity as the California Secretary of State, and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk,

Defendants.

Case No. 2:26-cv-12025

**DECLARATION OF MONICA FLORES IN SUPPORT OF DEFENDANT DEAN C. LOGAN'S OPPOSITION TO PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER**

Date Action Filed: 10/15/2026



DOCUMENT PREPARED ON RECYCLED PAPER

Joshua Karsh (*pro hac vice forthcoming*)
Toby R. Merrill (*pro hac vice forthcoming*)
Kyra Sikora (*pro hac vice forthcoming*)
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
joshua.karsh@publicrightsproject.org
toby.merrill@publicrightsproject.org
kyra.sikora@publicrightsproject.org

# DECLARATION OF MONICA FLORES

I, Monica Flores, declare as follows:

1. I am the Assistant Registrar-Recorder for the Candidate and Voter Services Bureau of the Los Angeles County Registrar-Recorder/County Clerk (the "Registrar"). In such capacity, I am responsible for voter registration maintenance, vote by mail administration, data entry and signature verification of all petitions, election consolidation requests, candidate filing and qualifications, ballot measure filing, certification of election results, recounts, recalls, and assisting with the coordination, conduct, and administration of all federal, state, county, and local elections. I have personal knowledge of the matters and facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I submit this declaration in support of the Registrar's Opposition to the U.S. Department of Justice's ("DOJ") Request for Temporary Restraining Order in the above-captioned case to provide additional context regarding the Registrar's administration of the election process generally and in this current general election that will take place on Tuesday, November 3, 2026 ("General Election").

3. The DOJ asserts that the Registrar is "well-equipped to implement the United States' requested relief[,]" that is, to "set aside vote-by-mail ballots from persons identified by the Federal Government likely to be noncitizens." It is not. The Registrar has no authority under state or federal law to withhold or set aside the ballot of a registered voter on the basis of a third party's assertion that the voter may not be a citizen, has no information beyond the voter's own attestation with which to determine citizenship, and has no lawful means of obtaining such information. In addition, as explained below, a substantial part of what the DOJ requests is no longer physically possible, and the remainder could not be carried out without placing the timely and accurate administration and certification of the General Election at risk. I also have strong concerns about potentially disenfranchising voters associated with records on this list and believe, if forced to

comply, it would be virtually impossible to timely certify the election results in compliance with state law. Finally, I do not believe the Registrar has authority to or can comply with either the government's proposed injunction that it "confirm the citizenship of [each] person who sent a segregated vote-by-mail ballot" or that it do so beyond relying on a "person's registration-related attestation" of citizenship as designated in state and federal law. I write this declaration to explain why.

**What Does the Registrar Do?**

4. In California, at the County level, the Registrar is responsible for registering voters, maintaining voter files, and conducting federal, state, local and special elections in the County. This includes the development, purchase, licensing, contracting, use and maintenance of equipment and materials used to facilitate the modern, accessible and secure administration of elections, including the devices used to check voters in when voting in-person - Electronic Pollbooks ("ePollbooks"); the devices voters use for in-person voting - Ballot Marking Devices ("BMD"); the Election Management System (EMS) and processes used to issue and process vote by mail ballots; the programs and processes used for ballot layout, and modernized systems for scanning ballot images, recognizing and interpreting votes, tabulating vote totals and producing election results - Tally Systems. Los Angeles County is unique among all jurisdictions in having developed the first and only publicly-designed and publicly-owned voting system, Voting Solutions for All People ("VSAP") which has been independently tested, reviewed, and approved for use under provisions of the California Elections Code.

5. Each year, the office facilitates the administration and certification of elections for approximately 200 total school districts, cities and special districts in addition to all state and federal executive, legislative, and judicial elections held within Los Angeles County. There are approximately 5.9 million registered voters, as well as 5,000 voting precincts established for countywide elections. The County is the largest and most complex local electoral jurisdiction in the country, with 88

cities, over 100 school and community college districts, 55 general and special districts, approximately 140 unincorporated areas, and provides voting materials in 19 languages under provisions of the Federal Voting Rights Act and the California Elections Code.

6. In California, voter rolls are maintained by the California Secretary of State. California's statewide voter registration system is called VoteCal. The Los Angeles County Election Management System (EMS) used to manage voter records from Vote Cal in administering County elections is the Database Voter Information Management System ("DIMS"). The DIMS EMS and VoteCal databases interact with each other in order to facilitate the maintenance of up-to-date voter rolls for Los Angeles County. Notably, the Registrar is not responsible for voter rolls outside of Los Angeles County nor does it have access or authority to modify statewide data.

**Voter Eligibility and Registration**

7. The Registrar and Secretary of State are both responsible for voter registration. You can register to vote and vote if you are:

a. A United States citizen and a resident of California,
b. 18 years old or older on Election Day,
c. Not currently in state or federal prison, and
d. Not currently found mentally incompetent to vote by a court.

8. Voter registration is ongoing. Standard voter registration is open until 15 days before the election in order for voters to be mailed a vote by mail ballot. Under Elections Code § 2111, a person "may prove he or she is a citizen by his or her certification under penalty of perjury on the affidavit of registration." *See also* 52 U.S.C. § 20508(b)(2) (federal mail voter registration form must include "an attestation that the applicant meets each such requirement," including citizenship, and "require[] the signature of the applicant, under penalty of perjury"). Moreover, each time a voter submits a ballot or appears to vote in-person, they sign an oath

that attests to being a qualified voter. Consistent with California and federal law, for these voters, the Registrar accepts the under oath representation and proof of an individual's citizenship and requires no additional verification.

9. The Registrar also offers Conditional Voter Registration ("CVR"), which allows eligible individuals to register or re-register and vote at a vote center for a 14 day in-person voting period, including on Election Day. (Elec. Code § 2170(a)-(b)). Ballots submitted by conditionally registered voters are processed and counted once the county elections office has completed the voter registration verification process for that voter. (Elec. Code § 2170(c)(1). The voted ballot is sealed in a provisional envelope. This envelope is a different color from vote-by-mail envelopes but is filled out the same way. It stays sealed until the Registrar reviews it. (Elec. Code § 14310(b).)

10. INTENTIONALLY LEFT BLANK.

11. INTENTIONALLY LEFT BLANK.

12. On occasion, the Registrar may receive information from an individual themselves requesting cancellation of registration with indication that they are a non-citizen. For example, an individual may notify the Registrar that they are a non-citizen and seeks cancellation of their voter registration either by submitting a "Request Voter Registration Cancellation" form or by speaking with a Registrar representative, but it happens infrequently.

13. On October 13, 2026, Acting Deputy Attorney General R. Trent McCotter, on behalf of the Department of Justice, provided the Registrar's office with a letter as well as a thumb drive purported to contain "a list of names of people the Federal Government believes are likely noncitizens who were sent a vote-by-mail ballot to participate in the November 2026 federal election" (the "October List"). The thumb drive has not been accessed by the Registrar. On October 14, 2026, Homeland Security Investigations emailed the Registrar's counsel the same letter together with a password-protected Excel spreadsheet (the "Spreadsheet"). The



DOCUMENT PREPARED ON RECYCLED PAPER

observations about the October List in this declaration are based on a review of the Spreadsheet conducted at the direction of the Registrar for purposes of responding to the DOJ's letter and this litigation. The Office of the County Counsel responded on behalf of the Registrar on October 15, 2026. On October 15, 2026, the DOJ sent another letter appearing to threaten criminal prosecution.

14. Prior to the receipt of the October List, I was not aware of any requests by or authority for federal or state agencies to segregate votes based on non-citizenship. I am not aware of any state or federal law establishing standards for evaluating evidence of non-citizenship or independent authority for the Registrar to question voter eligibility other than by acknowledging and acting upon voter attestation. I am also not aware of any request, prior to the instant matter, by any state or federal authorities for the Registrar to investigate a voter's eligibility based on assertion of non-citizenship. The Registrar is not an investigative agency and I am not aware of any state or federal law granting it investigative authority.

15. I am also not aware of any authority for the Registrar to cancel a voter's registration based on third party allegations of ineligibility, with the exception of a notification (including from family or household member) that a voter is deceased, notification of incarceration in a state prison for a felony offense, or a court order declaring an individual incompetent for purposes of voting. Instead, depending on the nature of third-party allegations or information, the Registrar has limited authority to inactivate a voter's registration and issue a confirmation notice to seek confirming or clarifying information (generally, this occurs when a resident indicates receiving mail for someone who no longer resides at an address).

**Voting Method**

16. Generally speaking, all voters with active status in Los Angeles County are issued and can cast their vote using a Vote-By-Mail ("VBM") ballot. They also have the option of voting in-person at a Vote Center during the 10 days prior to or on Election Day. For simplicity's sake for the purpose of this

declaration, any vote not cast in person at a vote center is considered a VBM ballot. This category includes VBM ballots returned by USPS mail, completed VBM ballots brought to Vote Centers, VBM ballots deposited in official ballot drop boxes, and ballots faxed by citizens who are outside the country and military personnel stationed outside our County.

17. There are different processes in place for in-person versus VBM voting. However, the Registrar employs uniform and nondiscriminatory standards when defining what counts as a vote. It is therefore critical to the effective administration of the election that a voter is not prejudiced solely based on their chosen voting method.

18. Regardless of voting method, voters have a right to ballot secrecy and votes cast on ballots are fully anonymous—even to the Registrar itself. Cal. Const., art. II, § 7; Elec. Code § 2300; 52 U.S.C. § 21081(a)(1)(C) (Help America Vote Act). Once a returned ballot is verified and extracted from any envelopes or rosters identifying the voter and then counted, the ballot can no longer be associated with the voter, regardless of voting method used.

**VBM Process**

19. California state law requires all voters to receive VBM ballots. (Elec. Code § 3000.5, subd. (a)). VBM ballots are required to be mailed 29 days before the election. (Elec. Code §§ 3001, 4005, subd. (a)(8)(A).)

20. The law is slightly different for military or overseas voters who are away from the county where they are eligible to vote:

e. Cal. Elec. Code § 3105(b)(1) requires the county elections official to send the ballot "not earlier than 60 days but not later than 45 days before the election." The ballot must include a list of the qualified candidates and measures.

f. For federal elections, 52 U.S.C. § 20302(a)(8)(A), part of the Uniformed and Overseas Citizens Absentee Voting Act

("UOCAVA"), separately requires the state to send a validly requested ballot no later than 45 days before the election, if the request arrives at least 45 days out.

21. All VBM ballots require voter signature verification before the ballot can be counted. While voting laws in California maximize the opportunity for eligible voters to vote, there is detailed attention to the verification of cast ballots. This process includes a comparison of signatures on envelopes to the signatures on file with the County elections official. If a signature is missing or does not compare to the signature on file, state law requires county elections officials to reach out to voters to verify their signature to ensure that their ballot can be counted. By law, voters are allowed to cure their signature up to two days before the county certifies their results.

**Ongoing and Upcoming Activities for the November 2026 General Election**

22. The Registrar is currently conducting and preparing for the November 2026 General Election. Leading up to the General Election and up through the close of standard voter registration on October 19, 2026, as consistent with other elections, the Registrar has received an influx of voter registration affidavits, National Change of Address Reports, Voter Residency Confirmation Cards, and other state and federal reports/forms. This has resulted in the Registrar having to update approximately 150,000 voter records in the two months leading up to the General Election. The staff responsible for updating these voter records is the same staff used for signature verification operations and VBM ballot processing operations.

23. The Registrar has mailed approximately 5.9 million VBM ballots to registered voters in the County, and there are 491 active contests in the General Election. As of October 13, 2026, the date we received the letter from DOJ, there were no ballots waiting to be mailed other than replacement ballots.

24. Voting by mail in the General Election is underway. The Registrar

opened more than 420 VBM ballot drop boxes for the General Election starting on October 1, 2026, and also began its VBM ballot processing operations on October 5, 2026. VBM ballots are currently being returned to the Registrar's office by mail and through VBM ballot drop box retrievals. Since the Registrar began its VBM ballot processing operations on October 5, 2026, the Registrar has processed more than 331,000 VBM ballots to date and anticipates much higher volumes of VBM ballots to be received as Election Day approaches, consistent with prior major elections.

25. The Registrar operates under the Voter's Choice Act (Elections Code Section 4005 et seq.) ("VCA") and conducts its elections using vote centers. For the General Election, and pursuant to the requirements of the VCA, the Registrar will be operating 646 vote centers, 123 of which will open on October 24, 2026, ten days prior to and continuing through Election Day, and an additional 523 of which will open on October 31, 2026, four days before and continuing through Election Day. The Registrar is currently in the process of preparing for the opening of these 646 vote centers, which include training and assigning election workers, deployment and set-up on voting equipment and supplies at vote centers, setting up call centers and other information technology ("IT") resources to support the election, as well as the logistical operations of ensuring voting equipment and supplies will be appropriately and securely transported to and set up at each vote center.

26. In addition, the Registrar provides ballots and language assistance to voters in 19 languages pursuant to Elec. Code § 14201 and Section 203 of the Federal Voting Rights Act of 1965 (52 U.S.C. § 10503).

27. The VCA requires counties to use electronic pollbooks ("e-Pollbooks") for in-person voting at vote centers, to allow immediate access to voter registration data. Since 2020, Los Angeles County has administered elections using its County-owned voting system, VSAP. VSAP is a paper ballot based voting

system consisting of hardware and software components enabling voters to mark their selections on a ballot with an electronic ballot marking device that generates a paper ballot to be reviewed and cast by the voter, or by marking paper, human-readable VBM ballots, as well as hardware and software processing and tallying components to tally the votes cast in the election. In order to assist voters and support the election, election workers have to be trained on how to use e-pollbooks and VSAP components at vote centers, and election support operations require both non-technical and technical staff including clerical, multi-lingual, warehouse, IT, call center, and supervisorial staff.

28. From the opening of Vote Centers on October 24, 2026 and up through Election Day, the Registrar will employ and activate thousands of permanent, temporary, and contracted personnel resources to support the conduct, canvass, and certification of the General Election.

29. After 8 p.m. on Election Day, the Registrar will redirect staff and resources toward tabulating votes, completing the official canvass, and certifying election results to the Secretary of State within 30 days.

30. Registrar officials must begin reporting results to the Secretary of State no more than two hours after they begin tallying votes after the polls close. County elections officials then continue to report results periodically throughout Election Night until all Election Day vote totals have been reported. Election results posted on Election Night are semi-official results based on the in-person ballots cast at voting locations on Election Day, any voted ballots cast in person prior to Election Day, and any vote-by-mail ballots received and processed prior to Election Day.

31. While media outlets and others may “call” an election contest, or candidates may “concede” to their opponent, on Election Night or in the days following, these calls and concessions are based on the semi-official results and not the final election results. The election results are never final until the Secretary of State has compiled the official statewide results after all county elections officials





DOCUMENT PREPARED ON RECYCLED PAPER

have reported their official canvass of the votes.

32. This canvassing process requires a significant amount of staff and resources to complete in a timely manner, ensuring that newly elected federal, state and local officials can assume offices without governmental disruption and uncertainty surrounding election outcomes. It includes, without limitation, the processing of conditional voter registrations, VBM ballots (including signature verification), write-in ballots and provisional ballots, the remaking of torn, bent or defective ballots, the adjudication of ballots, and conducting the one percent manual tally post-election audit.

33. As noted, elections officials are required to conduct a public manual tally audit of one percent of batches of ballots tabulated by the County's vote tally system in order to verify the accuracy of the automated count. The sample for the audit is augmented with additional batches of ballots to ensure all contests and ballot measures are represented in the manual tally.

34. Also, during the canvass period, counties must count and report on all ballots (with some exceptions) by the 13th day after the election, November 16, 2026. *See* Elec. Code § 15307. Exceptions include ballots requiring duplication, forwarded ballots, provisional and conditional ballots, vote-by-mail ballots with signature cure issues, and ballots with valid postmarks received after the fourth day following the election. The final County results must be submitted by December 3, 2026, and certified by December 11, 2026. Los Angeles County has publicly noticed its intent to certify local election results on Friday, November 27, 2026. *See* Elec. Code § 15372.

**Government's Demand**

35. The government is demanding the Registrar and the State to "set aside vote-by-mail ballots from persons identified by the Federal Government likely to be noncitizens" for over 20,000 voters on the October List, the majority of which are not associated with addresses in Los Angeles County. The Registrar was first

provided the October List to review on October 13, 2026, well into the election cycle.

36. The Registrar has *never* attempted a "temporary ballot segregation" where explicit authority or regulation does not exist. Setting aside concerns about disenfranchising voters based on an unconfirmed list, I have practical concerns about the ability to perform this exercise without placing the timely and effective administration and certification of the election at risk. And, even if it is possible to segregate these ballots, I do not believe it will be possible to come to a resolution on the DOJ's demand if such authority and methodology was identified or ordered, afford these individuals appropriate due process under state and federal law, and have their votes count toward the General Election while meeting all deadlines. The Registrar has already complied with its federal and state requirement.

37. First, all VBM ballots were sent out by October 5, 2026 consistent with California and federal law and have been in the process of printing since September 8, 2026. Accordingly, it is not possible to segregate unreturned ballots, i.e., ballots that are still in the voter's possession. Second, it is also not possible to segregate any of the October List ballots where the individual has already voted and the Registrar has processed that vote. As noted above, California law requires maintaining voter anonymity. Nobody, including the Registrar, knows how a particular individual voted. This is because, once the signature on a VBM ballot envelope is verified, the ballot is removed from its identification envelope and processed along with other ballots for tabulation. As of today, the Registrar has already processed 331,000 ballots. Finally, the DOJ seems to suggest that the Registrar will not need to address any of the voters on the October List who choose to vote in-person rather than by mail. However, I am not aware of a state or federal law that would permit the Registrar to disparately treat voters based on voting method. The DOJ has also threatened criminal enforcement based on non-compliance with the segregation of "likely" non-citizen ballots, and it is not clear to

the Registrar how, if at all, this is different.

38. Thus, the question is whether or not the Registrar can segregate thousands of ballots after they have been submitted by mail or in person. There are a number of roadblocks that would make this impossible. And all of those roadblocks would require the Registrar to redirect key staff from the administration of the election; potentially delay the certification of the election; disenfranchise voters; potentially interfere with counting the results themselves; and may cause general uncertainty in the election results. More critically, those actions seem in conflict with California laws and regulations.

**Step 1: Identifying the Voters**

39. The first step would require devoting substantial resources to confirming any differences between the October List and our voter registration database; investigating the reason for any discrepancies; tracking those records; and communicating such discrepancies back to the DOJ. Indeed, it is inevitable that there will be differences in the files that will make matching difficult, time-consuming, and potentially inaccurate, as people's names, addresses, and other information may vary slightly (e.g., Robert vs. Bob, Apartment #3 vs. Apt. 3, Sara Jones-Smith vs. Sara Jones Smith). I know from my experience that data matching is a complex process and extreme care must be taken when the consequences of errors may lead to voter disenfranchisement.

40. As an additional hurdle, the DOJ has provided a statewide list to Los Angeles County and Los Angeles County cannot identify the legitimacy of records outside of its jurisdiction.

**Step 2: Manual Review of Matches**

41. Any review of approximate matches would have to be performed manually, with multiple checks, by the Registrar's most experienced voter-records staff. Those are the same staff who are responsible for signature verification and vote-by-mail processing during the election period, and the review would have to

be completed before the counting and certification deadlines described above.

**Step 3: "Flagging" Voters**

42. The interim step of flagging voters within the DIMS database who vote by mail or in person and other required changes to software or hardware would involve IT and require technical skill to assess. I understand from our IT Department that this is a risky endeavor that could put the entire General Election in jeopardy. *See* Declaration of Aman Bhullar.

**Step 4: Manual Segregation**

43. The Registrar's voting system and ballot-processing workflow have no function for setting aside the ballots of designated voters. Creating one during an election would require changes to systems and procedures that have already been tested and finalized for this election, the development and documentation of a new process, and the training of staff on it, all while the work described above is required to be completed on the statutory schedule. I do not believe the Registrar could do that and still meet its post-election deadlines, including the timely count and certification of the vote.

**Step 5: Verify Citizenship or Non-Citizenship**

44. The DOJ's proposed order would also require the Registrar to verify the citizenship of each affected voter. The Registrar is not equipped or authorized to verify voter citizenship because it does not independently house citizenship-related information beyond the voter attestation as identified in federal and state law (such as, among other things, immigration records, travel records, naturalization records, etc.) and certainly is not equipped to do so within the election period. California has not authorized use of the federal Systematic Alien Verification for Entitlements ("SAVE") program for the 2026 General Election, and the Registrar has no direct access to federal citizenship data. The DOJ has not explained what information would be provided to the Registrar to assist with this determination nor described any process by which the Registrar would be given

information or authority such that it could verify citizenship. Further, while the DOJ has stated that it would also verify citizenship, it has stated, despite its investigative authority, it cannot investigate the people on its list before the election concludes. Compl. ¶ 60. It is not clear how Los Angeles County, in the middle of the election cycle, would be better positioned to verify U.S. citizenship than the Federal Government or that it has any identified authority to do so. And it is certainly not clear how Los Angeles County can be expected to complete this verification within the election period when the government itself has stated it cannot do so.

45. As far as I am aware, this is the first time the Registrar has been asked by the Federal Government to investigate the potential non-citizenship of voters. The Registrar is not an investigative body and has no identified authority to do so — and, I am not aware of any law that gives the DOJ the ability to grant the Registrar such authority.

46. There are other potential issues with carrying out an inquiry based on the suspicion that the government has invoked so far. First, the DOJ itself has acknowledged these are only likely non-citizens, not actual non-citizens. A possibility of non-citizenship is not sufficiently reliable for the Registrar to initiate the process of potentially removing an individual from the voter roll, preventing a voter from access to voting, or failing to count a ballot submitted in accordance with existing law.

47. Second, the DOJ has provided nothing more than a list of names, dates of birth, and addresses. The DOJ describes in correspondence received after the initial submission of the list a multi-agency investigative process that led to the creation of this list—but provides none of the supporting evidence from that investigation along with this barebones list. It does not even identify whether it has a "high confidence" that the individuals on the October List are non-citizens.

48. Third, at the direction of the Registrar and for purposes of this



DOCUMENT PREPARED ON RECYCLED PAPER

litigation, Registrar staff reviewed a sample of 200 records from the October List bearing Los Angeles County addresses. The review is preliminary and quality control is continuing, but it indicates that the October List is unreliable: 112 of the 200 records correspond to registrations that are canceled or inactive, so that no General Election ballot was mailed to the person; of the voters where birthplace was meaningfully reported, 38.9% indicate that they were born in the United States, which is strong evidence of citizenship; and 71.2% of the records have no voting history.

**Step 6: Providing Notice and Opportunity to Cure**

49. Finally, even if the Registrar had a lawful basis to question a registrant's eligibility, which it does not, the registrant would be entitled under state and federal law to notice and an opportunity to respond before any ballot was rejected, and no such process could be completed between now and the certification deadlines described above.

**Conclusion**

50. As outlined above, I am not aware of any authority under state or federal law that gives me legal authority to comply with the government's demands in this matter. Even if such authority exists, which it does not, it would be administratively impossible and take key personnel away from their critical election duties. Because the County results must be submitted by December 3, 2026, and certified by the State by December 11, 2026, ballots held pending an open-ended federal review may, in practical effect, never be counted. This process would risk disenfranchising voters who are validly registered. The process the DOJ seeks to have the Registrar undertake jeopardizes that core right for potentially thousands of voters, not to mention the finalization of election results, confidence in election results, and the ability to allow new elected officials to be instated in their positions.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this _20th_ day of October, 2026, in



DOCUMENT PREPARED ON RECYCLED PAPER

Norwalk, California.

MONICA FLORES