# EXHIBIT A

NICHOLAS W. BROWN
Attorney General of Washington
ALISON CORDOVA (CAL BAR 284942)
Assistant Attorney General
TERA M. HEINTZ (CAL BAR 241414)
CRISTINA SEPE (CAL BAR 308023)
KARL D. SMITH (WSBA BAR 41988)
Deputy Solicitors General
1125 Washington Street SE
Olympia, WA 98504-0100
360-753-6200
Alison.Cordova@atg.wa.gov
Attorneys for State of Washington

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF CALIFORNIA, SHIRLEY N. WEBER, in her official capacity as the California Secretary of State, and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar Recorder/County Clerk,

Defendants.

NO. 2:26-cv-12025-DOC-(ADSx)

BRIEF OF AMICI CURIAE WASHINGTON, ARIZONA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAI‘I, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, VERMONT, VIRGINIA, and WISCONSIN IN SUPPORT OF DEFENDANTS

Hearing Date: Not Set
Time: Not Set
Courtroom: 9D
Judge: David O. Carter
Magistrate Judge: Autumn D. Spaeth

## TABLE OF CONTENTS


I. STATEMENT OF INTEREST AND INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. DOJ's Case Is Contrary to the Constitution and Federal Law .......... 3

1. DOJ's assertion of authority is contrary to the separation of powers .......... 3

2. The implications of DOJ's legal theory are startingly vast .......... 6

3. DOJ's requested relief would violate federal law .......... 7

4. The *Purcell* principle weighs strongly against federal interference with elections at this late date .......... 11

B. This Lawsuit Creates a Chilling Effect and Presents State and Local Election Officials with an Untenable Choice .......... 12

C. This Lawsuit Appears to be a Political Action and the Balance of Equities and Public Interest Weigh Strongly Against Equitable Relief .......... 13

1. This lawsuit is part of a politically motivated campaign of threats and intimidation toward election officials .......... 13

2. DOJ has made other unreasonable demands .......... 18

3. This action is in sharp tension with longstanding DOJ policies created to avoid interfering with elections .......... 20

4. DOJ's timing is also unjustifiable in other ways .......... 20

III. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

## Cases

*Arcia v. Fla. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014) .......... 8-10

*Arizona v. Inter Tribal Council of Ariz.*,
570 U.S. 1 (2013) .......... 3

*California v. Trump*,
835 F. Supp. 3d 288 (D. Mass. 2026) .......... 16

*Common Cause v. U.S. Dep't of Just.*,No. CV 26-1352 (SLS), __ F. Supp. 3d __, 2026 WL 3033772 (D.D.C. Oct. 9, 2026 .......... 19

*Majority Forward v. Ben Hill Cnty. Bd. of Elections*,
512 F. Supp. 3d 1354 (M.D. Ga. 2021) .......... 10

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) .......... 12

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025),
*cert. granted sub nom Republican Nat'l Comm. v. Mi Familia Vota*,
146 S. Ct. 2799 (2026) .......... 8, 10

*People Not Politicians v. Onder*,
609 U.S. ___, 2026 WL 2883222 (U.S. Sept. 25, 2026) .......... 11

*Trump v. California*,
No. 26A124, 609 U.S. ___, 2026 WL 2473573(Aug. 24, 2026) .......... 16

## Constitutional Provisions

Const. art. I, § 4, cl. 1 .......... 3, 7

Const. art. II, § 3 .......... 3

## Federal Statutes

8 U.S.C. § 1227(a)(6) .......... 5

18 U.S.C. § 611(b) .......... 4

52 U.S.C.  § 20507(c)(2) .......... 8

52 U.S.C. § 20501(b)(1)–(4) .......... 7

52 U.S.C. § 20507 .......... 8

52 U.S.C. § 20507(a)(4) .......... 4

52 U.S.C. § 20507(b)(1) .......... 4

52 U.S.C. § 20508(b)(2) .......... 4-6

52 U.S.C. § 20510(a) .......... 4

52 U.S.C. § 20511 .......... 7

52 U.S.C. § 21111 .......... 4

Help America Vote Act of 2002 (HAVA), Pub. L. No. 107-252, 116 Stat. 1666 (2002) .......... 4, 18

National Voter Registration Act of 1993 (NVRA), Pub. L. No. 103-31, 107 Stat. 77 (1993) .......... 4, 7-11, 18

*Safeguard American Voter Eligibility Act*, H.R. 7296, 119th Cong., 2nd Sess. (2026) .......... 15

**State Statues**

N.J. Stat. Ann. § 19:31-5 .......... 5

N.J. Stat. Ann. § 19:31-6.4 (2025) .......... 5

N.J. Stat. Ann. § 19:63-17 .......... 11

N.Y. Elec. Law § 5-210 (2024) .......... 5

Wash. Rev. Code § 29A.08.010(1)(f) .......... 5

Wash. Rev. Code § 29A.08.810(1)(e) .......... 5

Wash. Rev. Code § 29A.40.110 .......... 11

Wash. Rev. Code § 29A.60.040 .......... 11

Wash. Rev. Code § 29A.60.050 .......... 11

Wash. Rev. Code § 29A.84.130 .......... 5

**Other Authorities**

Acting Deputy Attorney General Trent McCotter (@PADAGMcCotter), X (Oct. 15, 2026, at 12:53 PT) https://x.com/PADAGMcCotter/status/2110821310666625509 .......... 18

Attorney General Merrick Garland, *Memorandum to All Employees* (June 24, 2024), https://www.justice.gov/archives/jmd/media/1359366/dl ................................20

Attorney General Todd Blanche (@AGToddBlanche), X (Oct. 15, 2026, at 12:40 PT) https://x.com/AGToddBlanche/status/2110818055223755170 .......18

Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 7, 2024, at 16:01 PT), https://truthsocial.com/@realDonaldTrump/posts/113098755955857290 ..........................................14

Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 25, 2026, at 9:03 PT), https://truthsocial.com/@realDonaldTrump/posts/116466187198141340 ..........................................................14

Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 18, 2025, at 4:17 PT), https://truthsocial.com/@realDonaldTrump/posts/115049485680941254 .13, 15

Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 18, 2026, at 13:38 PT), https://truthsocial.com/@realDonaldTrump/117118475271319244 ................13

Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 20, 2025, at 20:53 PT), https://truthsocial.com/@realDonaldTrump/posts/115064726295507295 .......14

Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 30, 2025, at 18:49 PT), https://truthsocial.com/@realDonaldTrump/posts/115120863399877029 .......14

Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 21, 2023, at 16:22 PT), https://truthsocial.com/@realDonaldTrump/posts/111631682934429644 .......14

Donald J. Trump (@realDonaldTrump), Truth Social (June 24, 2026, at 7:26 PT), https://truthsocial.com/@realDonaldTrump/posts/116805545512296111 .......15

Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 20, 2026, at 6:27 PT), https://truthsocial.com/@realDonaldTrump/posts/116261732231179804 .......15

Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 16, 2026, at 17:28 PT) https://truthsocial.com/@realDonaldTrump/posts/117453415283228242 .......18

Secretary Markwayne Mullin, X (July 17, 2026, at 10:37 PT), https://x.com/SecMullinDHS/status/2078172229934760403 ..........................20

*Evaluating How the USCIS SAVE System Performs in Practice: Evidence from Election Offices*, Bipartisan Policy Center (Oct. 5, 2026), https://bipartisanpolicy.org/article/evaluating-how-the-uscis-save-system-performs-in-practice-evidence-from-election-offices/ .................................... 6

Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026) ..........................................................7, 15

*Federal Requests for Voter Lists*, National Conference of State Legislatures (Oct. 8, 2026), https://www.ncsl.org/elections-and-campaigns/federal-requests-for-statewide-voter-lists ..........................................................................19

Hon. Markwayne Mullin, Secretary of Homeland Security (July 29, 2026), https://www.documentcloud.org/documents/28524324-72926-pa-department-of-state-response-letter-to-dhs/ ...................................................21

Jacob Wendler, *Trump says Republicans should 'nationalize' the elections*, Politico (Feb. 2, 2026), https://www.politico.com/news/2026/02/02/trump-nationalize-elections-2026-midterms-00760015 ...........................................................15

*Judge rejects Justice Department's 'unreasonable' attempt to get names of 2020 election workers in Fulton County*, PBS News, (July 7, 2026), https://www.pbs.org/newshour/politics/judge-rejects-justice-departments-unreasonable-attempt-to-get-names-of-2020-election-workers-in-fulton-county ......................................................................................12

*Justice Department charges more than 2 dozen foreign nationals in California sweep targeting noncitizen voters*, PBS News (Oct. 19, 2026), https://www.pbs.org/newshour/politics/justice-department-charges-more-than-2-dozen-foreign-nationals-in-california-sweep-targeting-noncitizen-voters ..................................................................................... 5

*Justice Department Sues State of California over Voter List*, Department of Justice, https://www.justice.gov/opa/pr/justice-department-sues-state-california-over-voter-list (Oct. 15. 2026) .....................................................18

Letter from Eric Neff, Acting Chief of DOJ, to the Hon. Michael Adams, Kentucky Secretary of State (Sept. 4, 2026) https://www.documentcloud.org/documents/28656481-doj-letter-to-michael-adams/ ............................................................................17

Letter from Francisco Aguilar, Nevada Secretary of State, to Markwayne Mullin, Secretary of Homeland Security (July 29, 2026), https://www.democracydocket.com/wp-content/uploads/2026/07/Nevada-response-to-DHS.pdf ......................................................................21

Letter from Harmeet Dhillon, Assistant Attorney General, to the Hon. Jocelyn Benson, Michigan Secretary of State (July 7, 2026),

https://www.documentcloud.org/documents/28425163-20260707-doj-letter-and-memo-voter-eligibility/ ....16

Letter from Steve Hobbs, Washington Secretary of State, to Harmeet Dhillon, Assistant Attorney General (Sept. 23, 2026), https://www.sos.wa.gov/sites/default/files/2025-09/9.23.2025%20Secretary%20Hobbs%20DOJ%20Response.pdf ....19

Letter from Trent McCotter, Deputy Attorney General, to Peter Bollinger, Assistant County Counsel, Los Angeles (Oct. 16, 2026), https://s3.documentcloud.org/doc uments/28819438/doj-california-voter-roll-response.pdf ....17

Mary Spicuzza and Molly Beck, *FBI has sought at least 2 more Milwaukee election staffers*, Wisconsin State Journal (May 16, 2026), https://madison.com/news/state-regional/government-politics/elections/article_e80e47b3-61e7-583f-b5e8-8eaaa16251cc.html....12

Maya Homan and Ross Williams, *FBI raids Fulton County elections warehouse seeking 2020 ballots*, Georgia Recorder, (Jan. 28, 2026), https://georgiarecorder.com/2026/01/28/fbi-raids-fulton-county-elections-warehouse-seeking-2020-ballots/ ....12

Michael Gold, *Senate Bows to Reality, Leaving Trump's Voting Bill Undone*, N.Y. Times (Aug. 8, 2026), https://www.nytimes.com/2026/08/08/us/politics/trump-save-america-act-republican-voting-bill-senate.html....15

Nick Brown, *I'm the attorney general of Washington state. Here's how we're protecting the midterm elections*, The Guardian (Oct. 8, 2026), https://www.theguardian.com/commentisfree/2026/oct/08/washington-state-midterm-elections.....13

Nick Corasaniti, *Trump's Claims of Illegal Voting in Nevada Fizzle*, N.Y. Times (Sept. 24, 2026), https://www.nytimes.com/2026/09/24/us/politics/nevada-voters-homeland-security-trump.html ....21

Office of the Inspector General, U.S. Department of Justice, *A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election* 16 (June 2018), https://oig.justice.gov/sites/default/files/reports/18-04.pdf....20

PBS NewsHour, *WATCH: Trump speaks after winning 2024 Iowa caucuses*, at 7:08, YouTube,, https://www.youtube.com/watch?v=VGv9xPpe6vI&t=407s ....14

President Donald J. Trump, *Address to the Nation on Election Reforms* (July 16, 2026), https://www.govinfo.gov/content/pkg/DCPD-202600469/pdf/DCPD-202600469.pdf ....................13

President Donald J. Trump, *Donald Trump Addresses the Republican Members Issues Conference in Florida* (Mar. 9, 2026) https://trump-archive.com/item/85a5a76a-97a1-4194-80f9-0666edd7a151 ....................14

Raquel Coronell Uribe, *Trump Says He Won't Sign Any Bills Until SAVE America Act Passes*, NBC News (Mar. 8, 2026), https://www.nbcnews.com/politics/donald-trump/trump-says-will-not-sign-bills-america-act-passes-rcna262336 ....................15

Rebecca Shabad, *Homeland Security Secretary Markwayne Mullin threatens states over elections*, NBC News (July 17, 2026), https://www.nbcnews.com/politics/elections/homeland-security-secretary-markwayne-mullin-threatens-states-election-rcna588002 ....................17

Samantha Trepel, *Dissecting DOJ's Letter to California Election Officials: Empty Threats of Criminal Liability*, Just Security (Oct. 18, 2026), https://www.justsecurity.org/161204/doj-letter-threat-california-election-officials/.................... 7

Tim Reid & Nathan Layne, *US Election Officials Decry Trump's Threat to Jail Them if He Returns to White House*, Reuters (Sept. 9, 2024), https://www.reuters.com/world/us/us-election-officials-decry-trumps-threat-jail-them-if-he-returns-white-house-2024-09-09/ ....................14

U.S. Dep't of Justice (@TheJusticeDept), X (Oct. 15, 2026, at 12:01 PT) https://x.com/TheJusticeDept/status/2110808345753911645 ....................18

## I. STATEMENT OF INTEREST AND INTRODUCTION

Amici curiae Washington, Arizona, Colorado, Connecticut, Delaware, District of Columbia, Hawai‘i, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Virginia, and Wisconsin (Amici States) submit this brief supporting Defendants' opposition to the United States's application for a temporary restraining order and motion for preliminary injunction. Amici States have profound interests in this case in light of their express constitutional role in administering federal elections within their respective jurisdictions, the chilling effect this action has on state and local election officials across the nation, and the potential for similar actions against Amici States.

Through this lawsuit, the Department of Justice (DOJ) seeks to dramatically expand the power of the federal executive branch to superintend state election laws. This effort is contrary to the express allocation of authority in the Constitution and Congress's careful balancing of competing policies, as reflected in the National Voter Registration Act of 1993 and the Help America Vote Act of 2002. Under the Constitution and federal law, States are responsible for administering federal elections—specifically including voter registration—subject to specific and defined federal requirements. Under DOJ's novel legal theory, by contrast, the executive branch can invent new election requirements, unmoored from any constitutional or statutory authority, and demand that States enforce them in the middle of an election. The threatened interference with Amici States' authority is dire, and the Court should decline to accept this unconstitutional proposition.

The context in which this case arises further undermines DOJ's entitlement to equitable relief. For months, the President repeatedly demanded that Congress

impose new burdens on persons attempting to register to vote or cast a ballot, citing unfounded and false claims of widespread voting by noncitizens. The President has also called for "federalizing" election administration and expressly acknowledged the partisan basis for his effort as ensuring that his political party wins more elections. Congress declined the President's demands.

Undeterred by Congress's judgment, the President has sought to accomplish his partisan political goals through other unlawful means that, when challenged, have been uniformly rejected by courts. These failed efforts include issuing an Executive Order directing the Election Assistance Commission to change the national mail voter registration form to require documentary proof of citizenship—an unconstitutional usurpation of authority enjoined by multiple courts. It also includes DOJ's demands for confidential state voter registration lists, which has been held unlawful by every court to consider the issue (26 district courts and 1 circuit court). As part of these efforts, the federal government and DOJ have engaged in a campaign of threats and intimidation against state and local election officials. And now, in the midst of an election, DOJ is sending an untenable demand to state and local election officials in California, which would require that they violate state and federal law. When those officials reasonably—and necessarily—declined, DOJ threatened to criminally prosecute elections officials who follow federal and state law and filed this baseless lawsuit. In this context, it appears that DOJ is acting to interfere with free and fair elections to accomplish the President's partisan political goals. That is reinforced by the timing of this action, while voting is already underway, contrary to longstanding DOJ policies designed to avoid interfering with elections.

Amici States agree that voting by noncitizens in federal elections is illegal. Under both state and federal law, noncitizens who attempt to vote face criminal

penalties and the prospect of deportation. Amici States are firmly committed to complying with federal and state laws designed to prevent noncitizens from registering to vote or casting a ballot, while also ensuring all qualified voters can exercise their fundamental right to vote.

But this lawsuit seeks something fundamentally different. This lawsuit asserts that any time DOJ believes that a person *might* be a noncitizen, the federal government can—without even providing proof or verification—direct States to not count that person's vote or else criminally prosecute them. That assertion is contrary to the Constitution and federal law. It interferes with the constitutional authority of States and is almost certain to disenfranchise United States citizens. Amici States strongly urge this Court to deny the DOJ's motion.

## II. ARGUMENT

### A. DOJ's Case Is Contrary to the Constitution and Federal Law

#### 1. DOJ's assertion of authority is contrary to the separation of powers

This lawsuit is a dangerous and unconstitutional effort by the executive branch to usurp the constitutional authority of States and Congress. The Constitution assigns authority to regulate the manner of conducting federal elections—including the manner of conducting voter registration and list maintenance—to the States. Const. art. I, § 4, cl. 1; Const. art. II, § 3; *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 8 (2013) (holding that the Elections "Clause's substantive scope is broad" and includes "regulations relating to 'registration'"). Under the Constitution, only Congress may alter those state laws. Const. art. I, § 4, cl. 1.

Exercising its authority under the Elections Clause, Congress has created specific requirements that States must follow to maintain accurate and current

voter registration lists while protecting the right to vote. *See* National Voter Registration Act of 1993 (NVRA), Pub. L. No. 103-31, 107 Stat. 77 (1993); Help America Vote Act of 2002 (HAVA), Pub. L. No. 107-252, 116 Stat. 1666 (2002). When prescribing the content of the national mail voter registration form, Congress required that applicants sign an attestation under penalty of perjury that they meet all eligibility requirements, including citizenship. 52 U.S.C. § 20508(b)(2). Congress also required that States "conduct a general program that makes a reasonable effort to remove the names of ineligible voters[,]" while also placing important limits on removals, such as a prohibition on systematic removals within 90 days of a federal election and a requirement that voter list maintenance activities "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act[.]" 52 U.S.C. § 20507(a)(4), (b)(1). The NVRA specifically provides the Attorney General with authority to enforce these federal laws. 52 U.S.C. § 20510(a) (NVRA enforcement); 52 U.S.C. § 21111 (HAVA enforcement).

Tellingly, DOJ's Complaint does not allege a single violation of voter-list maintenance duties imposed by federal law. *See* Dkt. No. 1. Nor does it invoke or rely on its express authority to enforce the NVRA or HAVA. *See id.*

Instead, DOJ invents a novel legal theory that would vastly expand federal authority over elections without Congress giving the executive branch that authority. The complaint asserts that California, by declining DOJ's demand to segregate and not process the ballots of persons the federal government suspects are "likely noncitizens," "frustrate[s] the very purpose and effect of the federal prohibition against noncitizens voting in federal elections." Dkt. 1, at 13-14. This is transparently false. The federal statute provides that the remedy for a violation is criminal prosecution potentially resulting in a fine or imprisonment. 18 U.S.C. § 611(b). A separate statute provides that a noncitizen who votes may

be subject to deportation from the United States. 8 U.S.C. § 1227(a)(6). No statute authorizes DOJ to bring a civil action to set aside state election laws or dictate how States administer their elections. Nor are state election laws any obstacle to the enforcement of federal laws permitting criminal prosecutions or deportations of noncitizens who vote in federal elections. Indeed, the federal government has recently exercised its congressionally authorized power to pursue criminal charges against persons it believes have violated laws against registering to vote or voting while not a U.S. citizen. *Justice Department charges more than 2 dozen foreign nationals in California sweep targeting noncitizen voters*, PBS News (Oct. 19, 2026), https://www.pbs.org/newshour/politics/justice-department-charges-more-than-2-dozen-foreign-nationals-in-california-sweep-targeting-noncitizen-voters; *cf.* Dkt. 1, ¶ 60 (acknowledging that the "United States actively investigates and prosecutes incidents of unlawful voting")

To be clear, Amici States agree that noncitizens may not vote in federal elections. In order to register to vote, applicants must attest that they are United States citizens—the proof of citizenship contemplated by federal law—or otherwise provide proof of citizenship. *See* 52 U.S.C. § 20508(b)(2); Wash. Rev. Code § 29A.08.010(1)(f); *see also, e.g.*, N.J. Stat. Ann. §§ 19:31-5, -6.4 (2025); N.Y. Elec. Law § 5-210 (2024). And in exercising their constitutional authority, States have adopted a variety of different laws to ensure compliance with citizenship requirements, such as state criminal penalties and voter registration challenge processes. *See, e.g.*, Wash. Rev. Code §§ 29A.08.810(1)(e), 29A.84.130.

Amici States sharply disagree, however, with the suggestion that the federal executive branch may demand changes to state administration of elections. No federal law requires that States disenfranchise voters based on the unproven say-

so of federal agencies,[1] and DOJ cannot unilaterally impose such a requirement. In its proposed order, DOJ asks this Court to order California "to confirm the citizenship of the person who sent a segregated vote-by-mail ballot" and "not rely solely on the person's registration-related attestation[.]" Dkt. 22-8, at 6. No federal law authorizes that demand. To the contrary, Congress expressly permitted attestation as a sufficient process for citizenship verification. 52 U.S.C. § 20508(b)(2). And if the President or DOJ wish to change federal law, their remedy lies with Congress. Contrary to DOJ's suggestion, allowing the federal executive to unilaterally rewrite federal and state election laws is no "modest proposal[.]" Dkt. 22-2, at 23.

### 2. The implications of DOJ's legal theory are startingly vast

Under DOJ's legal theory, it could direct States to not count voters' ballots for any number of reasons. The logic is not limited to assertions about citizenship. DOJ's core theory is essentially: federal law prohibits noncitizens from voting; aiding or abetting a noncitizen voting is a crime; and election officials aid or abet noncitizen voting when they decline to disenfranchise a voter based on DOJ's

---

[1] The declarations filed in support of DOJ's application for a temporary restraining order are remarkably superficial and opaque. The declarations assert that United States Citizenship and Immigration Services "enhances . . . voter data through a reliable third-party data analytics and investigative platform" and then "scores and ranks the potential identity match." Dkt. 22-4, at 2-3 (¶ 16). The record provides no information about what third-party platform was used, what information or documents the third-party platforms utilize, or how federal agencies are scoring and ranking supposed "matches" to make an individualized determination on citizenship. The record also contains no support for the assertion that the platform is reliable, and recent experience with similar purported matches by the federal government undermines the assertion that the federal government's information is reliable. *See, e.g.*, *Evaluating How the USCIS SAVE System Performs in Practice: Evidence from Election Offices*, Bipartisan Policy Center (Oct. 5, 2026), https://bipartisanpolicy.org/article/evaluating-how-the-uscis-save-system-performs-in-practice-evidence-from-election-offices/ (noting "[t]he tendency of SAVE to generate false positives—voters flagged as (potential) noncitizens who are in fact citizens—is a well-documented problem").

unsubstantiated belief that a person is "likely" not a citizen. That logic would vastly expand DOJ's power. For example, 52 U.S.C. § 20511 penalizes "a person, including an election official, who in any election for Federal office . . . knowingly and willfully . . . procure[s], cast[s], or tabulate[s] ballots that are known by the person to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held[.]" Under DOJ's theory, it could prevent a State from counting ballots of persons when it sends a letter setting forth its belief—without any proof—that those voters are not, for example, state residents. And it could, according to DOJ's theory, then criminally charge State officials for noncompliance. This is not an abstract proposition. The President's March 2026 executive order directs DOJ to do just that. Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026) (¶ 2(b)). And DOJ *has* threatened criminal penalties against Defendants here.[2]

The extraordinarily broad scope of DOJ's theory, and its substantial encroachment on States' constitutional authority to regulate the manner of elections, further illustrates why it must fail.

**3. DOJ's requested relief would violate federal law**

Not only is this lawsuit inconsistent with the Elections Clause, the relief it seeks is squarely prohibited by the NVRA. In adopting the NVRA, Congress struck a careful balance between "increas[ing] the number of eligible citizens who register to vote" while also "protect[ing] the integrity of the electoral process[.]" 52 U.S.C. § 20501(b)(1)–(4). As part of this careful balance, the NVRA imposes requirements about when and how States may remove individuals from their voting

---

[2] *See* Samantha Trepel, *Dissecting DOJ's Letter to California Election Officials: Empty Threats of Criminal Liability*, Just Security (Oct. 18, 2026), https://www.justsecurity.org/161204/doj-letter-threat-california-election-officials/.

rolls for federal elections. 52 U.S.C. § 20507. For "any program" that intends to "systematically remove" ineligible voters, a State must complete such efforts not later than 90 days before a federal election. 52 U.S.C. § 20507(c)(2). This provision gives rise to what is known as the NVRA's 90-day "quiet period": once States are within 90 days of a federal election, they must cease any efforts to systematically remove ineligible voters. The reason for this quiet period is straightforward. The time immediately before an election is "when the risk of disfranchising eligible voters is the greatest." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014). The cost of false positives is at its apex, as eligible voters who are erroneously removed from voter rolls just days or weeks before an election "will likely not be able to correct the State's errors in time to vote." *Id.*

The 90-day quiet period for the 2026 General Election already began in early August 2026. DOJ sent its October 13 letter and filed suit just three weeks before Election Day—after California mailed ballots to registered voters and voting has begun. Dkt. No. 1, ¶ 44; Dkt. No. 15-1 (Exs. C, D). The relief that DOJ seeks through this lawsuit, initiated well after the quiet period started to run, would violate the NVRA's clear prohibition on systematic removals of individuals on voter rolls within 90 days of a federal election.

Ninth Circuit precedent dispels any claim to the contrary. In a recent decision, the Ninth Circuit held that cancellations "based on the systematic comparison of registered voters to various databases," including DHS's SAVE database, comprise "precisely the type of systematic cancellation program that the 90-day Provision was meant to preclude." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025), *cert. granted sub nom Republican Nat'l Comm. v. Mi Familia Vota*, 146 S. Ct. 2799 (2026). It did not matter that the state characterized the removal system as "periodic," or even "individualized[.]" *Id.* at 717. Instead,

the Ninth Circuit looked at how the information supporting cancellation was obtained and why the investigation was initiated. *Id.* The court held that a programmatic cancellation of registrations relying on "comparisons to databases" to identify potential matches is systematic in nature. *Id.* at 716. The Eleventh Circuit is in accord, similarly holding that a "computerized data-matching process to compare the voter rolls with other state and federal databases" constitutes a systematic program that cannot occur within the NVRA's 90-day window. *Arcia*, 772 F.3d at 1344; *see also id.* (noting that the SAVE database has "systematic" in its very name).

Those holdings are fatal to DOJ's attempts to evade the NVRA's 90-day quiet period requirement. The declarations filed by DOJ establish that it created its list by using a document that "appeared to be the California voter roster for the general election of 2026" (which was apparently only current "as of August 2025"), *see* Dkt. 22-3, ¶¶ 20-21, "enhance[d]" it with some undisclosed "third-party data analytics and investigative platform[,]" and "screen[ed] all potential matches against Department of State and Social Security Administration data[,]" Dkt. 22-4, ¶¶ 16-17. Based on that systematic process involving large-scale and undisclosed data-matching efforts, DOJ then sent California a list of over 20,000 voters on an encrypted drive and demanded that California review this list within two days. And DOJ now demands that States refuse to count ballots from registered voters unless those voters fulfill some non-statutory requirement to present proof of citizenship. Dkt. 22-2, at 37; Dkt. 22-8, at 7. Its own affidavits establish that what the federal government is purporting to do is systematically match names on state voter rolls with federal databases and other undisclosed information. Its program is indistinguishable from the type of "mass computerized data-matching

process" that violated the NVRA's quiet period in both *Mi Familia* and *Arcia. See* 129 F.4th at 716; 772 F.3d at 1344.

The references in DOJ's briefing and declarations to manual review, Dkt. 22-2, at 21-22; Dkt. 22-4, at 4 (¶ 19), do not alter the conclusion that this is a prohibited systematic program within the 90-day quiet period. DOJ provides only conclusory statements that manual review was conducted and has provided no evidence from which a State might confirm these assertions even as to a single voter's information, much less all 20,000. DOJ's position would require that election officials systematically disenfranchise 20,000 registered voters on a provided list based on blind acceptance of unproven assertions that information was electronically compared and individualized review was conducted. This is even less reliable—and more systematic—than comparison through a known database. The NVRA's quiet period prohibition applies.

DOJ's attempt to evade the NVRA's requirements by asserting that it does not seek removal of voters significantly misses the mark. DOJ is not asking this Court to merely segregate ballots—it is asking the Court to order California to *not count the ballots* unless voters take some additional action that is not required by any state or federal law. Dkt. 22-2, at 39-40; Dkt. 22-8, at 7. That accomplishes precisely the same result—disenfranchising voters en masse close in time to the election—that Congress sought to prevent with the 90-day quiet period rule. Put differently, "[t]his is a distinction without a difference. The effect of not appearing on the list of electors is the same as not being eligible to vote[.]" *Majority Forward v. Ben Hill Cnty. Bd. of Elections*, 512 F. Supp. 3d 1354, 1368 (M.D. Ga. 2021) (holding that mass voter challenge likely violates the NVRA's 90-day quiet period). Nor is that relief nearly so "temporary" as DOJ suggests. If accepted, the

logic of DOJ's position would prevent States from *ever* accepting a ballot from persons on its list, absent some affirmative step by the voter.

The practical impact of the relief DOJ seeks is not temporary segregation but outright disenfranchisement. DOJ seeks an end-run around the NVRA's statutory protection in the critical period when the risk to voters is the greatest. This Court should not allow its equitable powers to be used for such improper and undemocratic ends.

**4. The *Purcell* principle weighs strongly against federal interference with elections at this late date**

The Supreme Court "has repeatedly cautioned that 'lower federal courts should not alter the election rules' of a state 'on the eve of an election.'" *People Not Politicians v. Onder*, No. 26A388, 609 U.S. ___, 2026 WL 2883222 (U.S. Sept. 25, 2026) (per curiam) (internal quotations omitted). Yet that is precisely what DOJ asks this Court to do. State laws define the circumstances in which ballots may be set aside or rejected and when they must be processed. *See* Wash. Rev. Code §§ 29A.40.110, 29A.60.040-.050; *see also, e.g.*, N.J. Stat. Ann. § 19:63-17. DOJ's suggestion that it "is not seeking to enjoin 'election rules on the eve of an election'" either misunderstands election law or the relief that it seeks. Dkt. 22-2 at, 21 n.3. Ballots returned by registered voters that satisfy state-law verification requirements must be processed. Through this lawsuit, DOJ asks this Court to order California to refuse to process ballots where state law would otherwise require that they be processed. That quite clearly *is* seeking to enjoin state election rules, and, as in *People Not Politicians*, "[t]he election is not merely upcoming; it has already started." 2026 WL 2883222, at *2. Election officials are already processing ballots. Implementing DOJ's requested relief at this late date "would usher in electoral

chaos[,]" and "*Purcell* protects against such disorder." *Id.* As a result, "[t]he equities dictate that" this Court deny DOJ's motion. *Id.*

### B. This Lawsuit Creates a Chilling Effect and Presents State and Local Election Officials with an Untenable Choice

In evaluating the equities, this Court should consider the impact of this lawsuit and any coercive judicial order on state and local election officials across the nation. Ordering the relief sought in this case will have significant impacts beyond California. State election officials are currently engaged in the "extraordinarily complicated and difficult" task of "[r]unning elections state-wide[.]" *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring). If DOJ is successful here, election officials across the nation will have to prepare for the possibility that it will make similar demands in their States on the eve of the election or as the election is unfolding. This will require planning and preparation, diverting from the essential business of election administration.

This chilling effect is amplified by other recent federal efforts to interfere in state-run elections, such as the FBI raid of election offices in Fulton County, Georgia, sending FBI agents to election workers' homes, and demands for personal information about election workers in multiple states.[3] As a result of these actions, other States have had to take actions to prepare for attempts by the federal

---

[3] Maya Homan and Ross Williams, *FBI raids Fulton County elections warehouse seeking 2020 ballots*, Georgia Recorder, (Jan. 28, 2026), https://georgiarecorder.com/2026/01/28/fbi-raids-fulton-county-elections-warehouse-seeking-2020-ballots/; Mary Spicuzza and Molly Beck, *FBI has sought at least 2 more Milwaukee election staffers*, Wisconsin State Journal (May 16, 2026), https://madison.com/news/state-regional/government-politics/elections/article_e80e47b3-61e7-583f-b5e8-8eaaa16251cc.html; *Judge rejects Justice Department's 'unreasonable' attempt to get names of 2020 election workers in Fulton County*, PBS News, (July 7, 2026), https://www.pbs.org/newshour/politics/judge-rejects-justice-departments-unreasonable-attempt-to-get-names-of-2020-election-workers-in-fulton-county.

government to interfere with their ability to hold free and fair elections. *E.g.*, Nick Brown, *I'm the attorney general of Washington state. Here's how we're protecting the midterm elections*, The Guardian (Oct. 8, 2026), https://www.theguardian.com/commentisfree/2026/oct/08/washington-state-midterm-elections.

The impacts beyond California further counsel against granting the Department's eleventh-hour request for equitable relief.

**C. This Lawsuit Appears to be a Political Action and the Balance of Equities and Public Interest Weigh Strongly Against Equitable Relief**

**1. This lawsuit is part of a politically motivated campaign of threats and intimidation toward election officials**

This lawsuit is part of a broader federal effort to interfere with the manner in which States administer federal elections. There is a straight line from the President's statements—expressly made for partisan political gain—to the filing of this lawsuit. It strongly appears that the purpose of this and related actions are designed to maximize uncertainty and fear in the electorate and among election officials after voting in the general election has already begun. The balance of equities and public interest weigh heavily against this unprecedented effort to interfere with an ongoing election.

The President has repeatedly made false public statements asserting, without evidence, that large numbers of noncitizens have participated in federal elections.[4]

[4] *See, e.g.*, Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 18, 2026, at 13:38 PT), https://truthsocial.com/@realDonaldTrump/117118475271319244; President Donald J. Trump, *Address to the Nation on Election Reforms* (July 16, 2026), https://www.govinfo.gov/content/pkg/DCPD-202600469/pdf/DCPD-202600469.pdf (transcript available in the Miller Center). He has also repeatedly attacked vote-by-mail election systems that many States have selected as part of the manner of administering elections. *See, e.g.*, Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 18, 2025, at 4:17 PT), https://truthsocial.com/@realDonaldTrump/posts/115049485680941254 ("I am going to lead a movement to get rid of MAIL-IN BALLOTS[.]"); PBS NewsHour,

The President has expressly advocated for imposing additional burdens on registering to vote and casting a ballot and for criminal prosecutions of election officials.[5] And the President has directly linked his advocacy of measures imposing additional burdens on registering to vote or cast a ballot to his partisan political preference for Republicans to win elections, stating, in one post, "END MAIL-IN VOTING, AND GO TO PAPER BALLOTS. 100 additional seats will go to Republicans!!!" Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 20, 2025, at 20:53 PT), https://truthsocial.com/@realDonaldTrump/posts/115064726295507295.[6]

The President has similarly advocated "nationaliz[ing] the voting" for partisan political gain: "The Republicans should say, 'We want to take over. We

---

*WATCH: Trump speaks after winning 2024 Iowa caucuses*, at 7:08, YouTube, https://www.youtube.com/watch?v=VGv9xPpe6vI&t=407s; Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 21, 2023, at 16:22 PT), https://truthsocial.com/@realDonaldTrump/posts/111631682934429644 (asserting, without evidence, that "20% of Mail-in Ballots were Rigged of Defective [*sic*] in the 2020 Election").

[5] *See, e.g.*, Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 30, 2025, at 18:49 PT), https://truthsocial.com/@realDonaldTrump/posts/115120863399877029 ("Voter I.D. Must Be Part of Every Single Vote. NO EXCEPTIONS!"); Tim Reid & Nathan Layne, *US Election Officials Decry Trump's Threat to Jail Them if He Returns to White House*, Reuters (Sept. 9, 2024), https://www.reuters.com/world/us/us-election-officials-decry-trumps-threat-jail-them-if-he-returns-white-house-2024-09-09/; Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 7, 2024, at 16:01 PT), https://truthsocial.com/@realDonaldTrump/posts/113098755955857290 (threatening "long term prison sentences" for "Lawyers, Political Operatives, Donors, Illegal Voters, & Corrupt Election Officials" he claims without evidence engaged in "Cheating and Skullduggery . . . in the 2020 Presidential Election.").

[6] *See also, e.g.*, Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 25, 2026, at 9:03 PT), https://truthsocial.com/@realDonaldTrump/posts/116466187198141340 ("Not passing the SAVE AMERICA ACT will lead to the the [*sic*] worst results for a political party in the HISTORY of the Unitd States Senate."); President Donald J. Trump, *Donald Trump Addresses the Republican Members Issues Conference in Florida* (Mar. 9, 2026) https://trump-archive.com/item/85a5a76a-97a1-4194-80f9-0666edd7a151 (transcript available in Factbase) ("I don't think you can politically exist if you're not going to do voter ID and these things.").

should take over the voting in at least 15 places.' The Republicans ought to nationalize the voting." Jacob Wendler, *Trump says Republicans should 'nationalize' the elections*, Politico (Feb. 2, 2026), https://www.politico.com/news/2026/02/02/trump-nationalize-elections-2026-midterms-00760015. The President followed that with the demonstrably false assertion that "the States are merely an 'agent' for the Federal Government in counting and tabulating the votes" and "must do what the Federal Government, as represented by the President of the United States, tells them[.]" Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 18, 2025, at 4:17 PT), https://truthsocial.com/@realDonaldTrump/posts/115049485680941254.

Despite intense lobbying by the President to pass the "SAVE America Act,"[7] Congress declined to adopt the President's preferred policy changes.[8]

Failing to accomplish his political objectives through the legislative process, in March 2026, the President issued an executive order entitled "Ensuring Citizenship Verification and Integrity in Federal Elections." Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026). Among other directives, the executive order instructed the Attorney General to prioritize investigating and, where

---

[7] *See, e.g.*, Donald J. Trump (@realDonaldTrump), Truth Social (June 24, 2026, at 7:26 PT), https://truthsocial.com/@realDonaldTrump/posts/116805545512296111 (canceling bill signing until Congress passes "the desperately needed SAVE AMERICA ACT, which I consider to be a National Emergency"); Donald J. Trump (@realDonaldTrump), Truth Social (Mar. 20, 2026, at 6:27 PT), https://truthsocial.com/@realDonaldTrump/posts/116261732231179804 ("THE SAVE AMERICA ACT MUST BE PASSED BY THE SENATE. THERE IS NOTHING THAT IS MORE IMPORTANT FOR THE U.S.A."); Raquel Coronell Uribe, *Trump Says He Won't Sign Any Bills Until SAVE America Act Passes*, NBC News (Mar. 8, 2026), https://www.nbcnews.com/politics/donald-trump/trump-says-will-not-sign-bills-america-act-passes-rcna262336.

[8] *See Safeguard American Voter Eligibility Act*, H.R. 7296, 119th Cong., 2nd Sess. (2026); U.S. Senate, Roll Call Vote No. 231, 119th Cong., 2d Sess. (Aug. 8, 2026); Michael Gold, *Senate Bows to Reality, Leaving Trump's Voting Bill Undone*, N.Y. Times (Aug. 8, 2026), https://www.nytimes.com/2026/08/08/us/politics/trump-save-america-act-republican-voting-billsenate.html.

appropriate, prosecuting state and local election officials who issue federal ballots to ineligible voters. *Id.* § 2(b). Twenty-three states and the District of Columbia, challenged the executive order, arguing that it unlawfully intruded upon state election administration. *See California v. Trump*, 835 F. Supp. 3d 288, 295 (D. Mass. 2026). The District of Massachusetts agreed, enjoining implementation of the executive order's provisions for the 2026 federal elections. *Id.* at 315. The court specifically noted that "to the extent the [executive order] attempts to intimidate local election officials to use the necessarily incomplete Confirmed Citizenship Lists as a resource, lest they face criminal prosecution, such efforts fall outside the President['s] Article II and otherwise-delegated authority." *Id.* at 312. (The Supreme Court, on jurisdictional grounds, later stayed the injunction pending appeal, but did not address the district's reasoning on the merits. *See Trump v. California*, No. 26A124, 609 U.S. ___, 2026 WL 2473573, at *3 (Aug. 24, 2026).)

Pursuing the President's directive, DOJ has made unprecedented threats of criminal prosecutions of state and local election officials. In July 2026, Assistant Attorney General Harmeet Dhillon sent a letter to chief election officials in multiple states purporting to address "Federal Law Requirements for State and Local Election Officials." Letter from Harmeet Dhillon, Assistant Attorney General, to the Hon. Jocelyn Benson, Michigan Secretary of State (July 7, 2026), https://www.documentcloud.org/documents/28425163-20260707-doj-letter-and-memo-voter-eligibility/. In reality, that letter threatened state and local election officials with criminal prosecution. In the first two pages alone, the letter referenced potential criminal prosecution no less than six times, stating, for example, "state election officers, including the chief election officer of the state, could be criminally prosecuted for aiding and abetting" laws prohibiting voting by noncitizens. *Id.* at 1-2. Those threats were echoed by the Secretary of the

Department of Homeland Security. Rebecca Shabad, *Homeland Security Secretary Markwayne Mullin threatens states over elections*, NBC News (July 17, 2026), https://www.nbcnews.com/politics/elections/homeland-security-secretary-markwayne-mullin-threatens-states-election-rcna588002 ("Homeland Security Secretary Markwayne Mullin on Friday threatened state election officials with possible prison time . . . ."). In a September 2026 letter to States, demanding preservation of election records, the Acting Chief of DOJ Civil Rights Division's Voting Section again threatened that failure to comply with DOJ's demands "may subject you to civil and criminal sanctions." Letter from Eric Neff, Acting Chief of DOJ, to the Hon. Michael Adams, Kentucky Secretary of State (Sept. 4, 2026) https://www.documentcloud.org/documents/28656481-doj-letter-to-michael-adams/.

Even more striking, on October 17, 2026, Acting Deputy Attorney General Trent McCotter sharply escalated DOJ's campaign of threats and intimidation toward state and local election officials. In a letter to counsel for a Los Angeles county election official, this high-ranking DOJ official asserted that "knowingly tabulat[ing]" ballots from persons that "federal agencies" have "identified . . . as noncitizens" could make election officials "aiders and abettors to a federal crime." Letter from Trent McCotter, Deputy Attorney General, to Peter Bollinger, Assistant County Counsel, Los Angeles (Oct. 16, 2026), https://s3.documentcloud.org/documents/28819438/doj-california-voter-roll-response.pdf. This followed the Deputy Attorney General's admonishment that a person who aids or abets a crime "is equally liable" for criminal violations. *Id.* at 1. Ignoring the fact that DOJ had not purported to identify noncitizens—only "potential" noncitizens—and that registered voters are required by law to attest to United States citizenship under penalty of perjury, the letter unmistakably

threatens state and local election officials for following federal and state election laws. Putting a blunt point on it, in response to Deputy McCotter's letter, President Trump posted on social media that "They will all go to jail for a long period of time!!!" Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 16, 2026, at 17:28 PT) https://truthsocial.com/@realDonaldTrump/posts/117453415283228242.

These DOJ efforts to implement the President's political objectives through coercive threats to public servants led directly to this lawsuit. Failing to identify any provision of the NVRA or HAVA—the bedrock federal voter registration list maintenance laws—requiring the actions DOJ seeks to compel, DOJ advances a novel legal theory to demand dramatic changes to state election laws. Worse, it does so at a time when the election is already underway, and it trumpets its claims through press releases and social media, implying that California is engaged in "State-facilitated voter fraud."[9] DOJ makes these statements despite failing to identify even a single federal voter registration list maintenance law that California has violated.

**2. DOJ has made other unreasonable demands**

In addition to threats of criminal prosecution of state and local officials, DOJ has also taken other steps to attempt to control state election procedures.

[9] *Justice Department Sues State of California over Voter List*, Department of Justice, https://www.justice.gov/opa/pr/justice-department-sues-state-california-over-voter-list (Oct. 15. 2026); U.S. Dep't of Justice (@TheJusticeDept), X (Oct. 15, 2026, at 12:01 PT) https://x.com/TheJusticeDept/status/2110808345753911645; Attorney General Todd Blanche (@AGToddBlanche), X (Oct. 15, 2026, at 12:40 PT) https://x.com/AGTodd Blanche/status/2110818055223755170; Acting Deputy Attorney General Trent McCotter (@PADAGMcCotter), X (Oct. 15, 2026, at 12:53 PT) https://x.com/PADAGMcCotter/status /2110821310666625509.

In 2025, DOJ sent letters to States demanding state voter registration lists containing confidential information about voters, including their drivers' license numbers and parts of their social security numbers. *Federal Requests for Voter Lists*, National Conference of State Legislatures (Oct. 8, 2026), https://www.ncsl.org/elections-and-campaigns/federal-requests-for-statewide-voter-lists. Many States requested additional information and offered to provide copies of voter registration lists excluding confidential information. *See, e.g.*, Letter from Steve Hobbs, Washington Secretary of State, to Harmeet Dhillon, Assistant Attorney General (Sept. 23, 2026), https://www.sos.wa.gov/sites/default/files/2025-09/9.23.2025%20Secretary%20Hobbs%20DOJ%20Response.pdf. But, rather than working cooperatively with States, DOJ sued 30 States. *Federal Requests for Voter Lists*, National Conference of State Legislatures (Oct. 8, 2026), https://www.ncsl.org/elections-and-campaigns/federal-requests-for-statewide-voter-lists. DOJ is currently 0 for 26 in its lawsuits, with courts across the country concluding that it does not have authority to demand the confidential information. *Id.*

It has also become apparent that DOJ has gathered and used information about voters in ways that are unlawful. A recent decision from the United States District Court for District of Columbia concluded that the Department's "Voter List Maintenance Policy" (i.e., obtaining state voter rolls, disclosing them to other federal agencies, comparing them to federal databases, and demanding that State remove names based on the comparisons) is unlawful and enjoined the policy. *Common Cause v. U.S. Dep't of Just.*, No. CV 26-1352 (SLS), __ F. Supp. 3d __, 2026 WL 3033772, at *1, 4 (D.D.C. Oct. 9, 2026).

**3. This action is in sharp tension with longstanding DOJ policies created to avoid interfering with elections**

Until recently, DOJ had a longstanding practice of "avoid[ing] overt law enforcement and prosecutorial activities close to an election, typically within 60 or 90 days of Election Day." Office of the Inspector General, U.S. Department of Justice, *A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election* 16 (June 2018), https://oig.justice.gov/sites/default/files/reports/18-04.pdf. The purpose of this practice was expressly to "safeguard[] the Department's reputation for fairness, neutrality, and nonpartisanship." Attorney General Merrick Garland, *Memorandum to All Employees* (June 24, 2024), https://www.justice.gov/archives/jmd/media/1359366/dl. With apparent disregard for those values of fairness, neutrality, and nonpartisanship, DOJ filed this action—advancing the partisan goals of the President—less than 20 days before the election. This underscores that the current action is decidedly contrary to the public interest.

**4. DOJ's timing is also unjustifiable in other ways**

In addition to the closeness in time to the election, DOJ unjustifiably delayed in bringing this action and, once brought, slow-walked its claims in a manner inconsistent with its purported urgency.

The federal government has purportedly had suspicions about the citizenship of the registered voters on the list that it sent to California since July. *See* Secretary Markwayne Mullin, X (July 17, 2026, at 10:37 PT), https://x.com/SecMullinDHS/status/2078172229934760403 (stating that a preliminary review "found over 250,000 non-citizens registered to vote in four states[,]" including California). States have requested additional information verifying the federal

government's assertions. Letter from Al Schmidt, Pennsylvania Secretary of State, to Hon. Markwayne Mullin, Secretary of Homeland Security (July 29, 2026), https://www.documentcloud.org/documents/28524324-72926-pa-department-of-state-response-letter-to-dhs/; Letter from Francisco Aguilar, Nevada Secretary of State, to Markwayne Mullin, Secretary of Homeland Security (July 29, 2026), https://www.democracydocket.com/wp-content/uploads/2026/07/Nevada-response-to-DHS.pdf. Rather than provide verification of its assertions, the federal government provided little information and walked back many of its claims. *See, e.g.*, Nick Corasaniti, *Trump's Claims of Illegal Voting in Nevada Fizzle*, N.Y. Times (Sept. 24, 2026), https://www.nytimes.com/2026/09/24/us/politics/nevada-voters-homeland-security-trump.html (reflecting that, following initial assertion of 16,000 noncitizens registered to vote, DOJ provided lists of only 185 and that Nevada was able to confirm zero instances). If the federal government had evidence, the time to provide it was months ago when States asked for the information; waiting until after voting has already begun to make demands based on mere beliefs (still without evidence) and immediately filing a lawsuit is not reflective of a good faith effort.

* * *

In light of the complete lack of legal support, the filing of this lawsuit close in time to the election, the direct line from the President's partisan political objectives and this lawsuit, DOJ's other baseless threats against state and local election officials, and DOJ's public relations blitz, the strong inference is that this lawsuit was filed for political ends. It clearly was not filed to enforce any statutory voter list maintenance duty; DOJ fails to cite a single such statute that California even allegedly violated. *See generally* Dkt. 1; Dkt. 22-2.

## III. CONCLUSION

Amici States strongly urge this Court to deny the motion for a temporary restraining order or preliminary injunction. DOJ's legal theory would do violence to the constitutional separation of powers, has all the hallmarks of being pursued for an improper purpose, would have profound and negative effects on election administration across the country, and seriously risks disenfranchising voters. DOJ's unverified beliefs about noncitizen voting do not justify disruption of the ongoing election and the intolerable risk of disenfranchising voters.

RESPECTFULLY SUBMITTED this 21st day of October 2026.

NICHOLAS W. BROWN
*Attorney General*

*/S/ Alison Cordova*
ALISON CORDOVA (CAL BAR 284942)
*Assistant Attorney General*
TERA M. HEINTZ (CAL BAR 241414)
CRISTINA SEPE (CAL BAR 308023)
KARL D. SMITH (WSBA BAR 41988)
*Deputy Solicitors General*
1125 Washington Street SE
Olympia, WA 98504-0100
360-753-6200
Alison.Cordova@atg.wa.gov

Attorneys for State of Washington

KRIS K. MAYES
Attorney General of Arizona
2005 N. Central Avenue
Phoenix, AZ 85004

PHILIP J. WEISER
Attorney General of Colorado
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
Attorney General of Delaware
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
Attorney General for the
District of Columbia
400 6th St. NW
Washington, DC 20001

ANNE E. LOPEZ
Attorney General of Hawai‘i
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
Attorney General of Illinois
115 South LaSalle Street
Chicago, IL 60603

AARON M. FREY
Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006

ANTHONY G. BROWN
Attorney General of Maryland
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
Attorney General of Massachusetts
One Ashburton Place
Boston, MA 02108

DANA NESSEL
Attorney General of Michigan
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
Attorney General of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr.
Blvd.
St. Paul, MN 55155

AARON D. FORD
Attorney General of Nevada
100 North Carson Street
Carson City, NV 89701

JENNIFER DAVENPORT
Attorney General of New Jersey
25 Market Street
Trenton, NJ 08625

RAÚL TORREZ
Attorney General of New Mexico
408 Galisteo Street
Santa Fe, NM 87501

LETITIA JAMES
Attorney General of New York
28 Liberty Street
New York, NY 10005

DAN RAYFIELD
Attorney General of Oregon
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
Attorney General of Rhode Island
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
Attorney General of Vermont
109 State Street
Montpelier, VT 05609

JAY JONES
Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219

JOSHUA L. KAUL
Attorney General of Wisconsin
17 West Main Street
Madison, WI 53703

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Amicus Curiae Attorney General of Washington State, certifies that this brief contains 5401 words, which:

☒ complies with the word limit of L.R. 11-6.1.

DATED this 21st day of October 2026.

*/S/ Alison Cordova*
ALISON CORDOVA, CAL BAR 284942
*Assistant Attorney General*