ROB BONTA
Attorney General of California
MICHAEL L. NEWMAN
THOMAS S. PATTERSON
Senior Assistant Attorneys General
SETH E. GOLDSTEIN
Supervising Deputy Attorney General
ANNE P. BELLOWS (SBN 293722)
MICHAEL S. COHEN (SBN 339846)
LISA C. EHRLICH (SBN 270842)
ANDREW E. KUSHNER (SBN 316035)
CHRISTINA M. MCCALL (SBN 234139)
Deputy Attorneys General
1300 I Street, P.O. Box 944255
Sacramento, CA 95814
Telephone: (916) 210-6090
Fax: (916) 324-8835
E-mail: Michael.Cohen@doj.ca.gov
*Attorneys for Defendants State of California and California Secretary of State Shirley N. Weber, in her official capacity*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>**v.**<br><br>**STATE OF CALIFORNIA, SHIRLEY N. WEBER, in her official capacity as the California Secretary of State, and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk,**<br><br>Defendants. | Case No. 2:26-cv-12025-DOC-ADS<br><br>**STATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: Not Set<br>Time: Not Set<br>Courtroom: Courtroom 10A<br>Judge: Hon. David O. Carter<br>Trial Date: Not Set<br>Action Filed: October 15, 2026 |

# TABLE OF CONTENTS

**Page**


Introduction ........ 1
Background ........ 1
I. Legal Background ........ 1
II. Factual Background and Allegations ........ 5
Legal Standard ........ 6
Argument ........ 7
I. Plaintiff Lacks Standing ........ 7
II. Plaintiff's Claim Fails on the Merits ........ 10
A. Plaintiff Fails to Show That Any Aspect of California's Election Administration Unlawfully Impedes Federal Law Enforcement ........ 11
B. Defendants Cannot Have Violated the Law by Refusing Plaintiff's Unlawful Demands ........ 18
C. 18 U.S.C. § 611 Does Not Authorize the Relief Plaintiff Seeks ........ 24
Conclusion ........ 24

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alexander v. Sandoval*
532 U.S. 275 (2001) ........................................ 10

*Anderson v. Celebrezze*
460 U.S. 780 (1983) ........................................ 21

*Arcia v. Fla. Sec'y of State*
772 F.3d 1335 (11th Cir. 2014) ........................................ 19

*Ariz. Democratic Party v. Hobbs*
18 F.4th 1179 (9th Cir. 2021) ........................................ 21

*Arizona v. Inter Tribal Council of Ariz., Inc.*
570 U.S. 1 (2013) ........................................ *passim*

*Arizona v. United States*
567 U.S. 387 (2012) ........................................ 13

*Armstrong v. Exceptional Child Center, Inc.*
575 U.S. 320 (2015) ........................................ 10

*Beck v. Prupis*
529 U.S. 494 (2000) ........................................ 24

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................ 6

*Burdick v. Takushi*
504 U.S. 428 (1992) ........................................ 21

*Cal. Democratic Party v. Jones*
530 U.S. 567 (2000) ........................................ 22

*California v. U.S. Bureau of Alcohol Tobacco Firearms & Explosives*
188 F.4th 1160 (9th Cir. 2026) ........................................ 10

*Chamber of Commerce of U.S. v. Whiting*
563 U.S. 582 (2011) ........................................ 15, 17

## TABLE OF AUTHORITIES
## (continued)


**Page**

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013) ........................................ 9

*ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Comm'n*
177 F.4th 964 (9th Cir. 2026) ........................................ 13

*Crawford v. Marion Cnty. Elec. Bd.*
553 U.S. 181 (2008) ........................................ 21

*DaimlerChrysler Corp. v. Cuno*
547 U.S. 332 (2006) ........................................ 6

*Election Integrity Project Cal., Inc. v. Weber*
113 F.4th 1072 (9th Cir. 2024) ........................................ 15, 17

*FDA v. Alliance For Hippocratic Med.*
602 U.S. 367 (2024) ........................................ 9

*Georgia v. Meadows*
88 F.4th 1331 (11th Cir. 2023) ........................................ 13

*Gonzalez v. Arizona*
677 F.3d 383 (9th Cir. 2012) ........................................ 12

*Hedges v. Dixon County*
150 U.S. 182 (1893) ........................................ 18

*I.N.S. v. Pangilinan*
486 U.S. 875 (1988) ........................................ 18

*MetroPCS California, LLC v. Picker*
970 F.3d 1106 (9th Cir. 2020) ........................................ 17

*Mi Familia Vota v. Fontes*
129 F.4th 691 (9th Cir. 2025) ........................................ 19, 20

*Mont. Medical Ass'n v. Knudsen*
119 F.4th 618 (9th Cir. 2024) ........................................ 14, 15

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Moore v. Harper*
(2023) 600 U.S. 1 .......... 12

*Murphy v. Nat'l Collegiate Athletic Ass'n*
584 U.S. 453 (2018) .......... 11, 15, 16

*Nader v. Brewer*
531 F.3d 1028 (9th Cir. 2008) .......... 21, 22

*New York v. United States*
505 U.S. 144 (1992) .......... 11, 14

*Norwood v. Harrison*
413 U.S. 455 (1973) .......... 11, 12, 16

*Pinkert v. Schwab Charitable Fund*
48 F.4th 1051 (9th Cir. 2022) .......... 7, 9

*Printz v. United States*
521 U.S. 898 (1997) .......... 15

*Pub. Int. Legal. Found., Inc. v. Nago*
174 F.4th 664 (9th Cir. 2026) .......... 4

*Reynolds v. Sims*
377 U.S. 553 (1964) .......... 20, 22

*Ex parte Siebold*
100 U.S. 371 (1879) .......... 12

*Silvers v. Sony Pictures Ent., Inc.*
402 F.3d 881 (9th Cir. 2005) (en banc) .......... 24

*Skilstaf, Inc. v. CVS Caremark Corp.*
669 F.3d 1005 (9th Cir. 2012) .......... 8, 22

*Smiley v. Holm*
285 U.S. 355 (1932) .......... 2

*Trump v. CASA, Inc.*
606 U.S. 831 (2025) .......... 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*United States v. California*
2026 WL 2970902, (C.D. Cal. Oct. 2, 2026) ........ 7, 8, 14

*United States v. California*
824 F. Supp. 3d at 1085 ........ 7, 9

*United States v. California*
921 F.3d 865 (9th Cir. 2019) ........ 14, 15, 16

*United States v. Chelsea Cox*
__ F. Supp. 3d. __ (S.D. Fla. Oct. 1, 2026) ........ 11

*United States v. Comstock*
560 U.S. 126 (2010) ........ 17

*United States v. Post*
297 F. Supp. 46 (W.D. La. 1969) ........ 3, 23

*United States v. Ritchie*
342 F.3d 903 (9th Cir. 2003) ........ 7

*Voting Rights Coal. v. Wilson*
60 F.3d 1411 (9th Cir. 1995) ........ 15

*Watson v. Republican Nat'l Comm.*
609 U.S. 672 (2026) ........ 13

*Wright v. Serv. Emps. Int'l Union Loc. 503*
48 F.4th 1112 (9th Cir. 2022) ........ 7

**STATUTES**

18 U.S.C.
§ 611 ........ *passim*

28 U.S.C.
§ 1292(b) ........ 8

## TABLE OF AUTHORITIES
## (continued)

Page

52 U.S.C.
§ 10307 ........ 23
§ 10307(a) ........ 3, 23
§§ 10308(a)-(d) ........ 24
§ 10502 ........ 17
§ 20301 ........ 17
§ 20302 ........ 17
§ 20503(a) ........ 3
§ 20505(a)(1) ........ 4
§ 20506(a)(6)(A) ........ 4
§ 20507(a)(3) ........ 4
§ 20507(a)(4) ........ 4, 16
§ 20507(a)(5) ........ 4
§ 20507(c)(2) ........ 19, 20
§ 20507(c)(2)(A) ........ 4
§ 20507(d)(1) ........ 4
§ 20508(b)(2) ........ 4, 16
§ 20510(a) ........ 24
§ 20511 ........ 24
§ 21083 ........ 4
§ 21083(b)(4) ........ 16

Cal. Code Regs. tit. 2
§ 20282 ........ 3
§ 20363 ........ 3
§ 20879 ........ 24
§ 20960 ........ 2

## TABLE OF AUTHORITIES
## (continued)


**Page**

Cal. Elec. Code

§ 10 ........ 1
§ 2000(a) ........ 2
§ 2100 ........ 2
§ 2101 ........ 2, 4, 16
§ 2102(c) ........ 2, 4, 16
§ 2111 ........ 2, 4, 16
§ 2150(a)(1) ........ 2, 4, 16
§ 2155 ........ 4, 16
§ 2155.3 ........ 4, 16
§ 2200 ........ 16
§ 2201 ........ 4
§ 2201(a)(8) ........ 2
§ 2201(c) ........ 2
§ 2213 ........ 2
§ 2220 ........ 4
§§ 2221-2227 ........ 4
§ 2262(a) ........ 4
§ 2264(a)(3) ........ 2, 16
§ 2264(b) ........ 2, 16
§ 2300(a)(1)(A) ........ 2
§ 3000.5 ........ 2, 17
§ 3003 ........ 2, 17
§ 3010 ........ 2, 17
§ 3010(a)(2) ........ 2
§ 3011(a)(1) ........ 2
§ 3011(a)(2) ........ 2
§ 3019 ........ 2, 3, 15, 23
§ 3019(a)(1) ........ 23
§ 3019(b) ........ 3, 23
§ 3019(c) ........ 3
§ 3019(d)(4) ........ 3
§ 3019(e)(1) ........ 3
§ 3102 ........ 2, 17
§ 14240 ........ 2, 23
§ 15101 ........ 3, 15, 23
§ 15102 ........ 3
§ 15105 ........ 2, 3, 23

## TABLE OF AUTHORITIES
## (continued)

**Page**

§ 15106 ........ 2, 23
§ 15108 ........ 3
§ 15109 ........ 3, 15, 23
§ 18100 ........ 2
§ 18500 ........ 2
§ 18543 ........ 2
§ 18560 ........ 2
§ 18561 ........ 2

Cal. Gov. Code
§ 12172.5(a) ........ 1

**CONSTITUTIONAL PROVISIONS**

Cal. Const. art. 2
§ 2 ........ 2
§ 2(a) ........ 2
§ 2.5 ........ 2, 15, 23
§ 7 ........ 23

U.S. Const. amend. XVII ........ 2

U.S. Const. art. I, § 2, cl. 1 ........ 2

U.S. Const. art. I, § 4, cl. 1 ........ 1

U.S. Const. art. II, § 1, cl. 2 ........ 1

**COURT RULES**

Fed. R. Civ. P.
rule 12(b)(1) ........ 6
rule 12(b)(6) ........ 6

**OTHER AUTHORITIES**

Vol. 11A Fed. Prac. & Proc. Civ.
§ 2942 & n. 73 (3d ed.) ........ 24

## INTRODUCTION

The Constitution commits the power to regulate elections exclusively to the States and Congress. Both California and Congress have exercised that authority to develop rules for election administration, and California elections are administered in accordance with those rules. Now, in the middle of an election, the federal Executive Branch demands that California officials cast those indisputably lawful rules aside. Specifically, Plaintiff demands that Defendants refrain from counting the votes of individuals on a list of over 20,000 allegedly registered voters compiled by the federal government, and who Plaintiff "believes" to be "likely noncitizens." Plaintiff purports to locate authority for this dramatic assertion of Executive power in a federal misdemeanor prohibition on individual noncitizen voting. This tortured legal theory offends the letter and spirit of the Constitution.

Plaintiff's lawsuit asks the Court to credit a few remarkable propositions: that the federal government has standing any time it believes that state law does not adequately prevent a federal crime; that the government can override state law whenever it imagines that state policies might allow a third party to break the law, and even compel States to cooperate in law enforcement efforts; and that relief sought pursuant to this dubious theory need not bother with constitutional or statutory limitations. Each one of these arguments fail, foreclosing Plaintiff's claim at the threshold and on the merits. The Court should grant State Defendants' motion to dismiss.

## BACKGROUND

### I. Legal Background

California Secretary of State Dr. Shirley N. Weber is the State's Chief Officer of Elections. *See* Cal. Gov't Code § 12172.5(a); Cal. Elec. Code § 10. California's 58 counties are primarily responsible for administering elections in the State.

States hold primary responsibility for federal elections under the United States Constitution, including their "Times, Places and Manner," subject to laws enacted

by Congress. U.S. Const. art. I, § 4, cl. 1; *see also id.* art. II, § 1, cl. 2. Unless Congress provides otherwise, States therefore have the authority "to provide a complete code for [federal] elections." *Smiley v. Holm*, 285 U.S. 355, 366 (1932); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8–9 (2013) ("*ITCA*"). States also have sole authority to set voter qualifications, or "*who* may vote." *ITCA*, 570 U.S. at 16; *see also* U.S. Const. art. I, § 2, cl. 1; *id.* amend. XVII.

United States citizenship is one of several requirements to vote in California elections, and the State enforces this obligation in several ways. *See* Cal. Const. art. 2, § 2(a); Cal. Elec. Code §§ 2100, 2101. California requires all voter registration applicants to attest to citizenship under oath, under penalty of perjury and by signature. Cal. Elec. Code §§ 2101, 2102(c), 2111, 2150(a)(1), 2264(a)(3), (b). Elections officials must cancel the registration of any voter "[u]pon *proof* that the person is . . . ineligible to vote," subject to procedural safeguards. Cal. Elec. Code §§ 2201(a)(8), (c), 2213 (emphasis added). State law permits challenges to mail ballots related to "the voter's qualifications to vote," including citizenship. *Id.* §§ 14240, 15105, 15106. Finally, state law also penalizes numerous related offenses, including fraud in voter registration and voting, *id.* §§ 18100, 18500, 18560, and assisting ineligible voters to vote, *id.* § 18561. *See also id.* § 18543 (criminalizing fraudulent or spurious mass voter challenges for improper purposes).

For those who are eligible to vote, California's Constitution guarantees a right to vote and "have that vote counted." Cal. Const. art. 2, §§ 2, 2.5. State law further affirms that Californians "have the right to cast a ballot if [they] are a valid registered voter." Cal. Elec. Code, § 2300(a)(1)(A); *see also id.* § 2000(a).

California sends each active registered voter a mail ballot. Cal. Elec. Code §§ 3000.5, 3003, 3010; *see also id.* § 3102. After voting their ballot, a voter places it in an envelope that is signed under penalty of perjury to establish the validity of the vote. *Id.* §§ 3010(a)(2), 3011(a)(1)–(2). Once elections officials receive a mail ballot, they compare the signature on the ballot envelope to the signature on file for

the voter, in accordance with uniform regulations. *Id.* § 3019; Cal. Code Regs., tit. 2, § 20960. When the signatures compare and the ballot is otherwise valid (e.g., the voter has not already cast a ballot), the ballot is tabulated. *Id.* §§ 3019(b), 15101, 15109; Cal. Code Regs. tit. 2, § 20282. And if they do not compare (and the voter does not correct any signature deficiencies during the correction period), the ballot must be rejected. Cal. Elec. Code § 3019(c), (d)(4), (e)(1).

Each county establishes "special counting boards" to process and tabulate mail ballots as they are returned. Cal. Elec. Code §§ 15101, 15102. Special counting boards also adjudicate challenges to mail ballots in the same manner as other local officials on Election Day. *Id*. §§ 15105, 15108. Absent a successful challenge, all returned mail ballots that bear a valid signature must be counted. *Id*. §§ 3019, 15101, 15109; Cal. Code Regs. tit. 2, §§ 20282, 20363.

Congress exercised its Elections Clause authority to establish limited baseline requirements for federal elections, with which California law conforms. These requirements touch on the ability to cast a ballot, voter registration, voter roll maintenance, and certain mail voting procedures.

Congress enacted the Voting Rights Act of 1965 to safeguard the right to vote. In Section 11(a) of the Act, Congress provided that "[n]o person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote under [the Act] or is otherwise qualified to vote, or willfully fail or refuse to tabulate, count, and report such person's vote." 52 U.S.C. § 10307(a). This provision prohibits public officials from denying any qualified person the right to vote. *United States v. Post*, 297 F. Supp. 46, 50 (W.D. La. 1969).

Congress enacted the National Voter Registration Act ("NVRA") in 1993 to reduce barriers to voter registration, protect the integrity of federal elections, and improve the accuracy of voter registration rolls. The NVRA expressly recognizes "method[s] of voter registration provided for under State law," and builds atop that foundation by requiring certain additional methods to be made available to those

seeking "to register to vote in elections for Federal office." 52 U.S.C. § 20503(a). Under the NVRA, States must inform applicants of the applicable voter eligibility requirements and penalties associated with submitting false information on an application. *Id.* § 20507(a)(5). The NVRA also requires States to accept and use particular forms for voter registration. *See id.* §§ 20505(a)(1), 20506(a)(6)(A). That form must include an attestation of the applicant, under penalty of perjury, that they meet every eligibility requirement to vote, including U.S. citizenship. *Id.* § 20508(b)(2). California implements that procedure. Cal. Elec. Code §§ 2101, 2102(c), 2111, 2150(a)(1), 2262(a).

The NVRA provides a framework for the removal of voters from voter rolls, ensuring that the process is fair and protects eligible voters. That framework addresses removals at the voter's request, or due to death, change of residence, or the voter becoming ineligible under state law "by reason of criminal conviction or mental incapacity." 52 U.S.C. §§ 20507(a)(3)–(4), (d)(1). The NVRA requires States to complete systematic removals from the official list of eligible voters no later than 90 days before a federal primary or general election. *Id.* § 20507(c)(2)(A). This window of time is known as the "quiet period." Overall, the NVRA requires only that States "'conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of' a death or change in residence of the registrant." *Pub. Int. Legal. Found., Inc. v. Nago*, 174 F.4th 664, 667 (9th Cir. 2026), *cert. petition filed on other grounds* No. 26-98 (quoting 52 U.S.C. § 20507(a)(4)). California has enacted a comprehensive list maintenance program to implement the NVRA's requirements. *See, e.g.*, Cal. Elec. Code §§ 2155, 2155.3, 2201, 2220, 2221–2227.

Congress enacted the Help America Vote Act ("HAVA") in 2002 to help upgrade the States' voting infrastructure. Among other things, HAVA set standards for applicants to verify their identity upon registration. *See* 52 U.S.C. § 21083.

## II. Factual Background and Allegations

On July 16, 2026, Department of Homeland Security ("DHS") Secretary Markwayne Mullin sent a letter to Secretary Weber alleging that approximately 190,000 voters registered in California "may be" noncitizens, with almost no further detail. Exhibit ("Exh.") 1 to the Complaint ("Compl."). Secretary Weber responded expressing "serious doubts about the reliability of [DHS's] data and accuracy of [DHS's] claims," and asking for a detailed description of the methodology utilized to identify the allegedly ineligible voters. Compl. Exh. 2.

On the afternoon of October 13, the U.S. Department of Justice ("DOJ") sent a letter to Secretary Weber informing her that DOJ provided a thumb drive to the Los Angeles County Registrar-Recorder/County Clerk containing "a list of names the Federal Government believes are likely noncitizens who were sent a . . . ballot" for the 2026 General Election. Compl. Exh. 3. DOJ demanded that Secretary Weber "review the list within 48 hours to determine whether any citizens are listed." *Id.* If her office could not "independently confirm citizenship" for any listed individuals, the letter demanded that she instruct elections officials to (1) segregate and not process or tabulate that individual's mail ballot "until their citizenship status can be determined" and (2) take immediate steps to prevent sending mail ballots to any listed individuals who have not already received them "until [the federal government] can confirm citizenship." *Id.*

Plaintiff's Complaint does not allege that Plaintiff provided the list directly to State Defendants, the specific underlying methodology used to compile it, or proof of noncitizenship for any individuals on the list. Instead, the Complaint vaguely describes, for the first time, the "investigative process" by which DHS allegedly compares information about voter rolls with "internal data to identify potential matches between registered voters and possible noncitizens." Compl. ¶¶ 33–46. DHS allegedly utilizes unspecified "third-party software" to identify potential matches. *Id*. ¶ 35. It also allegedly uses a "customary analytical platform" to

somehow "shore up any data deficiencies." *Id*. ¶ 42. Using this unspecified process, DHS allegedly made a list of 20,000 registered voters in California that it "believes" are noncitizens. *Id*. ¶ 46. The Complaint alleges that "California declined to work with the Federal Government to determine whether those individuals are citizens who are legally entitled to vote in the federal election." *Id.* ¶ 47.

On October 15, Plaintiff filed this suit. Its Complaint alleges that Defendants "have made it nearly impossible for the United States to investigate and enforce federal law" by "sending ballots to likely noncitizens." Compl. ¶ 10. Its sole claim for relief asserts an alleged violation of the Supremacy Clause, based upon a criminal statute that penalizes noncitizen voting, 18 U.S.C § 611, which purportedly preempts California election administration. *Id*. ¶ 59. Plaintiff acknowledges that "it is not practicable or feasible for the United States to investigate before the 2026 election concludes thousands, let alone tens of thousands, of individuals" that it has put on a list of "likely noncitizens" who are registered to vote in California. *Id.* ¶¶ 58–60. Plaintiff requests a declaration that California's election administration is preempted and violates the Supremacy Clause. *Id.* ¶ 62. Plaintiff seeks extraordinary and unprecedented relief—that this Court permanently enjoin California from counting ballots from "individuals identified by the Federal Government as likely noncitizens until those individuals' citizenship status can be verified," *id.* ¶ 64, which Plaintiff concedes will be after the election, *id.* ¶¶ 58–60.

## LEGAL STANDARD

A complaint must be dismissed for lack of subject matter jurisdiction if a plaintiff lacks standing to sue. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of demonstrating standing "for each claim" and "each form of relief" that it seeks. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal citations and quotations omitted). A complaint must also "state a claim to relief that is plausible on its face," or otherwise face dismissal under Federal Rule of Civil

Procedure 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court may consider the complaint, documents attached to and incorporated by reference in it, and matters subject to judicial notice "without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ARGUMENT

### I. Plaintiff Lacks Standing

"To establish Article III standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Pinkert v. Schwab Charitable Fund*, 48 F.4th 1051, 1054 (9th Cir. 2022) (quotation omitted). At the pleading stage, a plaintiff must "allege facts that, when accepted as true, show that [these elements] are satisfied." *Id*. Moreover, when a plaintiff claims standing based on "the threat of future injury" it must allege sufficient facts to establish that "the threatened injury is certainly impending." *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1118 (9th Cir. 2022) (quotation omitted). Here, Plaintiff fails to establish injury in fact based either on past or threatened future injury.

First, Plaintiff asserts that it has standing "to vindicate its sovereign interests," including its interest in "enforcing federal law." Compl. ¶ 9; *see also* ¶¶ 55–56. In *United States v. California*, however, a Central District court recently rejected the theory that "the mere *existence* of a preempted state law creates a sovereign injury to the federal government." 824 F. Supp. 3d 1079, 1083 (C.D. Cal. 2026) (emphasis in original). Here, Plaintiff's claim to standing is even weaker because Plaintiff does not identify any state law that conflicts with 18 U.S.C. § 611. Plaintiff instead alleges that it is the State's "actions" that have caused sovereign injury. Compl. ¶ 61. And even if that were true, none of Plaintiff's cases demonstrate that an alleged Supremacy Clause violation alone establishes injury in fact. *See* Compl. ¶ 9;

*see also* ECF No. 31-1 at 8 (discussing Plaintiff's cases).

This case is unlike *United States v. California*, where the Court ultimately found standing based on inferences drawn from a complaint that California law "plausibly encroaches on" the federal government's "authority to enforce or administer" its egg products regulations. 2026 WL 2970902, at *3 (C.D. Cal. Oct. 2, 2026). The Court then certified its order for immediate interlocutory review under 28 U.S.C. § 1292(b), reasoning that the United States' "theory of constitutional standing in this matter is atypical or unprecedented." *Id*. at *4.

The same theory cannot apply here. That theory depended on an inference that California's law interfered with Congress's intent to have uniform regulation of eggs nationwide by imposing additional requirements. Here, Congress has no authority whatsoever over voter qualifications in the first place. *See ITCA*, 570 U.S. at 16. And contrary to Plaintiff's argument, California's alleged actions here do not diminish the effect of 18 U.S.C. § 611, impact Plaintiff's ability to bring prosecutions under that statute, or otherwise "impos[e] an obstacle on the United States' ability to enforce" the statute. Compl. ¶ 60. Indeed, four days after the Complaint was filed, the federal government announced that 28 alleged foreign nationals in California have been charged with federal crimes related to registering to vote and voting in federal elections.[1] ECF No. 31-4 at 47–51; *see also Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (court may consider matters that are properly the subject of judicial notice on a motion to dismiss). This development demonstrates that DOJ is not prevented from investigating and charging violations of 18 U.S.C. § 611.

The *United States v. California* court also recognized that its October 2026 order may have "overstretched inferences that reasonably can be extracted from"

[1] These 28 defendants, plus Darwin Rivera-Flores (ECF No. 31-4 Exhs. B, H, and I), represent approximately .0001 percent of the registered voters (~23 million) in California.

the operative complaint. 2026 WL 2970902 at *4. This Court should not "overstretch" here, where Plaintiff relies on an unprecedented theory of standing to seek outlandish relief that threatens thousands of Californians' right to vote.

Second, Plaintiff also asserts a "direct" injury in the form of "drain[ing] federal resources" in the enforcement of federal law. Compl. ¶ 10. But spending money to enforce a criminal prohibition does not itself provide standing to challenge state policies. Such a theory lacks a limiting principle; it would allow the United States to "abuse . . . the federal courts for political purposes" any time it has the authority to enforce federal law, allowing the Executive Branch to "initiate a campaign of preemption suits under the aegis of its sovereignty to bring state law in line with its own political agenda." *United States v. California*, 824 F. Supp. 3d at 1085. "Standing doctrine provides a valuable safeguard" by demanding more than this circular concept of injury. *Id.*; *see also, e.g.*, *FDA v. Alliance For Hippocratic Med.*, 602 U.S. 367, 370 (2024) (an entity "that has not suffered concrete injury caused by a defendant's action cannot spend its way into standing").

Finally, Plaintiff also lacks standing to seek injunctive relief based on its allegation of threatened future injury: that unlawful noncitizen voting will "dilute the votes of citizens and unduly influence who runs the Federal Government." Compl. ¶ 10. "'Allegations of *possible* future injury'" are not sufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original and citation omitted). *Clapper* provides that, at the motion to dismiss stage, "plaintiffs bear the burden of pleading . . . concrete facts showing that the defendant's actual action has caused the substantial risk of harm." *Id.* at 414 n.5; *see also Pinkert*, 48 F.4th at 1055 (affirming dismissal based on *Clapper* where complaint failed to "allege the details necessary to show" that plaintiff's "asserted injuries are certainly impending").

The claim that noncitizen voting could affect who runs the government depends on a "highly attenuated chain of possibilities," *Clapper*, 568 U.S. at 410:

that significant numbers of noncitizens are in fact registered to vote in California; that those voters will vote in the 2026 General Election; *and* that those votes will change the outcome of the election. Plaintiff alleges no "concrete facts" to connect this causal chain. Rather than alleging facts sufficient to show widespread noncitizen voter registrants in California, Plaintiff alleges only that "[f]ederal agencies *believe*" they have identified certain individuals who "are registered to vote in federal elections in California and are *likely* noncitizens." Compl. ¶ 58 (emphasis added). And even assuming that Plaintiff's belief about thousands of likely noncitizen *registrants* is accurate, the Complaint contains no concrete allegations that those registrants will vote unlawfully in November. *See California v. U.S. Bureau of Alcohol Tobacco Firearms & Explosives*, 188 F.4th 1160, 1170 (9th Cir. 2026) (Courts do not "endorse standing theories that rest on speculation about the decisions of independent actors . . . particularly speculation about future unlawful conduct."). Finally, even if the Complaint contained these necessary concrete allegations, Plaintiff does not allege that any noncitizen voting would change the outcome of any election and thus "who runs the Federal Government." Compl. ¶ 10.

## II. Plaintiff's Claim Fails on the Merits

Plaintiff's claim fails at the outset by failing to plead a cause of action to obtain the relief Plaintiff seeks. A plaintiff may not sue without a cause of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Plaintiff does not identify any cause of action here, and the Supremacy Clause does not provide "a cause of action for its violation." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326 (2015). Plaintiff attempts to sidestep this defect by noting the Court's "inherent . . . equitable powers." Compl. ¶ 8. But such relief is only available "in a proper case." *Armstrong*, 575 U.S. at 327. And Plaintiff makes no effort to show that the relief it seeks here is the sort of "equitable remedies traditionally accorded by courts

of equity at our country's inception." *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) (internal quotation marks omitted).

Even if there were a cause of action here, Plaintiff's claim fails on the merits multiple times over. Plaintiff has failed to show that 18 U.S.C. § 611 preempts any aspect of California's election administration. In fact, Plaintiff is unable to seek a civil injunction based on this criminal statute at all. And, in any event, the relief Plaintiff seeks is unlawful.

### A. Plaintiff Fails to Show That Any Aspect of California's Election Administration Unlawfully Impedes Federal Law Enforcement

Plaintiff's sole claim rests on 18 U.S.C. § 611's misdemeanor criminal prohibition on individual noncitizen voting.[2] The statute does not purport to set forth any standards for election administration, much less prohibit States from delivering and tabulating ballots for duly registered voters, or to authorize federal agencies to intervene in election administration. *See New York v. United States*, 505 U.S. 144, 178 (1992) (distinguishing between "congressional regulation of individuals" and "congressional requirements that States regulate"). Yet Plaintiff claims not that 18 U.S.C. § 611 preempts California *law*, but Defendants' "*actions*" in accordance with that law. *See, e.g.*, Compl. ¶¶ 5, 59, 61 (emphasis added). This is even though DOJ is apparently actively investigating and prosecuting violations of 18 U.S.C. § 611. *See* ECF No. 31-4, Exh. A–H (documents showing DOJ recently charged dozens of noncitizens with election-related crimes).

Plaintiff's preemption claim is facially untenable. Preemption "simply provides 'a rule of decision'" establishing that "federal law is supreme in case of a conflict with state law." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018) (citation omitted). It does not empower federal officials to enforce "a

[2] Recently, the Southern District of Florida found 18 U.S.C. § 611 unconstitutional as applied to a defendant based on States' exclusive constitutional authority to set voter qualifications. *United States v. Chelsea Cox*, __ F. Supp. 3d. __, 2026 WL 2948729 (S.D. Fla. Oct. 1, 2026).

direct command to the States," *id.* at 480, nor to complain of state inaction on a favored policy issue. Plaintiff cites several cases in support of its position, but all of them concern preemption of state law, not a free-floating challenge to state conduct. *See* Compl. ¶¶ 53–54. That includes *Norwood v. Harrison*, which involved an Equal Protection challenge to a Mississippi statutory program. 413 U.S. 455, 458 (1973). To paper over this obvious deficiency, Plaintiff raises hypotheticals not before the Court. What if, Plaintiff asks, California "pass[ed] a statute allowing noncitizens to vote in a federal election?" Compl. ¶ 56. An interesting thought experiment, maybe, but not the case at bar.

Setting aside the viability of Plaintiff's novel theory of preemption, Plaintiff's claim collapses under even the most cursory examination.

***Elections Clause Preemption.*** Plaintiff's preemption claim must be adjudicated under the Elections Clause. Where Congress has not exercised its Elections Clause authority to displace state election law, the States retain the "responsibility for the mechanics of congressional elections," *ITCA*, 570 U.S. at 9 (quotations omitted), including as to "registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, [and] counting of votes," *Moore v. Harper* (2023) 600 U.S. 1, 29 (quotation omitted). Both the Ninth Circuit and the Supreme Court have recognized that it is the Elections Clause preemption framework, not that of the Supremacy Clause, that governs in cases concerning the rules for election administration. *See ITCA*, 570 U.S. at 13–15; *Gonzalez v. Arizona*, 677 F.3d 383, 392–393 (9th Cir. 2012), *aff'd sub nom. ITCA*, 570 U.S. 1. This is one such case, as Plaintiff contests and seeks relief from California's rules and conduct with respect to election administration. *See, e.g.*, Compl. ¶¶ 5 (alleging that "actions," including sending mail ballots and tabulating them in accordance with state and federal law, "are preempted"), 62–63 (seeking relief from same).

Under the Elections Clause preemption framework, congressional enactments displace state election law only "so far as [Congress] . . . exercise[s]" its authority

"*and no farther*." *ITCA*, 570 U.S. at 9 (citation omitted and emphasis added); *see also Ex parte Siebold*, 100 U.S. 371, 384 (1879) (federal law preempts state election law only "so far as the conflict extends"). "Because the power the Elections Clause confers is none other than the power to pre-empt, the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." *ITCA*, 570 U.S. at 14. The inquiry is "straightforward"—as to the mechanics of elections, either Congress has exercised its Elections Clause power to displace States' rules, or it has not. *Id.* at 9; *see, e.g.*, *Watson v. Republican Nat'l Comm.*, 609 U.S. 672, 681–685 (2026) (finding that federal statutes setting the day for federal elections do not preempt state laws providing for counting ballots postmarked by election day but received later).

Here, Congress obviously has not. 18 U.S.C. § 611 criminalizes *individual noncitizen voting* and does not purport to set *any* rules governing election administration. Under these circumstances, it is the State's constitutional prerogative to enact and implement the rules about which Plaintiff complains, including citizenship verification requirements set by Congress itself. *See infra*, Sec. II.B. If Plaintiff would like to change California's rules or "actions" pertaining to election administration, the proper means of doing so is via congressional enactment—not Executive initiative. *See generally Georgia v. Meadows*, 88 F.4th 1331, 1347 (11th Cir. 2023) (recognizing that the federal Executive has no authority to "interfere[] with state election procedures based solely on [its] own initiative"). Plaintiff ignores this outcome-determinative constitutional framework entirely.

***Supremacy Clause Preemption.*** Plaintiff also fails to show obstacle preemption even if the standard Supremacy Clause framework applies. To establish obstacle preemption, Plaintiff must show that California's rules for election administration "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting 18 U.S.C. § 611. *Arizona v.*

*United States*, 567 U.S. 387, 399 (2012) (citations and quotations omitted).

This is a high bar. "The Supreme Court has found obstacle preemption in only a small number of cases," and never under circumstances like these. *ConocoPhillips Alaska, Inc. v. Alaska Oil and Gas Conservation Comm'n*, 177 F.4th 964, 972 (9th Cir. 2026). And a "presumption against preemption" raises that bar even higher where "a statute regulates a field traditionally occupied by states." *Mont. Med. Ass'n v. Knudsen*, 119 F.4th 618, 623 (9th Cir. 2024). Under this presumption, courts "assume that a federal law does not preempt the state's police powers absent a clear and manifest purpose of Congress." *Id.* (quotation omitted)

Plaintiff cannot carry this burden. A presumption against preemption applies here because 18 U.S.C. § 611 plainly pertains to a field traditionally occupied by the State, by the Founders' design—i.e., regulating federal elections and determining voter qualifications. *See ITCA*, 570 U.S. at 8–9. And Plaintiff does not even allege that Defendants stand as an obstacle to enforcing 18 U.S.C. § 611, instead pressing two baseless theories of California's interference with federal law.

First, Plaintiff asserts that while it "actively investigates and prosecutes . . . unlawful voting," it is not "practicable or feasible for the United States" to undertake the scale of investigations that they would like "before the 2026 election concludes." Compl. ¶ 60. For this, they would like California's help, demanding that the State "work[] with the Federal Government to prevent" unlawful voting. *Id.*; *see also id.* at ¶ 47. The relief Plaintiff requests also reveals that it seeks affirmative investigatory assistance. *Id.* at ¶¶ 62–63. But "refusing to help is not the same as impeding," and is no basis for obstacle preemption. *United States v. California*, 921 F.3d 865, 888 (9th Cir. 2019); *New York*, 505 U.S. at 188 ("The Federal Government may not compel the States to enact or administer a federal regulatory program.").

Obstacle preemption does not and cannot place such affirmative requirements on States. *California*, 921 F.3d. at 888–889; *New York*, 505 U.S. at 188. Outside of

the Elections Clause context, the federal government cannot order States either to take "affirmative action" or to impose "prohibitions." *Murphy*, 584 U.S. at 455; *see also New York*, 505 U.S. at 188.[3] Nor can it "commandeer[]" States "to address particular problems," or "command States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Printz v. United States*, 521 U.S. 898, 935 (1997). Yet compelled state assistance with enforcing a federal law is precisely what Plaintiff demands here. *See* Compl. ¶¶ 62–63. Nothing in 18 U.S.C. § 611 gives Plaintiff that authority.

Second, Plaintiff alleges that California "frustrate[s] the very purpose and effect of" 18 U.S.C. § 611 by "inten[ding] to count the[] vote" of potential noncitizens that "might be registered to vote." Compl. ¶ 59. Plaintiff fails to mention that the law requires California to count all lawfully cast ballots. Cal. Const. art. 2, § 2.5; *see, e.g.*, Cal. Elec. Code §§ 3019, 15101, 15109. Anyway, this allegation is far "too high a level of generality to support a finding of preemption," *Knudsen*, 119 F.4th at 629, and does nothing to establish that California "undermine[s] or disrupt[s] the activities of federal . . . authorities," *California*, 921 F.3d at 881. The Supreme Court has warned against the sort of "freewheeling judicial inquiry" on which Plaintiff invites the Court to embark, *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011), and the Ninth Circuit has cautioned against this sort of "judicial second-guessing" of election policies based upon allegations of vulnerability to fraud, *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1096 (9th Cir. 2024).

Plaintiff does not otherwise explain how California's election administration is an obstacle to enforcing 18 U.S.C. § 611 as Congress intended. The Complaint is

---

[3] In contrast, Congress has power under the Elections Clause to "conscript state agencies to carry out voter registration for the election of Representatives and Senators," as Congress has chosen to do through the NVRA and a limited number of other federal election laws. *Voting Rights Coal. v. Wilson*, 60 F.3d 1411, 1415 (9th Cir. 1995). 18 U.S.C. § 611 is not among them.

entirely devoid of citations to obstacle preemption cases supporting its position. It contains no evidence for its sweeping allegations of congressional intent. 18 U.S.C. § 611 itself does not fill in the blanks; nothing in that misdemeanor prohibition on individual noncitizen voting "demonstrate[s] *any* intent, let alone 'clear and manifest,' that Congress intended to supersede" State's authority over election administration.[4] *California*, 921 F.3d at 886 (finding no obstacle preemption with respect to various state laws pertaining to immigration enforcement). And DOJ is apparently actively investigating and prosecuting violations of 18 U.S.C. § 611, even as it complains of California's interference. *See* ECF No. 31-4, Exh. A–H (documents showing DOJ recently charged dozens of noncitizens with election-related crimes).

*Norwood* is of no help to Plaintiff. *See* Compl. ¶¶ 5, 56. That case concerned a claim that Mississippi violated the Equal Protection Clause by lending textbooks to private schools with racially discriminatory policies. *Norwood*, 413 U.S. at 456–457. The Court concluded that the textbooks amounted to "tangible aid . . . giv[ing] support to such discrimination." *Id.* at 464–465. Among numerous other reasons that *Norwood* is inapt, no aspect of Defendants' lawful administration of California elections can be deemed "tangible aid" to support noncitizen voting, nor to "induce, encourage, or promote" noncitizen voting. *Cf. id*. at 464–465.

Equally compromising for Plaintiff's position is the reality that California's policy choices are fully compliant with Congress's mandates governing election administration. For example, the NVRA and HAVA require voter registration applicants to attest to voter eligibility under oath, including citizenship. 52 U.S.C. §§ 20508(b)(2), 21083(b)(4)(A)(i). California does, too. Cal. Elec. Code §§ 2101, 2102(c), 2111, 2150(a)(1), 2264(a)(3), (b). The NVRA also requires that States "conduct a general program that makes a reasonable effort to remove" specified

[4] The Supremacy Clause, if it applies here at all, is not an independent ground for preemption. *Murphy*, 584 U.S. at 477 (recognizing that preemption flows only from congressional enactment and that "pointing to the Supremacy Clause will not do").

ineligible voters, complete with a framework for removal. 52 U.S.C. § 20507(a)(4). California does this as well. *See, e.g.*, Cal Elec. Code §§ 2200 *et seq*.; Cal. Code Regs. tit. 2, §§ 19060–62, 19079–81, 20070, 20075, 20076. And Congress has mandated that States make mail voting available to certain voters and on certain terms. *See, e.g.*, 52 U.S.C. §§ 10502, 20302, 20301. California offers all voters this option. Cal. Elec. Code §§ 3001, 3003, 3010, 3102.

State law cannot impede federal law when it simply "trace[s]" it. *Whiting*, 563 U.S. at 602. Many aspects of California's election administration do just that, or else go "the extra mile" to empower voters where Congress has set minimum standards. *Id.* at 601; *see also MetroPCS California, LLC v. Picker*, 970 F.3d 1106, 1118 (9th Cir. 2020) ("'[T]he case for federal pre-emption is less persuasive when coordinate state and federal efforts exist within a complementary administrative framework[] and in the pursuit of common purposes'") (citations omitted).

All told, Plaintiff comes up well short of showing that California's rules for election administration obstruct the execution of Congress's intent in enacting 18 U.S.C. § 611 under the Supremacy Clause, much less that any such obstruction surmounts the presumption against preemption applicable here.

Taken to its logical conclusion, Plaintiff's theory of preemption distorts the Constitution's Elections Clause and system of "limited" federal government beyond recognition. *United States v. Comstock*, 560 U.S. 126, 153 (2010) (Kennedy, J., concurring). If Plaintiff were correct, *any* state practice or inaction that Plaintiff speculates *could* facilitate violations of federal criminal law is likewise preempted—even those implicating the States' reserved authority over elections, where the "possibility of electoral fraud" or mistake "can never be *completely* eliminated." *Election Integrity Project Cal., Inc.*, 113 F.4th at 1096 (quotations omitted). That is not the law.

### B. Defendants Cannot Have Violated the Law by Refusing Plaintiff's Unlawful Demands

Plaintiff's claim is premised on the position that it was unlawful for Defendants to have refused DOJ's demands to prevent ballot mailings to, and segregate and not tabulate ballots from, any registered voters whose names appeared on DOJ's list. This premise is made plain by the Complaint's focus on California's "actions" in refusing to agree to DOJ's demands as set out in its October 13 letter. *See, e.g.*, Compl. ¶¶ 4–5, 58–62. Plaintiff's claim fails as a matter of law because the procedures DOJ demanded of Defendants would have independently violated federal statute, the Constitution, and state law.[5]

Plaintiff's demand to Defendants, now repeated to this Court in its request for injunctive relief, was and is astounding. Compl. ¶¶ 4, 47, 63, Exh. C. After requesting that California obtain and then review a list of "likely noncitizens" "within 48 hours to determine whether any citizens are listed," DOJ demanded that State Defendants: (1) "instruct the appropriate elections official" to segregate mail ballots returned by individuals on the list "until their citizenship status can be determined," (2) "take all immediate and reasonable steps to not provide a ballot to those individuals until we confirm their citizenship status," and (3) if any listed individual had returned a ballot, to "instruct the appropriate elections official not to verify the signature and/or tabulate the ballot until citizenship can be determined." Compl. Exh. C at 2–3.

Implementing these unprecedented procedures would have suspended voting rights for thousands of voters who are only *suspected* of being noncitizens, with absolutely no guarantee that their rights will be restored in time for their votes to be counted. Neither federal nor state law permits Defendants to take such actions.

[5] For the same reason, this Court cannot lawfully award the injunctive relief Plaintiff seeks and should dismiss the claim. Courts acting in equity may not "'disregard statutory and constitutional requirements and provisions.'" *I.N.S. v. Pangilinan*, 486 U.S. 875, 883 (1988) (quoting *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893)).

Plaintiff's request for last-minute election procedure changes to facilitate a law enforcement objective did not—and cannot—supersede the substantive state and federal law governing Defendants' election administration. Defendants cannot be held liable for failing to accede to such unlawful demands.

***National Voting Registration Act.*** Most immediately, the demands to cease ballot distribution to affected voters and refrain from counting their ballots would violate the NVRA's "quiet period" before an election. The NVRA requires States to "complete, not later than 90 days prior to the date of [a federal election], any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters," subject to exceptions not applicable here. 52 U.S.C. § 20507(c)(2). This rule reflects Congress's "cautious" approach to systematic removals, recognizing that "[e]ligible voters removed days or weeks before Election Day will likely not be able to correct the State's errors in time to vote." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014). The quiet period also protects elections officials' time during the busy months leading up to an election and provides certainty about the list of registered voters.

Plaintiff demands that elections officials treat thousands of voters as ineligible until proven otherwise—in substance and effect, requiring officials to remove voters' names "from the official lists of eligible voters." *See* 52 U.S.C. § 20507(c)(2). Linguistic games cannot reconcile this demand with the NVRA's plain language. *See id.*

Ninth Circuit precedent squarely prohibits the removal of voters from the voter rolls during the "quiet period" based on database matching programs designed to identify noncitizens, as opposed to individualized information. *Mi Familia Vota v. Fontes*, 129 F.4th 691, 715–717 (9th Cir. 2025), *cert. granted sub nom. Republican Nat'l Comm. v. Mi Familia Vota*, 146 S. Ct. 2799 (2026); *see also Arcia*, 772 F.3d at 1344 ("us[ing] a mass computerized data-matching process to compare the voter rolls with other state and federal databases" qualified as

prohibited "systematic" removals). In fact, DOJ's *own guidance* provides that the quiet period prohibition "applies to list maintenance programs based on third-party challenges derived from any large, computerized data-matching process." ECF No. 31-4 at 9. Plaintiff's list of roughly 20,000 "likely noncitizens" derives from just this kind of database matching program, Compl. ¶¶ 33–43, 45–48, 63, and is thus an impermissible basis for removing voters from "the official lists of eligible voters," *see* 52 U.S.C. § 20507(c)(2).

Even setting aside the genesis of Plaintiff's list, if Defendants had removed thousands of voters from normal voting procedures based on a list of names provided by a third party, that independently would violate the quiet period. The Complaint only alleges that Plaintiff "provided a list of over 20,000 individuals who USCIS and HSI believe are noncitizens registered to participate in the federal election in California." Compl. ¶ 47. This allegation falls far short of the kind of individualized information that could support removal: a list of names is not individualized evidence of ineligibility, *cf. Mi Familia Vota*, 129 F.4th at 716, and in fact Plaintiff does not even claim that the listed individuals are in fact noncitizens, just that federal agencies "believe" the persons to be "likely noncitizens," and that their citizenship status should "be verified," Compl. ¶¶ 47, 63. Removing those individuals from the "official list of eligible voters" whose votes will be tabulated and reported would flatly violate the NVRA. *See* 52 U.S.C. § 20507(c)(2). Defendants were not required to do so.

***Constitutional violation.*** The U.S. Constitution "protects the right of all qualified citizens to vote, in state as well as in federal elections," and "to have their votes counted." *Reynolds v. Sims*, 377 U.S. 553, 554 (1964). Yet DOJ demanded that Defendants set these rights aside for thousands of individuals that it only "believes" to be "likely noncitizens," without any credible or certain path to resolving Plaintiff's allegations of noncitizenship before counting is completed.

Compl. Exh. C at 2; *see also id.* ¶¶ 46–48, 60. Because these requested procedures would be unconstitutional, Defendants were right to refuse.

To determine whether an election procedure unconstitutionally trespasses on the right to vote or deprives that right without due process, courts apply the *Anderson-Burdick* test. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1194–95 (9th Cir. 2021) (due process and other constitutional challenges to deprivations of the right to vote are analyzed under *Anderson-Burdick*). This test weighs "the character and magnitude of the asserted injury" to voting rights against "the precise interests put forward by the [government] as justifications for the burden imposed," considering "the extent to which those interests make it necessary to burden the [voters'] rights." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). A "regulation that imposes a severe burden is subject to strict scrutiny." *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008).

This balancing test confirms the unconstitutional nature of DOJ's demands of Defendants. The burden Plaintiff seeks to impose on duly registered voters is severe. Unlike cases where courts have upheld routine, procedural rules designed to manage registration or balloting, *see, e.g.*, *Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 202–203 (2008) (requirement to present photo ID when voting in person); *Ariz. Democratic Party*, 18 F.4th at 1181 (election day deadline for curing signatures), Plaintiff demanded that California sequester and refuse to tabulate ballots cast by duly registered voters outside of any statutory procedure and in the absence of any individualized evidence. These steps would unquestionably have a devastating disenfranchising effect. Plaintiff has not articulated a standard by which citizenship can be "determined" or "confirm[ed]," *see* Compl. Exh. C at 2–3, and it outright concedes that it "is not practicable or feasible for the United States" to carry out that confirmation process "before the 2026 election concludes," *id.* ¶ 60. Nor does the Complaint offer any factual basis to support a conclusion, or even an inference, that Defendants could feasibly do so. Even construing all allegations in

Plaintiff's favor, the Complaint proposes a step that, at best, would jeopardize the voting rights of thousands of potential voters in an ongoing election.

To sustain a procedure imposing a severe burden on voting rights, a court must determine that the rule passes strict scrutiny, or is "narrowly tailored to serve a compelling state interest." *Nader*, 531 F.3d at 1035. Even assuming that enforcing a misdemeanor criminal statute is a compelling interest, the extraordinary measures Plaintiff demanded are not necessary to advance that interest. Nothing prevents Plaintiff from enforcing 18 U.S.C. § 611 by bringing charges where it has sufficient evidence. *Cal. Democratic Party v. Jones*, 530 U.S. 567, 584–585 (2000) (narrow tailoring not satisfied where another, less burdensome option would accomplish the same ends). California does not stand in its way. In fact, DOJ recently brought charges of noncitizen voting in multiple cases in California. *See* ECF No. 31-4 at 47–51; *see also Skilstaf, Inc.*, 669 F.3d at 1016 n.9.

DOJ's requests of Defendants were anything but narrowly tailored. Suspending voting rights for thousands of potential voters whom Plaintiff only "believes" to be "likely noncitizens" is the epitome of overbreadth. Compl. Exh. C at 2. In the Complaint, Plaintiff offers little more than a general description of its process for analyzing data to support its allegation that the listed individuals are likely noncitizen voters. *Id.* ¶¶ 33–43. In its demand to Defendants, it provided *no* information to support suspending voting rights for individuals it identified. Compl. Exh. C at 2–3; *see also id.* Exhs. A & B (such information was also omitted from DHS's similar letter in July). Essentially, Plaintiff demanded that elections officials suspend thousands of voters, merely on a federal agency's claim that those voters *may* be noncitizens. Compl. ¶¶ 46–49. Agreeing to this demand would have flouted the federal constitutional rights of registered voters to vote "and to have their votes counted." *Reynolds*, 377 U.S. at 554.

***Voting Rights Act.*** The procedures DOJ demanded of Defendants would also have violated section 11(a) of Voting Rights Act: "[n]o person acting under color of

law shall fail or refuse to permit any person to vote who is . . . qualified to vote, or willfully fail or refuse to tabulate, count, and report such person's vote." 52 U.S.C. § 10307(a). This provision straightforwardly "prohibits public officials from denying any qualified person the right to vote." *Post*, 297 F. Supp. at 50. Here, DOJ requested that Defendants instruct elections officials to "refuse to tabulate, count, and report" votes cast by thousands of duly registered voters on the mere possibility that some of them may be ineligible. *But see* 52 U.S.C. § 10307. That is precisely the sort of willful refusal to tabulate duly cast votes that the Voting Rights Act squarely prohibits. *See id.*

***State law.*** Finally, the requested relief is unlawful because it is inconsistent with state law governing the administration of state elections, including the processing and tabulation of ballots. Absent a successful challenge as enumerated under the law, all returned mail ballots that bear a valid signature must be counted. Cal. Elec. Code §§ 3019, 15101, 15109. This implements the state constitutional guarantee that "[a] voter who casts a vote in an election in accordance with the laws of this State shall have that vote counted." Cal. Const. art. 2, § 2.5. California law also protects the secrecy of a ballot. Cal. Const., art. 2, § 7 ("Voting shall be secret"). For that reason, state law requires that "upon receiving a vote by mail ballot," the elections official shall verify the signature, Cal. Elec. Code § 3019(a)(1), and once a signature is verified the ballot is separated from the identification envelope and the votes are tabulated, even prior to Election Day, *id.* §§ 3019(b), 15101. Finally, state law sets forth a detailed and exclusive process for contesting voter eligibility, no aspect of which contemplates separating ballots upon receipt in response to third-party demands consisting of a mere list of people who may not be eligible. *See, e.g.*, Cal. Elec. Code §§ 14240 (challenges to voter eligibility), 15105 (allowing challenges to mail ballots on the same grounds as challenges at polling places "prior to the opening of the identification envelope of the challenged voter"), 15106 (establishing a burden of "extraordinary proof of the

validity of the challenge at the time the challenge is made"); Cal Reg. tit. 2, § 20879 (describing challenges to mail ballots); *see also supra* Sec. I.

DOJ demanded that California violate these state law requirements for processing voters' validly cast ballot. State law cannot be reconciled with segregating and declining to verify signatures or tabulate ballots submitted by everyone on DOJ's list, and doing so without complying with the designated voter challenge process established by California law. Since 18 U.S.C. § 611 clearly does not preempt state law in this area, Defendants were and are bound by state law, not DOJ's command.

**C. 18 U.S.C. § 611 Does Not Authorize the Relief Plaintiff Seeks**

Finally, Plaintiff's claim fails for the independent reason that Plaintiff asks this Court to issue a civil injunction based on alleged violations of 18 U.S.C. § 611, a criminal statute. "As a general rule," however, courts "are reluctant to issue injunctions against the commission of a crime." 11A Fed. Prac. & Proc. Civ. § 2942 & n.73 (3d ed.). This rule rests upon "the adequacy of the criminal remedy to protect the plaintiff's interests." *Id*. The government may seek an injunction against potential crime when a specific statute authorizes such relief. *See, e.g.*, *Beck v. Prupis*, 529 U.S. 494, 496 n.1 (2000). But Congress has not authorized injunctive relief for 18 U.S.C. § 611. Congress has expressly authorized the Attorney General to seek injunctive relief to prevent certain alleged criminal violations of *other* election laws, *see* 52 U.S.C. §§ 10308(a)–(d), 20510(a), 20511, but 18 U.S.C. § 611 is not among them—an "omission[ ] [that] should be understood as exclusion[ ]." *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) (citation omitted).

**CONCLUSION**

For the foregoing reasons, State Defendants respectfully request that the Court grant the motion to dismiss this case.

Dated: October 21, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
MICHAEL L. NEWMAN
THOMAS S. PATTERSON
Senior Assistant Attorneys General
SETH E. GOLDSTEIN
Supervising Deputy Attorney General
ANNE P. BELLOWS
LISA C. EHRLICH
ANDREW E. KUSHNER
CHRISTINA M. MCCALL
Deputy Attorneys General

/s/ *Michael S. Cohen*

MICHAEL S. COHEN
Deputy Attorney General
*Attorneys for Defendants State of California and California Secretary of State Shirley N. Weber, in her official capacity*

# CERTIFICATE OF SERVICE

Case Name: **United States of America v. State of California, et al.** No. **2:26-cv-12025**

I hereby certify that on October 21, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **STATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 21, 2026, at Los Angeles, California.

| Linda Zamora | */s/ Linda Zamora* |
|---|---|
| Declarant | Signature |

SA2026305380
68813260