ROB BONTA
Attorney General of California
MICHAEL L. NEWMAN
THOMAS S. PATTERSON
Senior Assistant Attorneys General
SETH E. GOLDSTEIN
Supervising Deputy Attorney General
ANNE P. BELLOWS (SBN 293722)
MICHAEL S. COHEN (SBN 339846)
LISA C. EHRLICH (SBN 270842)
ANDREW E. KUSHNER (SBN 316035)
CHRISTINA M. MCCALL (SBN 234139)
Deputy Attorneys General
1300 I Street, P.O. Box 944255
Sacramento, CA 95814
Telephone: (916) 210-6090
Fax: (916) 324-8835
E-mail: Michael.Cohen@doj.ca.gov
*Attorneys for Defendants State of California and California Secretary of State Shirley N. Weber, in her official capacity*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>**v.**<br>**STATE OF CALIFORNIA and SHIRLEY N. WEBER, in her official capacity as the California Secretary of State, and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder / County Clerk,**<br>Defendants. | Case No. 2:26-cv-12025-DOC-ADS<br>**STATE DEFENDANTS' SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br>Date: October 27, 2026<br>Time: 1:00 p.m.<br>Courtroom: 1<br>Judge: Hon. David O. Carter<br>Trial Date: Not Set<br>Action Filed: October 15, 2026 |

In accordance with this Court's order regarding further briefing on Plaintiff's Application for a Temporary Restraining Order ("TRO Application"), ECF Nos. 77, 78, State Defendants submit this supplemental brief to bring the Court's attention to several updates and points of law.

Recent developments may help contextualize Plaintiff's specious claim further. First, Los Angeles County's sampling of the federal government's list of supposed noncitizen registrants has demonstrated that it is deeply flawed. ECF No. 32-3 at ¶ 24. Of the individuals in the sample, less than half have active voter registration records, over a third have canceled registrations, and nearly three-quarters of the list have never voted. *Id.* Additionally, among those for whom birthplace was reported, over a third indicated they were born in the United States. *Id*. This initial analysis of the data demonstrates precisely why it cannot be used during an ongoing election to disenfranchise voters—the data simply cannot be trusted. *See Cal. Nurses Ass'n v. Mullin*, 2026 WL 3166149 *2, *8 (N.D. Cal. Oct. 21, 2026) (describing lists of possible noncitizen registrants generated by the same USCIS and DHS data-matching processes used by Plaintiff as reliant on "unreliable" data, "overbroad and inaccurate" sources, carrying a conceded risk of errors, and "widely known to inadvertently include U.S. citizens"). Plaintiff implicitly concedes the unreliability of its own list by repeatedly characterizing the listed individuals as "likely noncitizens" and seeking an order requiring confirmation of their citizenship status. ECF No. 31-1 at 28–29.

Second, Plaintiff has alleged that Defendants have "refus[ed] to receive" this list of individuals as part of Defendants' "ongoing efforts through today that frustrate the federal prohibition against noncitizen voting." ECF No. 72 at 2. To the contrary, Secretary Weber informed the federal government that she would "welcome the opportunity to review" any "proof that certain registered voters in California are ineligible," after which her office "would take the appropriate steps in compliance with federal and state law." ECF No. 31-2 at 11. Plaintiff sued

instead. On October 23, federal agents delivered a thumb drive to the Secretary's Office, presumably containing the list. Declaration of Rachel Evans ¶ 3. New information regarding the unreliability of the underlying data further confirms that the list of "likely noncitizens," generated from sources and methods only vaguely described, does not furnish the proof necessary to deprive Californians of their vote. *See, e.g.*, ECF 65-1 at 20.

Third, the federal government has now expanded its campaign to other local jurisdictions in the State. Yesterday, federal agencies conveyed similar letters and lists of alleged noncitizens to counties across California, demanding that they indicate within 48 hours their willingness to work with federal agencies to evaluate voter rolls and set aside thousands of voters' ballots, or suffer litigation and even criminal charges. Evans Decl. ¶ 5, Exh. 3–5. The letters specify that the federal government is seeking a vast trove of personal and highly confidential information, including social security and driver's license numbers. *Id.* The letters informed elections officials that the Department of Justice means to make "the legal implications" of refusing this intervention into election administration "unmistakably clear," warning that officials "risk becoming aiders and abettors to a federal crime" and may face "significant federal scrutiny and legal exposure." *Id.* Exh. 3–5. Reports already indicate inaccuracies and other issues with these lists. The list delivered to Mendocino County, for example, included only individuals from outside the county.[1]

Defendants also supplement their earlier arguments with the following.

**Standing.** Plaintiff's standing theories boil down to the contention that the State's "actions" have somehow injured Plaintiff by failing to prevent third-party, alleged noncitizens from violating federal criminal law. ECF No. 62-1 at 15; *see*

---

[1] Laurel Rosenhall & Shawn Hubler, *Justice Dept. Demands That California Counties Help Identify Noncitizen Voters*, N.Y. Times (Oct. 23, 2026), https://www.nytimes.com/2026/10/23/us/justice-dept-california-noncitizen-voters.html?unlocked_article_code=1.LFE.7-uY.9pS_elzO_tq7&smid=url-share.

*also* ECF No. 76-1. Whether couched as "sovereign injury" or direct injury, such a theory knows no bounds; it would permit the federal government to sue *any* entity that the federal government alleged had failed to prevent a federal crime committed by a third party. That contention is preposterous, and even more so here because the State also prohibits fraudulent noncitizen voting and has a strong interest in preventing it. ECF No. 31-1 at 4. Plaintiff concedes that "a State is not required to help the Federal Government investigate and prosecute crimes," ECF No. 76-1 at 14, yet its standing theory requires the State not only to investigate such alleged crimes but to *prevent them altogether* or risk being hauled into court.

**Preemption.** Plaintiff's theory of preemption likewise lacks a limiting principle, providing that *any* state law, practice, or inaction that could *hypothetically* fail to prevent third-party violations of federal criminal law is preempted. Defendants have explained that Plaintiff's preemption claim is facially untenable and fails no matter what doctrinal framework applies. ECF No. 31-1 at 11–17. Notably, Plaintiff recently confirmed that it is attempting to leverage preemption doctrine to force California to "work with" the federal government on a law enforcement initiative. ECF No. 67. The Executive Branch has no authority to interfere in the State's election administration in this way, *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8–9 (2013), and the Ninth Circuit has squarely foreclosed this attack on state sovereignty, *see United States v. California*, 921 F.3d 865, 886 (9th Cir. 2019); ECF No. 31-1 at 14.

Plaintiff still has not cited a single case authorizing this overreach. Two cases Plaintiff cited—*Norwood v. Harrison*, 413 U.S. 455 (1973) and *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989)—concerned the Fourteenth Amendment, which expressly prohibits certain state conduct. U.S. Const. amend. XIV, § 1 ("[n]o State shall"). Plaintiff also cites *Puerto Rico v. Branstad*, which concerned extradition—also a "duty [] directly imposed upon the States by the Constitution itself." 483 U.S. 219, 228 (1987). These cases have nothing to do with the inquiry

before the Court, since 18 U.S.C. § 611 places no requirements on States. In fact, one court found that the statute cannot carry such preemptive power. *United States v. Cox*, __ F. Supp. 3d __, 2026 WL 2948729, *10 (S.D. Fla. 2026) (finding 18 U.S.C. § 611 unconstitutional because it interferes with States' "sole authority to set voter qualifications"); *see also* Mem. of Court-Appointed Amicus Paul Clement, *United States v. Cox*, No. 25-CR-60249, Dkt. 46 (S.D. Fla. July 23, 2026).

**Unlawfulness of Relief Sought.** In this lawsuit and beyond, Plaintiff is pressing forward with its effort to force California elections officials to suspend the voting rights of thousands of potential voters and "segregate" them from the official list of eligible voters. This campaign is premised solely on the federal Executive's demands and the mere possibility that some alleged voters may be noncitizens, notwithstanding that Plaintiff's list is unreliable and almost certainly includes many eligible citizens. For the reasons Defendants have already briefed, the extraordinary measures that Plaintiff requested Defendants undertake—and that they now request this Court to order—would independently violate state and federal law, including the prohibition on removing voters from "the official list of eligible voters" within 90 days of a federal election, 52 U.S.C. § 20507(c)(2), state and federal constitutional voting rights, the Voting Rights Act, 52 U.S.C. § 10307(a), and state law requirements related to ballot tabulation, ballot secrecy, and voter challenges. *See* ECF No. 31-1 at 19–23; ECF No. 65-1 at 18–24. Considering Plaintiff's expanded efforts to pressure local elections officials to comply with these measures, including by threatening criminal charges, Defendants respectfully request that the Court address these important issues in its order on the TRO Application.

**Cause of Action.** Defendants have explained that Plaintiff lacks a cause of action to bring this suit and cannot rely on a federal misdemeanor statute to secure sweeping civil relief. ECF No. 31-1 at 17–18. It bears emphasizing that "the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Armstrong v. Exceptional Child Ctr., Inc.*,

575 U.S. 320, 328 (2015) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). Here, Congress has provided both for criminal prosecution of 18 U.S.C. § 611 *and* created a civil cause of action to sue state officials regarding voter list maintenance. *See* 52 U.S.C. § 20510(a) (National Voter Registration Act); *see also id.* § 21111 (Help America Vote Act). Those would be the only means for potential redress if it were warranted, not Plaintiff's misguided preemption claim.

**Irreparable Harm.** Because Plaintiff fails to demonstrate standing, it necessarily cannot demonstrate irreparable harm. Plaintiff cannot rely on "general pronouncements that a Supremacy Clause violation alone causes sufficient harm." *California*, 921 F.3d at 894. Nor is Plaintiff harmed by California allegedly preventing Plaintiff from enforcing federal law, which is factually inaccurate, *see, e.g.*, RJN Exh. B–G, and legally insufficient, *see Novedades Y Servicios, Inc. v. Fin. Crimes Enf't Network*, 181 F.4th 961, 981 (9th Cir. 2026) (no harm to government where it could "combat emergent threats through other investigatory and prosecutorial tools").

Plaintiff has also recently referred to the harm of "disenfranchisement and dilution of the votes of United States citizens." ECF No. 76-1. That allegation turns this case on its head. Plaintiff has not established that individuals on its list are noncitizen voters, and there is good reason to doubt the accuracy of its list. *See* ECF No. 32-3 at ¶ 24 (discussing serious data issues with provided list); *Common Cause v. U.S. Dep't of Just.*, __ F. Supp. 3d __, 2026 WL 3033772, at *33 (D.D.C. Oct. 9, 2026) (finding serious errors in mass-generated voter roll maintenance lists developed through use of federal databases); *League of Women Voters v. U.S. Dep't of Homeland Sec.*, 835 F. Supp. 3d 79, 95 (D.D.C. 2026) (finding that federal voter roll maintenance lists were known to the federal government to be unreliable); *Cal. Nurses Ass'n*, 2026 WL 3166149 at *2, *8. It is Plaintiff's demand for unlawful election interference that would disenfranchise voters. ECF No. 31-1 at 27. And the

Ninth Circuit has rejected Plaintiff's unmoored concept of "vote dilution." *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1087 (9th Cir. 2024).

**Equities.** As Defendants argued and becomes ever more pressing as the election carries on, the *Purcell* principle forecloses Plaintiff's request that the Court "alter the election rules on the eve of an election." *Allen v. Milligan*, 608 U.S. 511, 514 (2026); ECF No. 31-1 at 23–24. *Purcell* applies especially strongly here because "[t]he election is not merely upcoming; it has already started." *People Not Politicians v. Onder*, 609 U.S. __, 2026 WL 2883222, at *2 (U.S. Sep. 25, 2026). What Plaintiff demands is inconsistent with established election procedures, leaving elections officials to navigate a process for scrutinizing voters in which the rules are set by the Executive Branch, not the law. ECF No. 31-1 at 24. Defendants have also shown that the public interest weighs heavily against an injunction because, among other reasons, Plaintiff's actions: are unlawful, *id.* at 24–25, irreparably harm California's sovereign power to create and enforce state election law, *id.* at 25–26, cause the loss of public trust and reputational harms to the State, *id.* at 26, and stand to disenfranchise voters en masse without a semblance of due process, *id.* at 27. These equities have only become stronger given the federal government's expansion of its ongoing campaign to force California's elections officials to carry out its dictates.

While President Trump has pressed Congress to pass laws establishing new voting requirements for federal elections—including additional verification of citizenship—Congress has yet to do so. *See, e.g.*, S. 5271, 119th Cong. (2026) (cloture on the motion to proceed to the measure not invoked); S. 4155, 119th Cong. (2026) (referred to Committee and no subsequent action taken); SAVE America Act, H.R. 7296, 119th Cong. (2026) (referred to H. Comm. on H. Administration and no subsequent actions taken); SAVE Act, H.R. 22, 119th Cong. (2025) (received in the Senate and no subsequent actions taken); SAVE Act, H.R. 8281, 118th Cong. (2024) (placed on Senate legislative calendar and no subsequent

actions taken). This lawsuit attempts to bypass Congress and send a clear message to California's elections officials: follow the Executive Branch's lawless demand to verify voters in accordance with its preferred policies, or else.

The Court—and the American public—should not turn a blind eye to the circumstances under which this case is presented. Since filing this lawsuit, the U.S. Attorney General has refused to disavow interfering with States' certification of the 2026 General Election.[2] The next day, the President directed the U.S. Department of Justice to file suit in Alaska to block certification of the State's results if the Republican candidate loses.[3] This litigation is a precursor to further interference here in California. The Court must not be drawn into this chilling degradation of democratic values and constitutional principles.

For the reasons set forth above and in State Defendants' initial Opposition to Plaintiff's TRO Application, ECF No. 31-1, State Defendants respectfully request that the Court deny the TRO Application.

---

[2] Landon Mion, *Blanche won't rule out DOJ blocking election certification in 'doomsday' scenario*, Fox News (Oct. 23, 2026), https://www.foxnews.com/politics/blanche-wont-rule-out-doj-blocking-election-certification-doomsday-scenario?msockid=1e34c9f5141f6ce408c6ddde15ee6d29.

[3] Nicholas Riccardi, *Trump says he ordered the Justice Department's lawsuit over Alaska's US Senate race*, Associated Press (Oct. 23, 2026), https://apnews.com/article/alaska-senate-race-sullivan-name-lawsuit-certification-d8f4a3c7b5247cc427a05f796d7c0d82.

Dated: October 24, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
MICHAEL L. NEWMAN
THOMAS S. PATTERSON
Senior Assistant Attorneys General
SETH E. GOLDSTEIN
Supervising Deputy Attorney General
ANNE P. BELLOWS
LISA C. EHRLICH
ANDREW E. KUSHNER
CHRISTINA M. MCCALL
Deputy Attorneys General

/s/ *Michael S. Cohen*

MICHAEL S. COHEN
Deputy Attorney General
*Attorneys for Defendants State of California and California Secretary of State Shirley N. Weber, Ph.D.*