Justin G. Reden, Esq. (SBN 230068)
*jreden@redenriddell.com*
REDEN | RIDDEL
16885 Via Del Campo Court, Suite 320
Sand Diego, CA 92127
Telephone: (619) 758-3869

Attorneys for Amicus Curiae
America First Policy Institute

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF CALIFORNIA; SHIRLEY N. WEBER, in her official capacity as California Secretary of State; and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk,

Defendants.

Case No. 2:26-cv-12025-DOC-ADS

**BRIEF OF [PROPOSED] AMICUS CURIAE AMERICA FIRST POLICY INSTITUTE IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Hearing Date: October 27, 2026
Time: 1:00 p.m.
Courtroom: One
Judge: Hon. David O. Carter
Mag. Judge: Autumn D. Spaeth

## BRIEF OF AMICUS CURIAE[1]

### I. INTEREST OF AMICUS CURIAE

The America First Policy Institute ("AFPI") is a 501(c)(3) non-profit, non-partisan research institute. AFPI exists to advance policies that put the American people first. Its guiding principles are liberty, free enterprise, national greatness, American military superiority, foreign-policy engagement in the American interest, and the primacy of American workers, families, and communities in all it does.

AFPI develops policy on election administration, public accountability, and the protection of lawful voters. It has published research, model legislation, implementation guidance, and commentary concerning voter identification, documentary proof of citizenship, voter-list maintenance, election observation, record retention, and public confidence in elections. AFPI's election-integrity work has consistently shown that objective verification rules are more effective, more transparent, and more secure than subjective after-the-fact review, and that accurate eligibility determinations protect lawful voters and support public trust in the integrity of the election system.

AFPI regularly participates as amicus curiae in cases involving election integrity, federalism, voter-roll maintenance, and the interaction between federal election statutes and state election-administration authority. AFPI submits this brief to address the public-interest and equitable considerations bearing on the United States' application for a temporary restraining order.

### II. INTRODUCTION AND SUMMARY OF ARGUMENT

Citizenship is a qualification for voting in every federal election, and California's own Constitution makes it a qualification for voting in every California election. 18 U.S.C. § 611(a); Cal. Const. art. II, § 2(a). Federal immigration authorities

[1] No counsel for a party authored this brief in whole or in part, and no person or entity other than amicus curiae, its members, or its counsel made a monetary contribution intended to fund the preparation or submission of this brief.

have identified more than 20,000 California registrants who, after a multi-level review, are highly likely to be noncitizens. The United States asks only that those registrants' returned mail ballots be set aside, not cancelled, until their citizenship is verified. ECF No. 62-1 at 1, 14.

The need for interim relief is immediate. Once a California mail ballot is separated from its envelope, "there is no way to associate the voter with that ballot." ECF No. 32-1 at 11. Each day without relief, more ballots from the identified registrants may be processed into an anonymous total from which they can never be removed, causing irreparable harm.

There are at least three separate reasons, each grounded in election-administration policy, why the immediate injunctive relief sought is vital. *First*, election integrity and public confidence in elections are paramount public interests, and every unlawful ballot dilutes the votes of eligible citizens. *Second*, election integrity depends on safeguards applied before a ballot is counted; after-the-fact remedies cannot reach a ballot that has already been commingled. *Third*, sequestering the identified ballots imposes no substantial burden on Defendants and deprives no *eligible* citizen of the right to vote. In light of the clear irreparable harm established by the United States, the balance of equities and the public interest favor the temporary relief the United States seeks.

## III. ARGUMENT

### A. Election Integrity and Public Confidence Are Paramount Public Interests

"Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam). A State "indisputably has a compelling interest in preserving the integrity of its election process," *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 685 (2021) (quoting *Purcell*, 549 U.S. at 4), and "[t]here is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters,"

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (plurality opinion). The Supreme Court has repeatedly recognized the importance of the public having faith in the integrity of the election system because, "[v]oters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Purcell,* 549 U.S. at 4.

That confidence is already under strain. Recent survey research shows that only about 60 percent of Americans are confident that votes will be accurately counted nationwide. Thad Kousser et al., Yankelovich Ctr. for Soc. Sci. Rsch., Univ. of Cal. San Diego, *Trust in American Elections Has Declined Since 2024* (2026); *see also* Lydia Saad, *Partisan Split on Election Integrity Gets Even Wider*, Gallup (Sept. 25, 2024). This ongoing issue is aggravated by the unprecedented levels of illegal immigration to the United States in recent years, with conservative estimates of fourteen million unauthorized immigrants residing in the U.S. as of 2023.[2]

Noncitizens and illegal aliens can and do vote in elections in violation of United States Law. For example, in July 2026, a government investigation revealed that approximately 400 non-citizens, who had been registered to vote due to an error by the New Jersey Motor Vehicle Commission, cast ballots. Associated Press, *6,600 Noncitizens Registered to Vote by New Jersey Motor Vehicle System Error, Gov. Sherrill Says*, PBS NewsHour (July 21, 2026). In 2024, Ohio identified 597 noncitizens registered to vote, 138 of whom appeared to have cast ballots. Press Release, Ohio Sec'y of State, *Secretary LaRose Refers Evidence of Non-Citizen Voter Registrations to Ohio Attorney General for Potential Prosecution* (Aug. 21, 2024). Texas reported removing more than 6,500 potential noncitizens from its rolls since 2021, approximately 1,930 of whom had a voting history. Press Release, Office of the

---

[2] Jeffrey Passel & Jens Manuel Krogstad, U.S. Unauthorized Immigrant Population Reached a Record 14 Million in 2023, PEW RESEARCH CENTER (Aug. 21, 2025), https://www.pewresearch.org/race and-ethnicity/2025/08/21/u-s-unauthorized-immigrant-population-reached-a-record-14-million in-2023/.

Tex. Governor, *Governor Abbott Announces Over 1 Million Ineligible Voters Removed From Voter Rolls* (Aug. 26, 2024).

The Supreme Court has recognized that an "electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud." *Crawford*, 553 U.S. at 197 (plurality opinion) (citation omitted). When the federal agencies responsible for citizenship records have identified specific registrants as likely ineligible, and a State refuses to conduct a review and counts its ballots in a manner that makes later review impossible, a troubling message is sent to the public: no safeguard exists and their elections are not secure.

### B. Election Integrity Depends on Safeguards Applied Before Ballots Are Counted.

Secure election administration depends on prevention. Elections are highly public events in which after-the-fact correction is controversial, slow, and often impossible. For that reason, "a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Brnovich*, 594 U.S. at 686. That is why, "[c]ount first, and rule upon legality afterwards, is not a recipe for producing election results that have the public acceptance democratic stability requires." *Bush v. Gore*, 531 U.S. 1046, 1047 (2000) (Scalia, J., concurring in grant of application for stay).

California does not require documentary proof of citizenship to register; applicants attest to citizenship, and the State's verification confirms identity, not citizenship. *See* Cal. Elec. Code §§ 2101, 2111, 2150(a)(1). Signature comparison on a mail ballot likewise confirms only that the registrant signed the envelope. *See* Cal. Elec. Code § 3019. It is feasible for the ballot of an ineligible registrant, such as the potentially ineligible records identified by the United States, to pass every check that California applies to their ballot. And once that ballot is separated from the envelope, it becomes impossible to identify that voter and evaluate their eligibility. ECF No. 32 1 at 11.

After-the-fact challenges cannot provide a satisfactory remedy to this issue. Individual prosecutions may reach the voter, but they cannot restore the weight of the lawful votes diluted or public confidence in the election system. A safeguard applied *before* tabulation is the only safeguard that will ensure ineligible votes are not counted, that legal votes are preserved without prejudice, and that the public's trust in the election's integrity is protected. The temporary restraining order sought by the United States is the only way to preserve the status quo until the Court reaches the merits, without this relief the separated votes will be permanently unreachable.

### C. Sequestering the Identified Ballots Does Not Deprive Any Citizen of the Right to Vote or Substantially Burden Defendants.

The relief the United States seeks is modest. Setting a ballot aside while an eligibility question is resolved, and counting it if the voter is eligible, is a routine part of American election administration. Moreover, federal law requires it: when "an election official asserts that the individual is not eligible to vote," the individual may cast a provisional ballot, which "shall be counted" if the official "determines that the individual is eligible under State law to vote." 52 U.S.C. § 21082(a), (a)(4). California does the same with provisional ballots, which are sealed and counted only after eligibility is verified during the canvass, Cal. Elec. Code § 14310; with mail-in ballots held out of tabulation pending signature cure, *id.* § 3019(d)–(e); and with challenged ballots, which California regulations direct be resolved "in a segregated area," Cal. Code Regs. tit. 2, § 20363. Defendants administer each of these procedures in every election.

No eligible citizen is deprived of the right to vote. Sequestration removes no one from the rolls, cancels no registration, and requires no additional action by the voter. Every registrant on the federal list remains registered, has already received a ballot, and may return it. A citizen identified in error loses nothing: the ballot is preserved and counted once eligibility is confirmed. ECF No. 62-1 at 24-25, (Plaintiff United

States does not request that California remove anyone from the voter rolls or cancel qualified votes).Sequestration also does not "remove the names of ineligible voters from the official lists of eligible voters," and therefore does not trigger the National Voter Registration Act's 90-day prohibition on list-maintenance programs before an election. 52 U.S.C. § 20507(c)(2)(A). Sequestration is also the response most protective of citizens who may have been flagged in error, because it leaves their status untouched while the question is answered.

Sequestration does not substantially burden Defendants. The identified registrants are roughly 20,000 of California's approximately 23 million registered voters. *See* ECF No. 65-1 at 8 n.1. The canvass extends well past Election Day, and California has represented that its officials "will be fully engaged with ballot processing activities . . . until the end of November." ECF No. 62-1 at 28 (quoting Compl. Ex. B at 3). Setting aside a set of envelopes before they are opened and using procedures Defendants already apply to provisional and challenged ballots, entail a modest administrative task which does not significantly disrupt the election. And because the relief concerns only how officials handle ballots already cast, it does not change the process any voter must follow and raises none of the voter-confusion concerns present in *Purcell*. *See* 549 U.S. at 4–5.

The equities therefore support relief. If a sequestered ballot belongs to an eligible voter, it is counted before certification, and the only cost is administrative effort. If an identified ballot is tabulated and the voter was ineligible, the error is permanent and the damages touch every eligible voter in the contest. The denial of interim relief forecloses the ability to show that the count was accurate and to assure the public's confidence in the legitimacy of their elections.

## IV. CONCLUSION

For the foregoing reasons, amicus curiae respectfully asks the Court to grant the United State's application for a temporary restraining order and order that the ballots identified by the federal government be set aside until their eligibility is verified.

Dated: October 26, 2026

Respectfully submitted,

/s/ Justin G. Reden
Justin G. Reden, Esq.
Attorney for Amicus Curiae
America First Policy Institute

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for amicus curiae America First Policy Institute, certifies that this brief contains 1,899 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 26, 2026

/s/ Justin G. Reden
Justin G. Reden, Esq.

**CERTIFICATE OF SERVICE**

I certify that on October 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: October 26, 2026

/s/ Justin G. Reden
Justin G. Reden, Esq.