Uzoma N. Nkwonta* (DC Bar No. 975323)
unkwonta@elias.law
Branden D. Lewiston* (DC Bar No. 252550)
blewiston@elias.law
Julianna D. Astarita* (DC Bar No. 90041368)
jastarita@elias.law
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 948-1135

Tyler L. Bishop (CA Bar No. 337546)
tbishop@elias.law
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177

Omar Qureshi (CA Bar No. 323493)
omar@qureshi.law
Max Schoening (CA Bar No. 324643)
max@qureshi.law
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 786-3478
F: (213) 277-8989

*Counsel for Intervenor-Defendants*
*SIREN and Mi Familia en Acción*

* *Pro Hac Vice*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF CALIFORNIA; SHIRLEY N. WEBER, in her official capacity as Secretary of State of California; and DEAN C. LOGAN, in his official capacity as the County of Los Angeles Registrar-Recorder/County Clerk,

Defendants,

SERVICES, IMMIGRANT RIGHTS AND EDUCATION NETWORK, MI FAMILIA EN ACCIÓN, et al.,

Intervenor-Defendants.

Case No: 2:26-cv-12025-DOC-(ADSx)

**SERVICES, IMMIGRANT RIGHTS AND EDUCATION NETWORK AND MI FAMILIA EN ACCIÓN'S MOTION TO DISMISS UNDER RULE 12(B)(1) AND RULE 12(B)(6)**

Hon. David O. Carter

Hearing: Nov. 13, 2026, 10:00 a.m.
Courtroom One, Felicitas and Gonzalo Mendez U.S. Courthouse

Action Filed: October 15, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 5

ARGUMENT .......... 5

I. The United States lacks standing. .......... 5

A. DOJ has failed to allege an injury in fact. .......... 5

B. DOJ has failed to allege causation or redressability. .......... 8

II. The United States' claim fails as a matter of law. .......... 9

A. DOJ lacks a cause of action in equity to enforce 18 U.S.C. § 611, a criminal law. .......... 10

B. Section 611 does not preempt state ballot procedures. .......... 12

C. Federal statutes bar DOJ's relief. .......... 15

1. The NVRA precludes DOJ's relief. .......... 15

2. The Voting Rights Act precludes DOJ's relief. .......... 17

3. The Civil Rights Act precludes DOJ's relief. .......... 17

CONCLUSION .......... 18

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ........ 15

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ........ 14, 16

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ........ 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 5

*Ass'n of Cmty. Orgs. for Reform Now v. Edgar*, 56 F.3d 791 (7th Cir. 1995) ........ 16

*Carney v. Adams*, 592 U.S. 53 (2020) ........ 8

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........ 6–7

*Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993 (D. Nev. 2020) ........ 6, 8

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ........ 9

*Foster v. Love*, 522 U.S. 67 (1997) ........ 1

*Jones v. Bock*, 549 U.S. 199 (2007) ........ 15

*Kansas v. Garcia*, 589 U.S. 191 (2020) ........ 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ........ 5

*Lake v. Fontes*,
83 F.4th 1199 .......... 6–7

*Lance v. Coffman*,
549 U.S. 437 (2007) .......... 8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 8–9

*Mi Familia Vota*,
129 F.4th 691 (9th Cir. 2025) .......... 15–18

*Norwood v. Harrison*,
413 U.S. 455 (1973) .......... 12

*O'Shea v. Littleton*,
414 U.S. 488 (1974) .......... 7

*Smiley v. Holm*,
285 U.S. 355 (1932) .......... 14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 5

*Terenkian v. Republic of Iraq*,
694 F.3d 1122 (9th Cir. 2012) .......... 5

*Trump v. CASA*,
606 U.S. 831 (2025) .......... 10

*United States v. California*,
824 F. Supp. 3d 1079 (C.D. Cal. 2026) .......... 7, 12

*United States v. California*,
No. 26-7070, 2026 WL 3212945 (9th Cir. Oct. 26, 2026) .......... 1, 4

*United States v. California*,
No. 26-7231, 2026 WL 3268272 (9th Cir. Oct. 30, 2026) .......... *passim*

*United States v. California*,
No. 2:25-cv-6230, 2026 WL 2970902 (C.D. Cal. Oct. 2, 2026) .......... 8

*United States v. City of Boston*,
833 F. Supp. 3d 30 (D. Mass. 2026) .......... 8–9

*United States v. City of Philadelphia*,
644 F.2d 187 (3d Cir. 1980) .......... 11

*United States v. Cox*,
No. 0:25-cr-60249, 2026 WL 2948729 (S.D. Fla. Oct. 1, 2026) .......... 14–15

*United States v. Hawaii*,
830 F. Supp. 3d 1028 (D. Haw. 2026) .......... 9

*United States v. Henderson*,
No. 2:26-cv-166, 2026 WL 3181405 (D. Utah Oct. 23, 2026) .......... 2

*United States v. Hobbs*,
No. 3:25-cv-6078, 2026 WL 2833713 (W.D. Wash. Sep. 22, 2026) .......... 2

*United States v. Jalas*,
409 F.2d 358 (7th Cir. 1969) .......... 11

*United States v. Mattson*,
600 F.2d 1295 (9th Cir. 1979) .......... 11–12

*United States v. Metcalf*,
156 F.4th 871 (9th Cir. 2025) .......... 15

*United States v. Solomon*,
563 F.2d 1121 (4th Cir. 1977) .......... 11

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026) .......... 1–2

*Watson v. RNC*,
609 U.S. 672 (2026) .......... 1

*Wood v. Raffensperger*,
981 F.3d 1307 (11th Cir. 2020) .......... 8

**Statutes**

18 U.S.C. § 611 .......... 10, 13

34 U.S.C. § 12601 .......... 11

42 U.S.C. § 1997a .......... 11

52 U.S.C. § 10101 .......... 18
52 U.S.C. § 10307 .......... 17
52 U.S.C. § 10308 .......... 11
52 U.S.C. § 20505 .......... 16
52 U.S.C. § 20507 .......... 15
52 U.S.C. § 20508 .......... 14
52 U.S.C. § 20510 .......... 11
52 U.S.C. § 21111 .......... 11
Cal. Elec. Code § 2101 .......... 13
Cal. Elec. Code § 2111 .......... 13
Cal. Elec. Code § 2200 .......... 17
Cal. Elec. Code § 2201 .......... 13
Cal. Elec. Code § 14240 .......... 13
Cal. Elec. Code § 14247 .......... 13
Cal. Elec. Code § 15105 .......... 13
Cal. Elec. Code § 15106 .......... 13, 17
Cal. Elec. Code § 18560 .......... 13

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 5

## INTRODUCTION

Despite being instructed by this Court not to "go beyond the boundaries provided by Congress" and being admonished for using federal law "in a manner that wholly disregards the separation of powers provided for in the Constitution," *United States v. Weber*, 816 F. Supp. 3d 1168, 1175 (C.D. Cal. 2026), the U.S. Department of Justice returns to this Court on a purported emergency basis to seek relief that directly threatens to disenfranchise thousands of lawful voters. This time, DOJ claims that it has the unprecedented authority to dictate to California who may receive mail ballots and whose ballots may be counted, based on nothing more than DOJ's suspicion that some registered voters "might be" noncitizens. Compl. ¶ 59, ECF 1. No federal law authorizes this federal power grab, and several preclude it. Indeed, this Court already recognized as much in denying DOJ's request for a temporary restraining order, ECF 149 ("Order"), as did the Ninth Circuit, *United States v. California* ("*California II*"), No. 26-7231, 2026 WL 3268272, at *3–8 (9th Cir. Oct. 30, 2026) (per curiam); *see also United States v. California* ("*California I*"), No. 26-7070, 2026 WL 3212945 (9th Cir. Oct. 26, 2026) (per curiam) (dismissing first appeal for lack of jurisdiction); *id.* at *6–16 (Bennett, J., concurring) (explaining DOJ's claim is meritless); *id.* at *18–20 (Sanchez, J., concurring) (explaining DOJ's claim is foreclosed by *Purcell*).

The Constitution "invests the States with responsibility for the mechanics of congressional elections." *Foster v. Love*, 522 U.S. 67, 69 (1997). That responsibility is subject only to Congress's power to preempt, which extends "so far as it is exercised, and no farther," *Watson v. RNC*, 609 U.S. 672, 697 (2026) (citation omitted). Congress has not exercised any such power here. The sole statute DOJ invokes to support its claim—18 U.S.C. § 611—is a *criminal* statute regulating conduct of private persons ("aliens"). It does not give DOJ any civil or equitable cause of action to issue eleventh-hour diktats usurping States' election authority, and

it says nothing at all about what States must do to assess a voter's citizenship. "DOJ cannot go beyond the boundaries provided by Congress and use . . . legislative tools in a manner that wholly disregards the separation of powers." *Weber*, 816 F. Supp. 3d at 1175 (dismissing DOJ's action seeking to compel production of California's unredacted voter roll).

The Court should dismiss DOJ's Complaint for a host of other reasons, too. Chief among them, DOJ fails to establish Article III standing: the federal government does not suffer a cognizable injury simply because a State does not bend to its election-administration demands, nor can DOJ establish the other elements of standing—causation and redressability. Moreover, since Congress has historically legislated to *protect* rather than disenfranchise voters, it comes as no surprise that a long and detailed list of federal statutes affirmatively *prohibit* the relief DOJ seeks and require dismissal.

## BACKGROUND

DOJ's Complaint marks the government's latest move in its campaign to usurp the States' authority over elections, which began more than a year ago with a demand for California to produce its unredacted voter registration file. *See id.* at 1176. This Court was the first to recognize that demand for what it was—an "unprecedented and illegal" attempt at subverting the purpose of our nation's civil rights laws in order to achieve the "unbridled consolidation of all elections power in the Executive without action from Congress and public debate." *Id.* at 1174–76. More than two dozen federal district courts have followed this Court's lead in holding that DOJ's requests for unredacted voter registration lists violated the law. *E.g.*, *United States v. Hobbs*, No. 3:25-cv-6078, 2026 WL 2833713, at *1 n.3 (W.D. Wash. Sep. 22, 2026) (collecting cases); *see also United States v. Henderson*, No. 2:26-cv-166, 2026 WL 3181405, at *4 n.50 (D. Utah Oct. 23, 2026) (collecting remaining cases).

Undeterred, the U.S. Department of Homeland Security ("DHS") set out to create a list of purported noncitizens. Though California had not shared its statewide voter registration list with the federal government, Compl. Ex. B at 1, ECF 1-2, DOJ alleges that U.S. Citizenship and Immigration Services ("USCIS"), a DHS component, somehow obtained California's "[v]oter rolls or information about voter rolls." Compl. ¶ 35. According to DOJ, USCIS then "utilize[d] third-party software" to "identify high, medium, or low confidence matches between voter information" and the information of individuals from the third-party software program. *Id.* From there, USCIS took the purportedly "high-confidence" match information and "connect[ed] it with an alien number," and used its own internal records to create a list of potential noncitizens. *Id.* ¶¶ 36–38. USCIS then sent the list of potential noncitizens to Homeland Security Investigations ("HSI"), another DHS component, which "conducts intake" and "uses its customary analytical platform"—about which no detail is given—to "rectify any potential information mismatches" and "shore up any data deficiencies." *Id.* ¶¶ 41–42.

On July 16, Department of Homeland Security Secretary Markwayne Mullin sent a letter to California's Secretary of State, Shirley Weber, alleging that approximately 190,000 registered California voters "may be" noncitizens." Compl. Ex. A., ECF 1-1. Secretary Weber responded on July 23 by requesting information on the sources of data and the methodology used to compile the list, including the "software[] and matching criteria utilized in this analysis." Compl. Ex. B at 1.

The federal government never responded to that request. Instead, months later, on October 13, DOJ provided a thumb drive to the Los Angeles County Registrar-Recorder/County Clerk ("Los Angeles County Clerk") with a much shorter list of just over 20,000 people that "the Federal Government believes are likely noncitizens who were sent a . . . ballot" for the 2026 General Election. Compl. ¶ 4. Its letter included an ultimatum to the Los Angeles County Clerk and to the Secretary: agree

not to send mail ballots to any voter on the list and to segregate and not tabulate the mail ballots of individuals on the list unless their citizenship can be verified, or DOJ would seek emergency relief. Compl. Ex. C, ECF 1-3. When Secretary Weber and the Los Angeles County Clerk refused to comply with this demand, DOJ filed this suit on October 15, 2026.

DOJ's Complaint seeks extraordinary relief: an order requiring California to segregate and refuse to tabulate mail ballots from individuals on DOJ's list until their citizenship status can be "verified"—a term that DOJ never defines and for which there is no established process—in the days before the November 3 election. Compl. ¶ 63.[1] Four days after filing its Complaint, DOJ filed an ex parte application for a temporary restraining order seeking similar relief. *See* ECF 22-2 at 28–29. Following a hearing on DOJ's application, the Court denied the requested TRO, holding that DOJ likely lacked standing and a cause of action, that DOJ was unlikely to succeed on the merits of its "preemption" claim, and that a host of federal laws and the *Purcell* principle barred DOJ's relief. Order at 9–20, 25–26. The Court subsequently set a hearing for Friday, November 13, 2026, and invited any motions to dismiss to be filed by Monday, November 2. *See* ECF 159.

Meanwhile, DOJ filed notices of appeal *twice*—once before this Court had even ruled on DOJ's TRO application, and the second time after it was denied—and each time moved for an injunction pending appeal. The Ninth Circuit dismissed DOJ's first appeal for lack of appellate jurisdiction and denied its second emergency motion on the merits. *See California I*, 2026 WL 3212945, at *3–6; *California II*, 2026 WL 3268272, at *3–8.

---

[1] SIREN and MFA filed a motion to intervene as a matter of right on the same day, which the Court granted. ECF 148.

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(1) when the plaintiff fails to state plausible facts that establish the Court's jurisdiction. Fed. R. Civ. P. 12(b)(1); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012). Federal courts presume cases lie outside their limited jurisdiction, so "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A complaint must be dismissed under Rule 12(b)(6) where it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the case must be dismissed. *Id.* at 679.

## ARGUMENT

This suit extends far beyond DOJ's constitutionally assigned role. California's procedures comply with federal law, and the only relief sought would violate federal law several times over. DOJ's Complaint must be dismissed.

### I. The United States lacks standing.

As a threshold matter, DOJ's Complaint should be dismissed under Rule 12(b)(1) because it fails to plausibly allege that DOJ "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

#### A. DOJ has failed to allege an injury in fact.

DOJ asserts a handful of nebulous injuries: "sovereign" harm from threatened violations of 18 U.S.C. § 611, a "drain on federal resources" due to its efforts to enforce that criminal law, erosion of "public faith in federal elections," and vote

"dilut[ion]," Compl. ¶¶ 9–10. None suffice. Order at 12 (recognizing that DOJ's "theories of Article III standing" were "unpersuasive" and would require "considerable revision to . . . existing standing doctrine" (alteration in original) (citation omitted)).

Starting with injury, all the harms asserted by DOJ fail as a matter of law because they rely on unsupported speculation about noncitizen voting in the upcoming election. "[T]o constitute injury in fact," alleged harm "must be *certainly impending*," and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified); *Lake v. Fontes*, 83 F.4th 1199, 1204 (9th Cir. 2023) (holding injuries premised on speculative concerns about illegal voting cannot sustain Article III standing); *Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993, 1000–01 (D. Nev. 2020) (similar). Yet every injury asserted depends on an implausible scenario in which the individuals on DOJ's list are noncitizens who have voted or will vote in the November 2026 election. *See* Order at 12.

The speculation in the Complaint abounds. DOJ never explains how the federal government obtained California's voter registration list or even alleges that it has the current list; instead, it vaguely states that the list is "made available for purchase." Compl. ¶ 33. DOJ then alleges that, because voter rolls "typically do not contain complete information," agents ran California's "voter roll or information about voters on voter rolls" through "third-party software" to find matches to information about potential noncitizens. *Id.* ¶ 35. The "high confidence" DOJ asserts is allegedly a strong "identity" link—not a strong indication of noncitizenship. *Id.* ¶ 34. DOJ also admits that any individual must be further "investigate[d]" before any determination that anyone has done or will do anything wrong. *Id.* ¶ 60.

And that is just the starting point for the string of inferences required to conclude that a violation of 18 U.S.C. § 611 will occur. To make such a finding, one

must assume not only that (1) the individuals on DOJ's list are indeed noncitizens—notwithstanding the above—but also that (2) those individuals are registered—despite the fact that DOJ built its list from an outdated copy of California's official voter roll; (3) the County mailed them ballots, notwithstanding its own statutory and regulatory list-maintenance procedures; and (4) the individuals will return the ballots, despite being noncitizens barred from voting, *but see O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (courts "assume that [individuals] will conduct their activities within the law"). On the face of the Complaint, the alleged harm to DOJ inescapably requires an implausible and "attenuated chain of possibilities." *Clapper*, 568 U.S. at 410; *see also id.* at 414 (rejecting theories of harm that turn on "the decisions of independent actors"). That requires dismissal. *Id.* at 410; *Lake*, 83 F.4th at 1204.

This would not be the first time DOJ failed to establish standing while advancing similar theories of injury. Earlier this year, another court in this district dismissed DOJ's lawsuit seeking to enjoin enforcement of California's egg regulations. *United States v. California* ("*California Eggs*"), 824 F. Supp. 3d 1079, 1081 (C.D. Cal. 2026). There, DOJ alleged that California's regulations conflict with DOJ's view of the federal regulatory scheme, causing harm to DOJ's "sovereign" interests in enforcing federal law. *See id.* at 1083. The court rejected that theory because DOJ failed to allege any facts showing that enforcement of the state regulation undermined the "sovereign" interests DOJ invoked, leaving the complaint with only "undisguised legal conclusions in search of substantiating facts." *Id.* (further recognizing DOJ identified "no binding authority holding that the mere existence" of an allegedly preempted state practice "creates a sovereign injury to the

federal government”);[2] *see United States v. City of Boston*, 833 F. Supp. 3d 30, 45 (D. Mass. 2026) (same). All of that is true here—and worse: as explained, DOJ has not come close to plausibly alleging facts to show that its efforts to prevent noncitizen voting are being impeded by state or local election officials.

Aside from being speculative, DOJ’s asserted vote-dilution and public-confidence injuries also fail the particularization requirement because those harms cannot affect DOJ in a “personal and individual way.” *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992). They are “abstract general interest[s] common to all members of the public,” which cannot serve as the basis for standing “no matter how sincere or deeply committed a plaintiff is to vindicating that general interest.” *Carney v. Adams*, 592 U.S. 53, 59 (2020) (citation modified); *see Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam) (similar); *Donald J. Trump for President*, 488 F. Supp. 3d at 1000 (similar as to “vote dilution” threatened by allegedly illegal election administration); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (same).

**B. DOJ has failed to allege causation or redressability.**

Even if DOJ had alleged a viable injury (and it has not), it could not overcome the fundamental causation and redressability problems that come along with its strained invocation of 18 U.S.C. § 611 in this eleventh-hour lawsuit. DOJ admits its sole claim arises out of § 611, so DOJ’s injuries necessarily depend upon noncitizens voting. Yet DOJ’s speculation about that conduct is not “fairly traceable to the challenged action of the defendant.” *Lujan*, 504 U.S. at 560 (citation modified); *see*

---

[2] DOJ later amended its complaint and survived a subsequent motion to dismiss, but only based on more specific allegations that had not been made previously and that are not relevant here, including allegations that California’s regulations contradicted nationally uniform federal regulatory standards. *See United States v. California*, No. 2:25-cv-6230, 2026 WL 2970902, at *1–2 (C.D. Cal. Oct. 2, 2026).

*also* Order at 11 (discussing "redressability concerns"); *City of Boston*, 833 F. Supp. 3d at 47 (dismissing DOJ's "preemption" claim under the Supremacy Clause on this ground, among others). Contrary to DOJ's allegations, such unlawful conduct would plainly be the result of *intentional* choices by noncitizens to vote in federal elections and to falsely attest to United States citizenship in order to do so. *See Lujan*, 504 U.S. at 560–61 (explaining that causation is lacking where injury is "the result of the independent action of some third party not before the court" (citation modified)); *United States v. Hawaii*, 830 F. Supp. 3d 1028, 1041 (D. Haw. 2026) ("Causation is not traceable to the defendant when an injury is contingent upon the decisions of multiple third party or independent actors in the casual chain.").

Also contrary to DOJ's threadbare assertions, its list-building expenses and purported inability to investigate noncitizens before the election are harms caused by federal agencies' decisions to begin this project when they did, Compl. ¶ 60—not by state officials' enforcement of their election code, *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (holding that a plaintiff "cannot spend its way into standing"). At bottom, § 611 is a criminal law targeting individual violators—it does not impose supplemental verification requirements beyond the procedures already established under state and federal law. *See California II*, 2026 WL 3268272, at *4 (describing federal and state procedures).

## II. The United States' claim fails as a matter of law.

Aside from failing to plead standing, DOJ's Complaint fails to state any cause of action for its so-called "preemption" claim to enforce the criminal prohibitions of 18 U.S.C. § 611. And even if such a claim existed, there is nothing to preempt here because California's procedures are consistent with § 611, and DOJ fails to allege any facts that plausibly support the assertion that Defendants are doing anything to frustrate DOJ's interests in enforcing that law.

### A. DOJ lacks a cause of action in equity to enforce 18 U.S.C. § 611, a criminal law.

DOJ's claim under the U.S. Constitution's Supremacy Clause fails at the outset because that Clause "is not the 'source of any federal rights,' and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (citation omitted).

To avoid this limitation, DOJ attempts to invoke the court's "inherent . . . equitable powers." Compl. ¶ 8. But it is well established that "the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Armstrong*, 575 U.S. at 328 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). And Congress specified exactly how § 611 is enforced: through *criminal* prosecutions of individuals. 18 U.S.C. § 611(b). DOJ is using that very tool for criminal enforcement right now—it has recently touted indictments of alleged noncitizen voters, as part of the President's directive to address violations of 18 U.S.C. § 611(a). *See* Order at 10 (recognizing this).

DOJ points to nothing in § 611 suggesting that Congress meant to go beyond criminal enforcement procedures and also authorize a *civil* suit in equity against state officials. The existence of an express, alternate method of enforcing § 611 demonstrates "Congress's 'intent to foreclose' equitable relief," *Armstrong*, 575 U.S. at 328 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002)), and there is simply no basis to conclude that the federal government's interests cannot "be secured by the ordinary and existing processes of law," *Trump v. CASA*, 606 U.S. 831, 842 (2025) (citation omitted); *see also* Order at 13 (similar, noting DOJ failed to identify any "historical 'tradition' of federal courts sitting in

equity requiring state election officials to comply with federal prosecutorial priorities”).[3]

DOJ’s case is further weakened by its failure to cite any authority whatsoever for the proposition that it may enforce a *criminal prohibition* like 18 U.S.C. § 611 through a freestanding suit in equity against state election officials. *See generally* Compl. That’s not surprising, as precedent cuts decisively the other way. *See, e.g.*, *United States v. Mattson*, 600 F.2d 1295, 1297–1300, 1297 n.1 (9th Cir. 1979) (holding DOJ lacked equitable cause of action to enjoin state officials to address unsanitary and unsafe facilities housing institutionalized citizens, despite invoking criminal statute barring deprivation of constitutional rights).[4] And that conclusion flows from the “general rule prohibiting issuance of an injunction against the commission of a crime.” *Jalas*, 409 F.2d at 360.

DOJ’s reference to its own inherent authority does not move the needle. Compl. ¶ 9. The Ninth Circuit has expressly held that DOJ cannot sue state officials to vindicate federal interests without specific “statutory authority” except in limited circumstances DOJ does not claim apply here. *See Mattson*, 600 F.2d at 1298–1300; Order at 12–13 (citing *Mattson*, 600 F.2d at 1298–99); *see also City of Philadelphia*,

---

[3] Where Congress intended DOJ to have a right to sue state officials concerning list maintenance, it has said so. *See* 52 U.S.C. § 20510(a) (National Voter Registration Act); *see also id.* § 21111 (Help America Vote Act). Congress has also authorized DOJ to bring civil suits for injunctive relief in other contexts. *E.g.*, *id.* §§ 10101(c), 10308(d); 34 U.S.C. § 12601(b); 42 U.S.C. § 1997a. It chose not to do so here.

[4] *See also United States v. Solomon*, 563 F.2d 1121, 1124 (4th Cir. 1977) (similar); *United States v. City of Philadelphia*, 644 F.2d 187, 190–99 (3d Cir. 1980) (similar as to suit to enjoin city officials from violating civil rights through discriminatory policing); *United States v. Jalas*, 409 F.2d 358, 360 (7th Cir. 1969) (similar as to suit to enjoin official from running for union election).

644 F.2d at 201 (similar).[5] Indeed, DOJ has not identified a single case in which a court has interpreted a federal criminal prohibition to invest the federal government with such broad power over the details of state administration of state election laws.

Instead, DOJ points to *Norwood v. Harrison*, 413 U.S. 455 (1973), which it cites for the proposition that state officials "cannot induce, encourage, promote, or knowingly facilitate noncitizen voting" in a federal election. Compl. ¶ 56. That case is inapposite and cannot help DOJ. *Norwood* held that a Mississippi program to support racially segregated private schools violated the Fourteenth Amendment's equal-protection guarantee, just as it would if a State or locality ran a segregated school directly. *See* 413 U.S. at 467. In other words, Mississippi's provision of assistance to the private schools itself constituted state action in violation of the Fourteenth Amendment. But nothing in *Norwood* provides DOJ with a roving license to demand that a State take any action DOJ might dream up in order to prevent future violations of federal law by other private individuals, as this Court recognized in denying DOJ's motion for a temporary restraining order. *See* Order at 16 n.10.

### B. Section 611 does not preempt state ballot procedures.

Even if DOJ's equitable action were an appropriate vehicle for enforcing § 611, DOJ's claim fails as a matter of law because its theory of preemption is meritless. "Nothing in § 611, a statute that criminalizes voting by a noncitizen, preempts California's comprehensive statutory scheme that has been duly enacted

---

[5] *Mattson* notes DOJ has been permitted to sue in equity without statutory authorization in a narrow category of cases involving "a property interest, interference with national security or a burden on interstate commerce." 600 F.2d at 1298–99; *see also California Eggs*, 824 F. Supp. 3d at 1084 (same). None apply here.

under the Elections Clause." *California II*, 2026 WL 3268272, at *4; Order at 15–16 (similar).

Start with what California law has to say on the issue of noncitizens voting, which DOJ almost entirely ignores: California not only makes it a crime for noncitizens to vote, Cal. Elec. Code §§ 2101(a), 18560(a), but it has also constructed a multi-tiered framework to confirm voter qualifications, balanced against the risk of misidentifying citizens. At the outset, California requires prospective voters to attest they are citizens under penalty of perjury at the time of registration. Cal. Elec. Code § 2111. Next, California provides for cancellation of registration upon "proof" that a registered voter is a noncitizen. *Id.* § 2201(a)(8). And as a backstop, California permits precinct boards to resolve challenges to voters' eligibility at the polls or when mail ballots are being processed. *Id.* §§ 14240, 14247, 15105. California law also prescribes the standard for sustaining a challenge to a mail ballot: "because the voter is not present, the challenger shall have the burden of establishing *extraordinary proof* of the validity of the challenge at the time the challenge is made." *Id.* § 15106 (emphasis added).

DOJ, of course, does not invoke the challenge procedure California law provides for here. Rather, DOJ seeks to supplant California's statutory scheme with DOJ's preferred regime, under which it can send election officials lists of voters whom it suspects "might be" noncitizens, Compl. ¶ 59, and then require all ballots cast by those voters to be segregated and not counted until the voters' citizenship is "verified" through some unspecified means, *id.* ¶ 63. Yet nothing in federal law requires California to use DOJ's preferred framework rather than its existing, detailed framework for assessing voter qualifications. The only statute DOJ invokes, 18 U.S.C. § 611, prohibits noncitizens from voting in federal elections but is completely silent on the manner in which a State is to assess a voter's citizenship or adjudicate a challenge to that determination. In fact, the only thing federal law says

on the subject is that States must require attestation of citizenship at the time of registration. *See* 52 U.S.C. § 20508(b)(2). California does that, and much more.

Section 611's silence on the procedure for challenges to voters' citizenship rings the death knell for DOJ's preemption claim. The Elections Clause "invests the States with responsibility for the mechanics of congressional elections." *Arizona v. Inter Tribal Council of Ariz., Inc.* ("*ITCA*"), 570 U.S. 1, 9 (2013) (quoting *Foster,* 522 U.S. at 69). That extends to the "supervision of voting, protection of voters, prevention of fraud and corrupt practices, [and] counting of votes." *Smiley v. Holm*, 285 U.S. 355, 366 (1932). And though Congress has the power to preempt California election laws, that power extends only "so far as it is exercised, and no farther." *ITCA*, 570 U.S. at 9 (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1880)). In other words, the *text* of the relevant statute determines its preemptive scope. *Id.* at 14 ("[T]he reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent."). Here, the text of § 611 regulates only the actions of private individuals; it says nothing about election officials or state law. And "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020).[6]

Finally, the doctrine of constitutional avoidance supplies another reason not to read § 611 to preempt California's voting laws. Earlier this month, a federal court declared § 611 unconstitutional. *United States v. Cox*, No. 0:25-cr-60249, 2026 WL 2948729 (S.D. Fla. Oct. 1, 2026). Surveying constitutional text and history, *Cox* concluded that "Congress may only 'regulate *how* federal elections are held, but not *who* may vote in them.'" *Id.* at *8 (quoting *ITCA*, 570 U.S. at 16). The court thus

---

[6] Indeed, nothing California has done has stopped DOJ from enforcing Section 611 through the congressionally specified mechanism: criminal indictments of noncitizens who violate the prohibition. *See* Order at 10 (noting DOJ's recent indictments under § 611 in California); *supra* Argument § II.A.

held that § 611's prohibition on noncitizens voting in federal elections improperly intrudes into States' exclusive authority over voter qualifications. *Id.* at *11–12. That constitutional concern would be supercharged if, as DOJ contends, § 611 not only sets a voter qualification for federal elections but also authorizes DOJ to issue eleventh-hour diktats to segregate and not count ballots. Such a result would turn our constitutional structure—in which "States alone" have the "general power to set voter qualifications in federal elections"—on its head. *Id.* at *9; *see United States v. Metcalf*, 156 F.4th 871, 882 (9th Cir. 2025) ("[C]ourts should construe ambiguous statutes to avoid the need even to address serious questions about their constitutionality." (citation omitted)).

### C. Federal statutes bar DOJ's relief.

As this Court has already recognized, DOJ's requested relief is incompatible with federal law—including the NVRA, the Voting Rights Act, and the Civil Rights Act. *See* Order at 17–20. And because courts may not "issue injunctions that authorize or direct people to violate valid federal statutes," DOJ's claim must be dismissed under Rule 12(b)(6). *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 395 (C.D. Cal. 2007); *see also Jones v. Bock*, 549 U.S. 199, 214–16 (2007) (explaining that a statutory defense apparent from the pleadings is grounds for dismissal).

#### 1. The NVRA precludes DOJ's relief.

The relief DOJ demands would cause California to violate the NVRA several times over. *First*, the NVRA requires that States "complete, not later than 90 days prior to [an election] for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). The provision applies to programs targeting suspected noncitizens. *See Mi Familia Vota*, 129 F.4th 691, 715–16 (9th Cir. 2025), *cert. granted sub nom. RNC v. Mi Familia Vota*, 146 S. Ct. 2799 (2026). Because

DOJ generated the list of voters through a process that relied on database-matching, Compl. ¶ 35, the program it contemplates is "systematic," *Mi Familia Vota*, 129 F.4th at 716 (holding "mass computerized data-matching process" constitutes "systematic" removal program) (citation omitted). And DOJ seeks relief within days of the election, well within the NVRA's 90-day quiet period. Order at 17–18 (similar, holding alternatively that compliance with DOJ's demand would violate the NVRA's "90-day provision"); *see also California II*, 2026 WL 3268272, at *6 (similar). It is irrelevant that DOJ asks for ballots to be segregated and not counted, rather than for voters to be removed from the rolls. Voter registration is not an end in itself—it exists precisely so that people can cast a ballot that will be counted. *See Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 793 (7th Cir. 1995); *accord ITCA*, 570 U.S. at 13 (observing the NVRA would "cease[] to perform any meaningful function" if its provisions were circumventable).

*Second*, DOJ's demand that voters on its list have their mail ballots set aside until their citizenship is "confirmed," Compl. ¶ 4, conflicts with the NVRA's requirement that States "accept and use the [federal voter-registration form] for the registration of voters in elections for Federal office." 52 U.S.C. § 20505(a)(1). That means California must "accept the Federal Form as a *complete and sufficient* registration application." *ITCA*, 570 U.S. at 9 (emphasis added). As the Ninth Circuit held last year, demanding additional proof of citizenship from voters who registered using the federal form conflicts with the NVRA by forcing voters "seeking to cast their ballots by mail to provide *more* information than what the federal form requires." *Mi Familia Vota*, 129 F.4th at 710 (emphasis added).

*Third*, the relief DOJ demands violates the NVRA's requirement that "any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office . . . shall be uniform, nondiscriminatory, and in compliance with the

Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1). The Ninth Circuit has held that citizenship checks aimed at registrants whom officials "have 'reason to believe' are not citizens" are non-uniform and discriminatory in effect because they disproportionately target naturalized citizens. *Mi Familia Vota*, 129 F.4th at 714 (citation omitted). DOJ's process is worse: it involves "pair[ing]" individuals on California's public voter list "with an internal USCIS alien number." Bartell Decl. ¶¶ 16, 18, ECF 22-4. Since U.S.-born citizens do not have alien numbers, DOJ's citizenship checks will likely apply only to naturalized citizens, creating the same discriminatory impact that the Ninth Circuit found unlawful. *Mi Familia Vota*, 129 F.4th at 714–15.

**2. The Voting Rights Act precludes DOJ's relief.**

DOJ's requested relief would also violate the Voting Rights Act, which prohibits officials from refusing to permit any person to vote who is "qualified to vote," or from "willfully fail[ing] or refus[ing] to tabulate, count, and report such person's vote." 52 U.S.C. § 10307(a). Registered voters are presumptively qualified to vote. State law provides that registration is "permanent for all purposes" "unless and until" the registration is canceled, Cal. Elec. Code § 2200, and an election official can only refuse to count a facially valid ballot by a registered voter upon "extraordinary proof" that the voter is ineligible," *id.* § 15106. DOJ admits it has no such proof. *E.g.*, Compl. ¶ 59 (stating voters on the list "might be" noncitizens). The Voting Rights Act would be a dead letter if its protections could be sidestepped merely because someone alleged, without sufficient evidence, that a registered voter might be ineligible. Order at 18–19 (holding DOJ's relief likely violates the Voting Rights Act).

**3. The Civil Rights Act precludes DOJ's relief.**

DOJ's requested relief would likewise violate the Civil Rights Act, which prohibits officials, in "determining whether any individual is qualified under State

law or laws to vote in any election," from applying any "standard, practice, or procedure different from" those applied to others. 52 U.S.C. § 10101(a)(2)(A). The Ninth Circuit held that an Arizona law requiring database citizenship checks of registrants whom officials had "reason to believe" were noncitizens violated this provision, because the database "contains no information on U.S.-born citizens" and its use "solely impacts naturalized citizens." *Mi Familia Vota*, 129 F.4th at 723 (citation modified). DOJ asks for the same thing here: a special citizenship-verification procedure applied only to registrants identified through its own review against immigration records, and to no other voter in the same jurisdiction.

In sum, the Court should decline DOJ's invitation to violate the civil rights of California voters, and dismiss DOJ's Complaint in its entirety.

## CONCLUSION

For the reasons above, DOJ's Complaint should be dismissed with prejudice.

Dated: November 2, 2026

Respectfully submitted,

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta*
(DC Bar No. 975323)
Branden D. Lewiston*
(DC Bar No. 252550)
Julianna D. Astarita*
(DC Bar No. 90041368)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 948-1135
F: (202) 968-4498
unkwonta@elias.law
blewiston@elias.law
jastarita@elias.law

Tyler L. Bishop (CA Bar No. 337546)
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
tbishop@elias.law

Omar Qureshi (CA Bar No. 323493)
omar@qureshi.law
Max Schoening (CA Bar No. 324643)
max@qureshi.law
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 786-3478

*Counsel for Intervenor-Defendants SIREN and MFA*

* *Pro Hac Vice*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Intervenor-Defendants SIREN and MFA certifies that this brief contains 5,622 words, which complies with the word limit of Local Rule 11-6.1.

Dated: November 2, 2026 *_/s/ Uzoma N. Nkwonta_*
Uzoma N. Nkwonta